# EXHIBIT C



**U.S. Department of Justice**

Civil Division

---

*Washington, DC 20530*

January 10, 2018

**PRIVILEGED AND CONFIDENTIAL; FOR INTERNAL GOVERNMENT USE ONLY**

## MEMORANDUM

TO:        Attorneys
           Commercial Litigation Branch, Fraud Section

           Assistant U.S. Attorneys Handling False Claims Act Cases
           Offices of the U.S. Attorneys

FROM:      Michael D. Granston  *M D G*
           Director
           Commercial Litigation Branch, Fraud Section

SUBJECT:   Factors for Evaluating Dismissal Pursuant to 31 U.S.C. 3730(c)(2)(A)

## Introduction

Over the last several years, the Department has seen record increases in *qui tam* actions filed under the False Claims Act (FCA), 31 U.S.C. § 3729 et seq., with annual totals approaching or exceeding 600 new matters. Although the number of filings has increased substantially over time, the rate of intervention has remained relatively static. Even in non-intervened cases, the government expends significant resources in monitoring these cases and sometimes must produce discovery or otherwise participate. If the cases lack substantial merit, they can generate adverse decisions that affect the government's ability to enforce the FCA. Thus, when evaluating a recommendation to decline intervention in a *qui tam* action, attorneys should also consider whether the government's interests are served, in addition, by seeking dismissal pursuant to 31 U.S.C. § 3730(c)(2)(A).

Historically, the Department has utilized section 3730(c)(2)(A) sparingly, in large part because the statutory text makes clear that relators can proceed with certain *qui tam* actions following the government's declination. Moreover, a decision not to intervene in a particular case may be based on factors other than merit, particularly in light of the government's limited resources.

**PRIVILEGED AND CONFIDENTIAL; FOR INTERNAL GOVERNMENT USE ONLY**

Accordingly, we have been circumspect with the use of this tool to avoid precluding relators from pursuing potentially worthwhile matters, and to ensure that dismissal is utilized only where truly warranted.

While it is important to be judicious in utilizing section 3730(c)(2)(A), it remains an important tool to advance the government's interests, preserve limited resources, and avoid adverse precedent. The Department plays an important gatekeeper role in protecting the False Claims Act, because in *qui tam* cases where we decline to intervene, the relators largely stand in the shoes of the Attorney General. That is why the FCA provides us with the authority to dismiss cases. This memo is intended to provide a general framework for evaluating when to seek dismissal under section 3730(c)(2)(A) and to ensure a consistent approach to this issue across the Department. We reviewed those cases in which the government moved to dismiss relators pursuant to this statutory provision since 1986, when this provision was added to the FCA. As discussed below, we identified approximately seven factors that the government has relied upon in seeking to dismiss a *qui tam* action pursuant to section 3730(c)(2)(A). To ensure consistency across the Department, these factors should serve as a basis for evaluating whether to seek to dismiss future matters, though they are not intended to constitute an exhaustive list, and there may be other reasons for concluding that the government's interests are best served by the dismissal of a *qui tam* action.[1]

Finally, as noted below, when the Department is considering dismissal, relators should be advised of this possibility since it will inform their judgment regarding whether to voluntarily dismiss their actions.

**Discussion**

The False Claims Act authorizes the Attorney General to dismiss a *qui tam* action over the relator's objection:

> The Government may dismiss the action notwithstanding the objections of the person initiating the action if the person has been notified by the Government of the filing of the

---

[1]    In jointly handled and monitored cases, the prior approval of the Assistant Attorney General is required for a motion to dismiss a qui tam action, including under section 3730(c)(2)(A). In delegated cases, the authority for dismissing a *qui tam* complaint will generally be vested in the U.S. Attorney unless dismissal would present a novel issue of law or policy, or for any other reason raises issues that should receive the personal attention of the Assistant Attorney General. *See* Civil Division Directive 1-15, Subpart 1(e). In order to maintain consistency and evaluate the appropriateness of Assistant Attorney General approval, U.S. Attorneys' Offices should provide notice to the assigned Fraud Section attorney at least 10 days prior to filing any motion to dismiss in a delegated matter. In addition, for reporting purposes, the Department will collect information on an annual basis regarding the number of *qui tam* complaints dismissed upon motion by the United States. The Fraud Section will work with the Executive Office of United States Attorneys to formulate a reporting mechanism.

PRIVILEGED AND CONFIDENTIAL; FOR INTERNAL GOVERNMENT USE ONLY

motion and the court has provided the person with an opportunity for a hearing on the motion.

31 U.S.C. § 3730(c)(2)(A).[2]  The FCA does not, however, provide a standard of review for evaluating such a request for dismissal.  As a result, courts have developed two differing standards.  *Compare United States ex rel. Sequoia Orange Co. v. Baird-Neece Packing Corp.*, 151 F.3d 1139, 1145 (9th Cir. 1998) (holding that the United States must identify a "valid government purpose" that is rationally related to dismissal) *with Swift v. United States,* 318 F.3d 250, 252 (D.C. Cir. 2003) (holding that the United States has an "unfettered right" to dismiss a *qui tam* action).

Moreover, the FCA does not set forth specific grounds for dismissal under section 3730(c)(2)(A).  However, below is a non-exhaustive list of factors that the Department can use as a basis for dismissal, along with citations to cases where the government has previously sought dismissal based on these factors.

    1.  *Curbing Meritless Qui Tams*

The Department should consider moving to dismiss where a *qui tam* complaint is facially lacking in merit—either because relator's legal theory is inherently defective, or the relator's factual allegations are frivolous.  Examples of inherent legal defects include *qui tam* actions where the relator failed to allege an actionable obligation to support a reverse false claim violation, *see, e.g., United States ex rel. Hoyte v. American National Red Cross*, 518 F.3d 61 (D.C. Cir. 2008); *United States ex rel. Wright*, No. 5:03-264 (E.D. Tex. Feb. 3, 2005), or to allege a non-federal defendant that is not covered by sovereign immunity.  *See, e.g., United States ex rel. Carter v. Board of Governors of the Federal Reserve, et al.*, No. 12-0129-cv-W-HFS (W.D. Mo. May 1, 2013); *United States ex rel. Casey v. Blevins*, No. 4:02-CV-60 (E.D. Ark. July 5, 2002); *Braswell v. Unger*, No. 4:14-cv-02574-JAB (D. Az. August 11, 2015).  Factually frivolous cases can take a number of forms.  *See, e.g., United States ex rel. Roach v. Obama*, No. 14-0470 (D.D.C. December 18, 2014); *United States ex rel. May v. City of Dallas*, 2014 WL 5454819, at *5 (N.D. Tex. Oct. 27, 2014); *United States ex rel. Berg v. Obama*, 383 F. App'x 7 (D.C. Cir. 2010) (per curiam); *United States ex rel. Lachkovich v. Ashcroft, et al.*, No. 08-cv-00066-WYD-BNB (D. Colo. March 13, 2008).

In certain cases, even if the relator's allegations are not facially deficient, the government may conclude after completing its investigation of the relator's allegations that the case lacks merit.  In such a case, the Department should consider dismissing the matter.  *See United States ex rel. Nasuti v. Savage Farms, Inc.*, 2014 WL 1327015, at *11 (D. Mass. Mar. 27, 2014), aff'd, 2015

---

[2]    This is just one of several mechanisms contained in the FCA to ensure that the United States retains substantial control over lawsuits brought on its behalf.  *See also* 31 U.S.C. § 3730(c)(1) (providing government with "the primary responsibility for prosecuting the action" when it intervenes); 31 U.S.C. § 3730(c)(2)(B) (allowing government to settle actions over relator's objections); 31 U.S.C. § 3730(c)(2)(C) (providing government with mechanism to restrict relator's participation in the case); 31 U.S.C. § 3730(b)(1) (requiring relator to obtain government consent prior to any dismissal of the action).

WL 9598315 (1st Cir. 2015) (dismissing *qui tam* claims that government concluded were "factually incorrect and without foundation."); *United States ex rel. Dreyfuse v. Farrell, et al.*, 3:16-cv-5273 (S.D. W.Va. March 28, 2017) (granting government's motion to dismiss claims that were submitted to state agency and which did not implicate any federal programs or funds); *United States ex rel. Stierli v. Shasta Services, Inc.*, 440 F. Supp. 2d 1108, 1113 (E.D. Cal. 2006) (granting government's motion to dismiss because, among other things, there was not any false or fraudulent claim paid or approved by the federal government); *United States v. Fiske*, 968 F. Supp. 1347, 1353 (E.D. Ark. 1997) (holding that relator's allegations, even if true, do not involve the submission of any false or fraudulent claim to the federal government). These cases may be rare, in part, because to maximize its resources the government typically will investigate a *qui tam* action only to the point where it concludes that a declination is warranted. This may not equate to a conclusion that no fraud occurred. If the Department is concerned that a case lacks any merit, but elects to afford the relator an opportunity to further develop the case, the Department attorney may consider advising the relator that dismissal will be considered if the relator is unable to obtain additional support for the relator's claims by a specified date.

    2.   *Preventing Parasitic or Opportunistic Qui Tam Actions*

The Department should consider moving to dismiss a *qui tam* action that duplicates a pre-existing government investigation and adds no useful information to the investigation. In these cases, the government should consider whether the relator would receive an unwarranted windfall at the expense of the public fisc because Congress intended for the relator share to incentivize and award the provision of meaningful information and assistance instead of merely providing duplicative information already known to the government. *See* 132 Cong. Rec. 29, 322 (1986) (citing S. Rep. No. 99-345, at 28 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5293) (discussing factors relevant to awarding a relator share, including "the significance of the information provided" and whether the government was already aware of the information prior to relator providing it). For example, in *United States ex rel. Amico, et al. v. Citi Group, Inc., et al.*, No. 14-cv-4370 (CS) (S.D.N.Y. August 7, 2015), relators filed a *qui tam* action against Citi Group and its subsidiaries alleging fraud in connection with the marketing and sale of residential mortgage backed securities; however, the Department of Justice had been investigating the same conduct for several years prior to the filing and had engaged in extensive settlement negotiations before relators filed their complaint. The government successfully moved to dismiss the action under section 3730(c)(2)(A) because, among other factors, relators' belated complaint provided no assistance to the government in its pre-existing investigation. *See also United States ex rel. Piacentile v. Amgen Inc.*, No. 04-cv-3983-SJ-RML, 2013 WL 5460640, at *4 (E.D.N.Y. Sept. 30, 2013) (granting government's motion to dismiss *qui tam* complaint filed by serial relator who filed one of ten *qui tams* alleging similar wrongdoing by the same defendant).

    3.   *Preventing Interference with Agency Policies and Programs*

Dismissal should be considered where an agency has determined that a *qui tam* action threatens to interfere with an agency's policies or the administration of its programs and has recommended dismissal to avoid these effects. For example, in *United States ex rel. Ridenour v. Kaiser-Hill Co., LLC*, 397 F.3d 925 (10th Cir. 2005), relator alleged that a security contractor submitted false claims to the Department of Energy for deficient security services at Rocky Flats, a

PRIVILEGED AND CONFIDENTIAL; FOR INTERNAL GOVERNMENT USE ONLY

radiologically-contaminated nuclear weapons manufacturing facility that was slated to undergo decontamination and closure. The government successfully moved to dismiss the action because, among other things, litigation would delay the clean-up and closure of the facility by diverting agency personnel and resources away from the project. 397 F.3d at 937; s*ee also United States ex rel. Sequoia Orange Co.*, 151 F.3d at 1146 (concluding that valid government interests supporting dismissal included the Department of Agriculture's desire to "end the divisiveness in the citrus industry" by promulgating new citrus marketing regulations to replace invalidated regulations upon which the relator based its claims); *United States ex rel. Toomer v. TerraPower*, No. 4:16-cv-00226-BLW (D. Idaho) (Under Seal) (seeking dismissal of allegation that defendant's invention constituted government property, based in part on the concern that this allegation would hinder the Energy Department's ability to collaborate with private sector partners). Finally, there may be instances where an action is both lacking in merit and raises the risk of significant economic harm that could cause a critical supplier to exit the government program or industry. *Cf. United States ex rel. Harmon v. Trinity Indus., Inc.*, 872 F.3d 645 (5th Cir. 2017) (reversing $680 million judgment against highway guardrail manufacturer based on alleged manufacturing defects that agency concluded did not affect eligibility of defendant's claims).

### 4. *Controlling Litigation Brought on Behalf of the United States*

Relatedly, the Department should consider dismissing cases when necessary to protect the Department's litigation prerogatives. For example, in *In Re Natural Gas Royalties Qui Tam Litigation*, MDL Docket No. 1293 (D. Wyo. October 9, 2002), relator filed separate *qui tam* actions in various districts against more than 300 defendants accused of underpaying royalties owed to the United States in connection with natural gas produced from federal lands. After intervening as to a limited number of defendants, the government sought to dismiss certain declined claims to, among other things, avoid interference with the government's ability to litigate the intervened claims. The court agreed, finding that the interest in avoiding interference with ongoing litigation warranted dismissal of the declined claims. *See also Lion Raisins v. Kagawa, et al.*, No. CV-F-02-5665-REC-LJO (E.D. Cal. Nov. 3, 2003) (granting government's motion to dismiss, concluding that government's desire to avoid interference with pending Federal Torts Claims Act action involving the same parties was a valid government purpose that was rationally related to dismissal). In addition, in *United States ex rel. Wright v. Agip Petroleum Co.*, No. 5:03-264 (E.D. Tex. Feb. 3, 2005), the government moved to dismiss, in part, to avoid the risk of unfavorable precedent. *See id.* Finally, in *United States ex rel. Piacentile*, 2013 WL 5460640, the government moved to dismiss a declined claim that was serving as an obstacle to the settlement of the government's intervened claims. *But cf. United States ex rel. Schweizer v. Oce*, 677 F.3d 1228 (D.C. Cir. 2012) (once the government reaches a settlement with defendant of relator's claims, the dismissal of those claims is governed by section 3730(c)(2)(B), requiring a showing that the settlement is fair, adequate, and reasonable, rather than by section 3730(c)(2)(A)).[3]

---

[3]    In each of the foregoing cases, in addition to determining that the dismissed claims were interfering with the government's litigation prerogatives, the government's briefs make clear that the government had determined that the claims lacked substantial merit.

PRIVILEGED AND CONFIDENTIAL; FOR INTERNAL GOVERNMENT USE ONLY

5.  *Safeguarding Classified Information and National Security Interests*

In certain cases, particularly those involving intelligence agencies or military procurement contracts, we should seek dismissal to safeguard classified information.  For example, in *United States ex rel. Fay v. Northrup Grumman Corp.*, No. 06-cv-00581-EWN-MJW, 2008 WL 877180 (D. Colo. Mar. 27, 2008), the relator alleged that a defense contractor defrauded the United States in connection with work performed on a classified contract.  After declining to intervene, the Department moved to dismiss the action under section 3730(c)(2)(A), asserting that continued litigation would pose "an unacceptable risk to national security" due to the potential for disclosure of classified information.  Applying the *Sequoia Orange* standard, the Court agreed, concluding that the claims and defenses were inextricably tied to classified information and dismissal was rationally related to the valid government interest of preventing the disclosure of such information.  *Id.* at * 6-7.  *See also United States ex rel. Matseki v. Raytheon Co.*, 634 F. App'x 192 (9th Cir. 2015) (per curiam) (holding that government interest in avoiding disclosure of classified information was sufficient basis for dismissal); *United States ex rel. Schwartz v. Raytheon Co.*, 150 F. App'x 627 (9th Cir. 2005) (holding that "federal interest in protecting military and state secrets" was valid basis for dismissal); *United States ex rel. Ridenour*, 397 F.3d at 936-37  ("The Government demonstrated that classified documents required in the litigation would present a risk of inadvertent disclosure, implicating national security.").  Finally, it should be noted that the government need not demonstrate that continued litigation *will* result in the disclosure of classified information.  In jurisdictions that apply the "rational basis" basis test, the government has a strong argument that the *risk of disclosure*, alone, justifies dismissal.  *See United States ex rel. Ridenour,* 397 F.3d at 937 (finding risk of inadvertent disclosure of classified information, "even if theoretically minimal," sufficed to justify dismissal).  (In jurisdictions that apply the "unfettered right" standard, no showing by the government is required.)

6.  *Preserving Government Resources*

The Department should also consider dismissal under section 3730(c)(2)(A) when the government's expected costs are likely to exceed any expected gain.[4]  *See, e.g., Swift v. United States,* 318 F.3d 250, 251 (D.C. Cir. 2003) (the government moved to dismiss the complaint, arguing that the amount of money involved did not justify the expense of litigation even if the allegations could be proven); *United States ex rel. Nicholson v. Spigelman, et al.*, No. 1:10-cv-03361, 2011 WL 2683161, at *2 (N.D. Ill. July 8, 2011) (explaining that the estimated government losses, even with statutory penalties and damages multiplier, were less than the costs of monitoring the litigation and responding to discovery requests)  Examples of potential costs may include, among other things, the need to monitor or participate in ongoing litigation, including responding to discovery requests.  *See, e.g., United States ex rel. Sequoia Orange Co.*, 151 F.3d at 1146 (holding that district court "properly noted that the government can legitimately consider the burden imposed on taxpayers by its litigation, and that, even if the relators were to litigate the FCA claims, the government would continue to incur enormous internal staff costs"); *United States ex rel. Levine v. Avnet, Inc.*, No. 2:14-cv-17-WOB-CJS, 2015 WL 42359 (E.D. Ky.

---

[4]    Cost to the government includes the opportunity cost of expending resources on other matters with a higher and/or more certain recovery.

**PRIVILEGED AND CONFIDENTIAL; FOR INTERNAL GOVERNMENT USE ONLY**

Apr. 1, 2015) (holding that dismissal of *qui tam* complaint "will further [the government's] interest in preserving scare resources" that would otherwise be spent "monitoring [relator's] action"). In some cases, the government may also be liable for the defendant's litigation costs if the defendant prevails in the action. *See, e.g.*, FAR §31.205-47(c).

### 7. *Addressing Egregious Procedural Errors*

The Department may also seek dismissal of a *qui tam* action pursuant to section 3730(c)(2)(A) based on problems with the relator's action that frustrate the government's efforts to conduct a proper investigation. For example, in *United States ex rel. Surdovel v. Digirad Imaging Solutions*, No. 07–cv-0458, 2013 WL 6178987 (E.D. Pa. Nov. 25, 2013), the relator ignored repeated requests from the Office of the U.S. Attorney to serve the *qui tam* complaint and disclose material facts as required by 31 U.S.C. § 3730(b). The Court granted the government's motion to dismiss the action because the "egregious procedural errors completely frustrated the government's ability to investigate the relator's claims." *Id.* at *4. *But cf. State Farm Fire and Cas. Co. v. United States ex rel. Rigsby*, – U.S. –, 137 S.Ct. 436, 440 (2016) (holding that relators' violation of FCA's seal requirement did not mandate automatic dismissal of relators' complaint).

\* \* \*

Several additional points are in order with respect to the use of the government's dismissal authority under section 3730(c)(2)(A). First, while the Department's position has been that the appropriate standard for dismissal under section 3730(c)(2)(A) is the "unfettered" discretion standard adopted by the D.C. Circuit rather than the "rational basis" test adopted by the 9th and 10th Circuits, we should argue that even the latter standard was intended to be a highly deferential one. Moreover, in those jurisdictions where the standard remains unresolved, in many cases the prudent course may be to identify the government's basis for dismissal and to argue that it satisfies any potential standard for dismissal under section 3730(c)(2)(A).

Second, the factors identified above are not mutually-exclusive, and the Department has often relied on multiple grounds for dismissal (for example, lack of merit and need to safeguard classified information). Nor, as noted above, are the factors identified in this memorandum intended to constitute an exhaustive list—there may be other reasons for concluding that the government's interests are best served by the dismissal of a *qui tam* action.

Third, in some cases there may be alternative grounds for seeking dismissal other than section 3730(c)(2)(A), such as the first to file bar, the public disclosure bar, the tax bar, the bar on *pro se* relators, or Federal Rule of Civil Procedure 9(b). Although the Department has sometimes moved to dismiss on these grounds under section 3730(c)(2)(A), we believe the better approach is to assert these grounds separately since they can provide alternative, independent legal bases for dismissal. It may sometimes be appropriate, however, to move for dismissal under section 3730(c)(2)(A) in the alternative based on one or more for the factors listed above.

PRIVILEGED AND CONFIDENTIAL; FOR INTERNAL GOVERNMENT USE ONLY

Fourth, section 3730(c)(2)(A) does not require the government "to proceed in an all or nothing manner." *See Juliano v. Fed. Asset Disposition Ass'n*, 736 F. Supp. 348, 351–53 (D.D.C.1990) ("The [FCA] nowhere states that federal prosecutors are confined to proceed in an all or nothing manner, being forced to take or leave the qui tam plaintiff's charges wholesale."). In certain situations, it may be appropriate to seek only partial dismissal of some defendants or claims. *See id.* (granting motion for partial dismissal under 3730(c)(2)(A)); *United States ex rel. Grober v. Summit Medical Group, Inc.*, No. 02-177-C (W.D. Ky. July 9, 2004) (same).

Fifth, where a *qui tam* case is a potential candidate for dismissal, Department attorneys should consult closely with the affected agency as to whether dismissal is warranted under any of the factors set forth in this guidance. The agency's recommendation should be obtained in advance of the filing of any request to dismiss. In cases where dismissal under section 3730(c)(2)(A) is opposed by the agency (because, for example, it would require the government to disclose sensitive information or could result in other collateral consequences), there may be alternative ways to address the deficiencies while accommodating the agency's desire to forego seeking dismissal. For example, if the agency views the alleged falsity as immaterial, the United States can provide an agency declaration to that effect. *See Trinity*, 872 F.3d at 664 (holding that district court erred in concluding alleged falsity was material to agency despite agency memorandum stating that there was "an unbroken chain of eligibility for Federal reimbursement" for the allegedly defective product at issue).

Sixth, although a motion to dismiss under section 3730(c)(2)(A) will often be filed at or near the time of declination, there may be cases where dismissal is warranted at a later stage, particularly when there has been a significant intervening change in the law or evidentiary record. However, if one waits until the close of discovery or trial, there is a risk that the court may be less receptive to the request given the expenditure of resources by the court and parties. The court may also be less receptive to a motion filed at a later stage when doing so undercuts a claimed desire to avoid or reduce costs associated with discovery or safeguard information in discovery. Attorneys considering dismissal should therefore allow for sufficient time to consult with the affected agency and, in delegated cases, to provide appropriate notice to the Fraud Section

Finally, attorneys planning to recommend declination or dismissal should, to the extent possible, consider advising relators of perceived deficiencies in their cases as well as the prospect of dismissal so that relators may make an informed decision regarding whether to proceed with the action. In many cases, relators may choose to voluntarily dismiss their actions, particularly if the government has advised the relator that it is considering seeking dismissal under section 3730(c)(2)(A).[5]

---

[5]    Since January 1, 2012, more than 700 *qui tam* actions have been dismissed by relators after the government elected not to intervene. The frequency with which relators voluntarily dismiss declined *qui tam* actions has significantly reduced the number of cases where the government might otherwise have considered seeking dismissal pursuant to section 3730(c)(2)(A).