**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| KENNETH GORDON, Individually and on Behalf of All Others Similarly Situated,<br><br>          Plaintiff,<br><br>   v.<br><br>VANDA PHARMACEUTICALS INC., MIHAEL H. POLYMEROPOULOS, JAMES P. KELLY, GIAN PIERO REVERBERI, and THOMAS E. GIBBS,<br><br>          Defendants. | Case No. 1:19-cv-01108-FB-LB<br><br>**ORAL ARGUMENT REQUESTED** |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

PAUL, WEISS, RIFKIND, WHARTON &
   GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone:  (212) 373-3000

*Counsel for Defendants*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ...................................................................................................................... 2

I.     PLAINTIFF FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER ................. 2

    A.     Plaintiff Fails to Plead that Defendants Acted with Scienter in Making Statements to Investors Regarding Fanapt® and Hetlioz® ................................... 2

    B.     Plaintiff Fails to Show that Defendants Acted with Scienter in Making Statements to Investors Regarding Tradipitant ........................................................ 6

II.    PLAINTIFF FAILS TO PLEAD FRAUD WITH PARTICULARITY ........................... 8

    A.     No Particularized Allegations About Fanapt® and Hetlioz® ............................... 8

    B.     No Particularized Allegations About Tradipitant ................................................. 10

III.   PLAINTIFF FAILS TO PLEAD AN ACTIONABLE MATERIAL MISSTATEMENT OR OMISSION .................................................................................... 10

    A.     No Actionable Material Misstatements or Omissions About Fanapt® ................ 10

    B.     No Actionable Material Misstatements or Omissions About Hetlioz® .............. 13

    C.     No Actionable Material Misstatement or Omission About Tradipitant................ 14

    D.     Items 303 of Regulation S-K Did Not Require Disclosure.................................. 16

    E.     Items 503 of Regulation S-K Did Not Require Disclosure.................................. 17

IV.    PLAINTIFF FAILS TO PLEAD LOSS CAUSATION ................................................... 17

    A.     The Aurelius Report Was Not a Corrective Disclosure of Off-Label Marketing ............................................................................................................. 17

    B.     The FDA Action Filing Was Not a Corrective Disclosure as to Tradipitant........ 19

V.     PLAINTIFF'S REQUEST FOR LEAVE TO AMEND SHOULD BE DENIED............ 20

CONCLUSION.................................................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*30 Clinton Place Owners Inc.* v. *City of New Rochelle*,
No. 13 CV 3793(VB), 2014 WL 890482 (S.D.N.Y. Feb. 27, 2014) ........................................2

*Abely* v. *Aeterna Zentaris Inc.*,
No. 12 Civ. 4711(PKC), 2013 WL 2399869 (S.D.N.Y. May 29, 2013) ...................................2

*In re Advanced Battery Techs., Inc.*,
781 F.3d 638 (2d Cir. 2015)................................................................................................6

*In re Ambac Financial Grp., Inc. Sec. Litig.*,
693 F. Supp. 2d 241 (S.D.N.Y. 2010)..................................................................................12

*In re AstraZeneca Sec. Litig.*,
559 F. Supp. 2d 453 (S.D.N.Y. 2008)....................................................................................7

*ATSI Comm'cns Inc.* v. *Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007)....................................................................................................9

*Barrett* v. *PJT Partners Inc.*,
No. 16-CV-2841 (VEC), 2017 WL 3995606 (S.D.N.Y. Sept. 8, 2017)...................................9

*Billhofer* v. *Flamel Techs.*,
281 F.R.D. 150 (S.D.N.Y 2012) ..........................................................................................18

*C.D.T.S.* v. *UBS AG*,
No. 12 Civ. 4924 (KBF), 2013 WL 6576031 (S.D.N.Y. Dec. 13, 2013) ...............................8

*In re Canandaigua Sec. Litig.*,
944 F. Supp. 1202 (S.D.N.Y. 1996)......................................................................................16

*In re Citigroup Inc. Sec. Litig.*,
753 F. Supp. 2d 206 (S.D.N.Y. 2010)...................................................................................10

*City of Omaha Police & Fire Ret. Sys.* v. *Evoqua Water Techs. Corp.*,
No. 18-cv-10320 (AJN), 2020 WL 1529371 (S.D.N.Y. Mar. 30, 2020)................................16

*City of Pontiac Policemen's & Firemen's Ret. Sys.* v. *UBS AG*,
752 F.3d 173 (2d Cir. 2014)...........................................................................................11, 17

*Constr. Laborers Pension Tr. for S. Cal.* v. *CBS Corp.*,
No. 18-CV-7796 (VEC), 2020 WL 248729 (S.D.N.Y. Jan. 15, 2020)..................................13

*ECA & Local 134 IBEW Joint Pension Tr. of Chi.* v. *JP Morgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009)..................................................................................................2

*In re Elan Corp. Sec. Litig.*,
    543 F. Supp. 2d 187 (S.D.N.Y. 2008)..................................................................................3

*In re Eletrobras Sec. Litig.*,
    245 F. Supp. 3d 450 (S.D.N.Y. 2017).................................................................................11

*Emps.' Ret. Sys. of Gov. of the Virgin Islands* v. *Blanford*,
    794 F.3d 297 (2d Cir. 2015).................................................................................................3

*Emps.' Ret. Sys.* v. *Bank of Am. Corp.*,
    874 F. Supp. 2d 341 (S.D.N.Y. 2012)................................................................................10

*Emps.' Ret. Sys.* v. *Lockheed Martin Corp.*,
    875 F. Supp. 2d 359 (S.D.N.Y. 2012)..................................................................................3

*Fadem* v. *Ford Motor Co.*,
    352 F. Supp. 2d 501 (S.D.N.Y. 2005)................................................................................19

*In re FBR Inc. Sec. Litig.*,
    544 F. Supp. 2d 346 (S.D.N.Y. 2008)................................................................................12

*United States* v. *Fischer*,
    993 F. Supp. 2d 238 (E.D.N.Y. 2013) .................................................................................2

*Freudenberg* v. *E*Trade Fin. Corp.*
    712 F. Supp. 2d 171 (S.D.N.Y. 2010)................................................................................11

*Galestan* v. *OneMain Holdings, Inc.*,
    348 F. Supp. 3d 282 (S.D.N.Y. 2018)..................................................................................4

*Gardner* v. *Vanda Pharms. Inc.*,
    No. 17-cv-00464 (APM), 2020 WL 2542121 (D.D.C. May 19, 2020) ..........................1, 5, 12

*Gauquie* v. *Albany Molecular Research, Inc.*,
    No. 14 CV 6637 (FB) (SMG), 2016 WL 4007591 (E.D.N.Y. July 26, 2016)....................4, 11

*In re GeoPharma Inc. Sec. Litig.*,
    411 F. Supp. 2d 434 (S.D.N.Y. 2006)..................................................................................8

*Gilllis* v. *QRX Pharma Ltd.*,
    197 F. Supp. 3d 557 (S.D.N.Y. 2016)................................................................................14

*Glaser* v. *The9, Ltd.*,
    772 F. Supp. 2d 573 (S.D.N.Y. 2011)..................................................................................4

*In re Grupo Televisa Sec. Litig.*,
    368 F. Supp. 3d 711 (S.D.N.Y. 2019)................................................................................11

*Hayden* v. *Cty. of Nassau*,
    180 F.3d 42 (2d Cir. 1999)................................................................................................20

iii

*Holbrook* v. *Trivago N.V.*,
No. 17 CIV. 8348 (NRB), 2019 WL 948809 (S.D.N.Y. Feb. 26, 2019) ...............................16

*Ind. Pub. Ret. Sys.* v. *SAIC, Inc.*,
818 F.3d 85 (2d Cir. 2016)................................................................................................16

*In re Intercept Pharms., Inc. Sec. Litig.*,
No. 14 Civ. 1123(NRB), 2015 WL 915271 (S.D.N.Y. Mar. 4, 2015).....................................7

*In re Inv. Tech. Grp., Inc. Sec. Litig.*,
251 F. Supp. 3d 596 (S.D.N.Y. 2017)..................................................................................11

*Iowa Pub. Emps.' Ret. Sys.* v. *MF Global, Ltd.*,
620 F.3d 137 (2d Cir. 2010)..............................................................................................16

*In re ITT Educ. Servs., Inc. Sec. & S'holder Derivatives Litig.*,
859 F. Supp. 2d 572 (S.D.N.Y. 2012)............................................................................12, 13

*Jackson* v. *Abernathy*,
No. 19-1300-cv, 2020 WL 2755690 (2d Cir. May 27, 2020)........................................ passim

*Janus Capital Grp., Inc.* v. *First Derivative Traders*,
564 U.S. 135 (2011)............................................................................................................9

*Kalnit* v. *Eichler*,
264 F.3d 131 (2d Cir. 2001)................................................................................................2

*Lewis* v. *YRC Worldwide Inc.*,
No. 1:19-CV-0001, 2020 WL 1493915 (N.D.N.Y. Mar. 27, 2020) .....................................17

*Manavazian* v. *Atec Grp., Inc.*,
160 F. Supp. 2d 468 (E.D.N.Y. 2001) ...............................................................................12

*In re Manulife Fin. Corp. Sec. Litig.*,
276 F.R.D. 87 (S.D.N.Y 2011) ..........................................................................................19

*Menaldi* v. *Och-Ziff Capital Mgmt. Grp. LLC*,
277 F. Supp. 3d 500 (2d Cir. 2017) ...................................................................................11

*In re Moody's Corp. Sec. Litig.*,
599 F. Supp. 2d 493 (S.D.N.Y. 2009)..................................................................................7

*In re Mylan N.V. Sec. Litig.*,
379 F. Supp. 3d 198 (S.D.N.Y. 2019).................................................................................5

*In re Nokia Corp. Sec. Litig.*,
No. 96 CIV. 3752(DC), 1998 WL 150963 (S.D.N.Y. Apr. 1, 1998).....................................8

*Okla. Firefighters Pension & Ret. Sys.* v. *Lexmark Int'l, Inc.*,
367 F. Supp. 3d 16 (S.D.N.Y. 2019)..................................................................................11

*Okla. Law Enforcement Ret. Sys.* v. *Papa John's Int'l, Inc.*,
No. 18-CV-7927 (KMW), 2020 WL 1243808 (S.D.N.Y. Mar. 16, 2020) .............................13

*In re Omnicom Grp., Inc. Sec. Litig.*,
597 F.3d 501 (2d Cir. 2010)..................................................................................1, 18, 19

*Ong* v. *Chipotle Mexican Grill, Inc.*,
294 F. Supp. 3d 199 (S.D.N.Y. 2018)...........................................................................11, 13

*Ont. Teachers' Pension Plan Bd.* v. *Teva Pharm. Indus. Ltd.*,
No. 3:17-cv-558 (SRU), 2019 WL 4674839 (D. Conn. Sept. 25, 2019) .................................18

*In re OSG Sec. Litig.*,
12 F. Supp. 3d 622 (S.D.N.Y. 2014).....................................................................................4

*Richman* v. *Goldman Sachs Grp., Inc.*,
868 F. Supp. 2d 261 (S.D.N.Y. 2012)..................................................................................12

*Schaeffer* v. *Nabriva Therapeutics PLC*,
No. 19 Civ. 4183, slip op. (S.D.N.Y. Apr. 28, 2020) ...........................................................14

*In re Sequans Commc'n S.A. Sec. Litig.*,
No. 17-CV-4665 (FB) (SJB), 2019 WL 4805072 (E.D.N.Y. Sept. 30, 2019)........................18

*In re Signet Jewelers Ltd. Sec. Litig.*,
389 F. Supp. 3d 221 (S.D.N.Y. 2019)..................................................................................13

*Simon* v. *Abiomed, Inc.*,
37 F. Supp. 3d 499 (D. Mass. 2014) .....................................................................................4

*Singh* v. *Cigna Corp.*,
918 F.3d 57 (2d Cir. 2019)..................................................................................................12

*State Univ. Ret. Sys. of Ill.* v. *AstraZeneca PLC*,
334 F. App'x 404 (2d Cir. 2009) ...........................................................................................7

*Strougo* v. *Barclays PLC*,
105 F. Supp. 3d 330 (S.D.N.Y. 2015).....................................................................................5

*Teamsters Local 456 Pension Fund* v. *Universal Health Servs.*,
396 F. Supp. 3d 413 (E.D. Pa. 2019) .....................................................................................5

*Tongue* v. *Sanofi*,
816 F.3d 199 (2d Cir. 2016)............................................................................................14, 15

*Van Dongen* v. *CNinsure Inc.*,
951 F. Supp. 2d 457 (S.D.N.Y. 2013)................................................................................4, 7

*Vanleeuwen* v. *Keyuan Petrochemicals Inc.*,
No. 13 Civ. 6057 (PAC), 2014 WL 3891351 (S.D.N.Y. Aug. 8, 2014)...................................5

*In re Winstar Comm'cns*,
   No. 01 CV 3014(GBD), 2006 WL 473885 (S.D.N.Y. Feb. 27, 2006) .....................................18

*Youngers* v. *Virtus Inv. Partners Inc.*,
   195 F. Supp. 3d 499 (S.D.N.Y. 2016).......................................................................................5

**STATUTE**

Securities Exchange Act of 1934 § 20(a),
   15 U.S.C. § 78t.......................................................................................................................20

## PRELIMINARY STATEMENT[1]

In its opposition brief, Plaintiff continues its campaign to convert a failed Qui Tam Action alleging off-label marketing practices, and a dispute with the FDA about clinical trial requirements, into securities fraud.  This campaign fails for several reasons.

**Qui Tam Allegations.**  The purportedly "unprecedented" level of "detail" (Opp'n 1) littered throughout Plaintiff's opposition brief suggests, ***at most***, that Vanda engaged in aggressive sales tactics with healthcare providers.  But the Qui Tam Action has now been dismissed in its entirety because such allegations, even if true, do not establish that Vanda defrauded federal or state governments, as Plaintiff did not allege what off-label prescriptions (if any) were falsely presented to, and paid by, government payors.  *Gardner* v. *Vanda Pharms. Inc.*, No. 17-cv-00464 (APM), 2020 WL 2542121, at \*1, \*16 (D.D.C. May 19, 2020).  Nor do such allegations support claims for securities fraud, because—as the Second Circuit recently reiterated—aggressive marketing by sales staff does not equate with intent by senior executives to defraud Vanda's shareholders.  *Jackson* v. *Abernathy*, No. 19-1300-cv, 2020 WL 2755690, at \*2–3 (2d Cir. May 27, 2020).  Further, because Plaintiff cannot identify any false statement to shareholders regarding off-label marketing, Plaintiff cannot convert statements on other topics, which they admit were "literally true,"  into actionable omissions.  Finally, Plaintiff fails to address a controlling Second Circuit case—*In re Omnicom Group, Inc. Securities Litigation*, 597 F.3d 501, 512 (2d Cir. 2010)— that requires dismissal for failure to plead loss causation.

**FDA Action.**  Plaintiff also attempts to convert into securities fraud Vanda's dispute with the FDA about whether a dog study should be required before Vanda could proceed with a long-term study of tradipitant.  Although the Complaint and documents referenced therein clearly show

---

[1]    "Br." refers to Defendants' moving brief; "Opp'n" refers to Plaintiff's opposition brief; "Ex." refers to an exhibit to the Declaration of Brad D. Feldman, dated June 9, 2020; and all other capitalized terms not defined herein have the meanings set forth in Defendants' opening brief.

that the FDA communicated its final position only in December 2018, and although Plaintiff concedes that Defendants had no motive to lie to shareholders, Plaintiff insists that Vanda—which never assured investors one way or the other about the need for a dog study—should have disclosed its dialogue with the FDA the moment the FDA first sought the dog study, before any dialogue was exhausted. This, too, is not the stuff of securities fraud.

## ARGUMENT

## I.   PLAINTIFF FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER

Plaintiff concedes that it is not alleging that any Defendant had any "motive" to commit a fraud. In fact, Plaintiff concedes that Defendants *increased* their stock holdings in Vanda during the Putative Class Period,[2] making their losses greater when the stock price fell. (Opp'n 36, 42–43.) This argues strongly against the notion that any of them engaged in fraud. Lacking motive to commit fraud, the high burden on Plaintiff to plead a strong inference of scienter increases further, as Plaintiff must allege "correspondingly greater" evidence of conscious misbehavior or recklessness. *ECA & Local 134 IBEW Joint Pension Tr. of Chi.* v. *JP Morgan Chase Co.*, 553 F.3d 187, 199 (2d Cir. 2009) (citation omitted). Plaintiff fails to meet this high standard.

### A.   Plaintiff Fails to Plead that Defendants Acted with Scienter in Making Statements to Investors Regarding Fanapt® and Hetlioz®

The Opposition ignores binding Second Circuit precedent holding that, to plead scienter, a complaint must allege an intent to defraud the company's ***shareholders***, as opposed to some other group. (Br. 17); *ECA*, 553 F.3d at 202–03; *Kalnit* v. *Eichler*, 264 F.3d 131, 141 (2d Cir. 2001). By not addressing this point, Plaintiff has conceded it.[3]

---

[2]   Relying only on cases in other circuits, Plaintiff asks this Court to ignore SEC filings showing that Individual Defendants increased their Vanda stock holdings during the Putative Class Period. (Opp'n 42.) But Courts in this Circuit routinely consider such SEC filings on motions to dismiss for the truth of their contents. *See, e.g.*, *Abely* v. *Aeterna Zentaris Inc.*, No. 12 Civ. 4711(PKC), 2013 WL 2399869, at *22 (S.D.N.Y. May 29, 2013).

[3]   *United States* v. *Fischer*, 993 F. Supp. 2d 238, 244 (E.D.N.Y. 2013); *see also 30 Clinton Place Owners Inc.* v. *City of New Rochelle*, No. 13 CV 3793(VB), 2014 WL 890482, at *1 n.1 (S.D.N.Y. Feb. 27, 2014).

Plaintiff instead attempts to conflate knowledge of alleged sales misconduct with intent to defraud shareholders. (Opp'n 30–32.) Plaintiff devotes pages to allegations concerning a single 2015 meeting, where Vanda's sales force purportedly was trained to promote Fanapt® and Hetlioz® off-label to healthcare providers. But, even assuming off-label marketing subsequently occurred, scienter for **securities** fraud cannot be based on intent to commit **consumer** fraud. As the Second Circuit recently observed in *Jackson*—where, unlike here, a jury concluded that consumers actually had been defrauded— "it is not at all apparent that the individuals whose states of mind are relevant to prove corporate scienter in the context of a *consumer fraud* action are the same individuals whose states of mind are relevant in the context of a *securities fraud* action." 2020 WL 2755690, at *2 n.2 (emphasis added). That conclusion applies with even greater force here, where the Qui Tam Action allegations are unproven and the case has been dismissed.[4]

Moreover, there is a disconnect between the sales employees on whom Plaintiff relies, and the Individual Defendants who made the Challenged Statements. In attempting to plead scienter, Plaintiff relies exclusively on information from Qui Tam Action witnesses Gardner and Bourgeois. But they are **sales employees** who are not alleged to have had **any** role in disclosures to shareholders, much less knowledge of the Individual Defendants' state of mind when making those statements. (Br. 17–18.) As recently made clear in *Jackson*, Gardner's and Bourgeois's allegations of purportedly improper sales practices cannot establish scienter absent pleaded "connective tissue" between those individuals and the company's alleged misstatements. 2020 WL 2755690, at *4; *see also In re Elan Corp. Sec. Litig.*, 543 F. Supp. 2d 187, 220 (S.D.N.Y. 2008) (no scienter absent facts that witness "was in a position to have knowledge regarding

---

[4]    Plaintiff cites to several cases for the unremarkable proposition that scienter can be inferred from reckless disregard of fraudulent conduct. (Opp'n 30.) But in each of those cases—unlike here—the misconduct occurred in connection with shareholder disclosures. *Emps.' Ret. Sys. of Gov. of the Virgin Islands* v. *Blanford*, 794 F.3d 297, 308 (2d Cir. 2015) (detailing defendants' "efforts to deceive auditors and investors and conceal the true facts about [the company's] excess inventory"); *City of Pontiac Gen. Emps.' Ret. Sys.* v. *Lockheed Martin Corp.*, 875 F. Supp. 2d 359, 370–72 (S.D.N.Y. 2012) (detailing defendant's "knowledge of or reckless[] disregard [for] the false financial picture [the company] had presented to the public").

communications with [the company's] senior management or the conclusions reached by . . . senior management upon receipt of this information").[5]

Plaintiff's attempt to distinguish *Simon* v. *Abiomed, Inc.*, 37 F. Supp. 3d 499 (D. Mass. 2014), falls flat. Plaintiff argues that *Simon* is different because the relevant witnesses were not present "at any meetings at which critical statements or admissions were made by senior management." (Opp'n 34 (citation omitted).) But the same is true here, as neither Gardner nor Bourgeois is alleged to have attended a single meeting where SEC filings were discussed or otherwise have insight as to senior management's state of mind in making *public statements*. *Simon*, 37 F. Supp. 3d at 522–23 (no allegations suggesting "defendants were aware that they were withholding vital information or at least were warned by others that this was so" (citation omitted)).

Plaintiff make a smattering of other scienter arguments, none of which succeeds:

*First*, Plaintiff argues that the resignations of Mr. Gibbs and Ms. Holland during the Putative Class Period support an inference of scienter. (Opp'n 32.) But Plaintiff does not explain, as required, how these resignations are "highly unusual and suspicious"; they do not cite "independent facts indicat[ing] that the resignation was somehow tied to the fraud alleged[.]" *Glaser* v. *The9, Ltd.*, 772 F. Supp. 2d 573, 598 (S.D.N.Y. 2011).[6] As to Gibbs, Plaintiff points only to his short tenure and marketing responsibilities (Opp'n 32; ¶ 104), but does not challenge that Mr. Gibbs "resigned to take a new position with another pharmaceutical company" (Ex. 1, Vanda 8-K filed Dec. 21, 2015). And, as to Ms. Holland, Plaintiff alleges only that she resigned

---

[5]  The cases Plaintiff cites only highlight this point, as the "low-level" employees in those cases all possessed this requisite insight. *See, e.g.*, *Galestan* v. *OneMain Holdings, Inc.*, 348 F. Supp. 3d 282, 300 (S.D.N.Y. 2018) (scienter alleged where former employees identified specific meetings at which the individual defendants discussed integration issues that were concealed from investors); *Gauquie* v. *Albany Molecular Research, Inc.*, No. 14 CV 6637 (FB) (SMG), 2016 WL 4007591, *2 (E.D.N.Y. July 26, 2016) (crediting allegations where plaintiff alleged that source was in position to "possess the information alleged").

[6]  The cases that Plaintiff cites describe resignations that are suspicious, unlike here. *In re OSG Sec. Litig.*, 12 F. Supp. 3d 622, 632 (S.D.N.Y. 2014) (two resignations supported scienter as to undisclosed tax issue only where one was on same day as IRS announced "massive amendment" to relevant bankruptcy filing and other was for a "seemingly pretextual reason"); *Van Dongen* v. *CNinsure Inc.*, 951 F. Supp. 2d 457, 474 (S.D.N.Y. 2013) (resignations supported but were "perhaps not dipositive" of scienter where one resignation was on the same day as release of suspicious sales report).

4

at some indefinite point after being asked to make the marketing strategy for Fanapt® more "aggressive" (¶¶ 102–03), but cites no facts connecting her resignation to misconduct.

*Second*, Plaintiff mischaracterizes Defendants' argument as to why allegations in the Qui Tam Action do not amount to "facts" sufficient to establish a strong inference of scienter. (Br. 14–15.) That Plaintiff's counsel "independently verified" the allegations by interviewing Gardner and Bourgeois (Opp'n 6) does not change that Gardner and Bourgeois can offer only ***unproven allegations***—insufficient in the dismissed Qui Tam Action. *See Gardner*, 2020 WL 2542121, at *16. Like the court in *Teamsters Local 456 Pension Fund* v. *Universal Health Services*, the Court can and should discount the weight of those unproven scienter allegations—even if it does not disregard them entirely. 396 F. Supp. 3d 413, 468 (E.D. Pa. 2019); *see also In re Mylan N.V. Sec. Litig.*, 379 F. Supp. 3d 198, 214–15 (S.D.N.Y. 2019) (noting only no "absolute rule" discounting allegations from other suit); *Youngers* v. *Virtus Inv. Partners Inc.*, 195 F. Supp. 3d 499, 516 n.10 (S.D.N.Y. 2016) (same). Indeed, many of the cases Plaintiff cites urging reliance on allegations in other suits involved complaints filed by prosecutors and regulators following investigations;[7] by contrast, here, the federal and 28 state governments ***declined*** to pursue the *qui tam* claims.[8]

*Third*, Plaintiff relies on the core operations doctrine to argue that the Individual Defendants must have known the Challenged Statements were false. (Opp'n 31.) But it is "exceedingly rare" that a statement is "so dramatic" that corporate scienter is established. *Jackson*, 2020 WL 2755690, at *3 (citation omitted). The "naked assertion" that a product is "key"—as Plaintiff argues here—cannot independently support a finding of scienter. *Id.* at *4.

---

[7]    *See In re Mylan*, 379 F. Supp. 3d at 214–15 (allegations from action filed by 47 state attorney generals against defendant); *Youngers*, 195 F. Supp. 3d at 516 (allegations from complaint filed following SEC investigation); *Strougo* v. *Barclays PLC*, 105 F. Supp. 3d 330, 343 (S.D.N.Y. 2015) (allegations premised on "credible" NYAG complaint following investigation); *Vanleeuwen* v. *Keyuan Petrochemicals Inc.*, No. 13 Civ. 6057 (PAC), 2014 WL 3891351, at *4 (S.D.N.Y. Aug. 8, 2014) (allegations from SEC complaint).

[8]    It is not accurate, as Plaintiff argues, that the government would have been required to move to dismiss the Qui Tam Action if it found the allegations lacking. (Opp'n 34 n.13.) The DOJ memo that Plaintiff cites says only that the DOJ "should consider" moving to dismiss frivolous claims; it is not required. (Capeci Decl., Ex. C at 3.)

**B.     Plaintiff Fails to Show that Defendants Acted with Scienter in Making Statements to Investors Regarding Tradipitant**

As with the sales practice allegations, Plaintiff admits that it does not allege any Defendant had any motive to commit securities fraud regarding the tradipitant clinical trial, or profited in any way from the alleged fraud.  (Opp'n 38.)  Instead, Plaintiff's entire scienter theory is that conscious misbehavior or recklessness is pleaded because Defendants purportedly were aware of information that contradicted their public statements.  (*Id.* at 36–37.)  Plaintiff's theory fails.

*First*, Plaintiff contradicts its own Complaint by arguing that Defendants *knew* in May 2018 that the FDA would in fact impose a partial clinical hold absent a dog study.  That theory is contradicted by allegations that the Company engaged in a months-long dialogue with the FDA beginning in May 2018; obtained a short extension of Study 2301 to continue tradipitant trials while this dialogue was ongoing; provided additional scientific evidence to the FDA in support of its position in August 2018; the hold was not actually imposed until December 2018; and the Company did not obtain the FDA's final position until January 2019.  (¶¶ 214–22, 224–25.)  Plaintiff asks the Court to disregard this "retelling" of the dialogue with the FDA (Opp'n 38), but those allegations derive from the Complaint and documents cited therein.  (*See* Br. 9–11.)  Further, the very court papers on which Plaintiff relies from the FDA Action show that Vanda had cause for optimism that the tradipitant clinical trials could then proceed.[9]  This Court is required to weigh the competing inferences from these pleaded facts, *In re Advanced Battery Techs., Inc.*, 781 F.3d 638, 644 (2d Cir. 2015), and the far more plausible inference is that Vanda did not *know* that its efforts would be unsuccessful; if it had, it would have pursued a different course, such as suing the FDA earlier to challenge its position.

---

[9]     (*See* Ex. 3 at 12, Pl.'s Br. Supp. Mot. Summ. J., *Vanda Pharm. Inc.* v. *FDA*, 1:19-cv-00301 (D.D.C. July 10, 2019) (explaining that when Vanda submitted its proposal for a 12-month extension of Study 2301 in December 2018, Vanda was "assum[ing] that [the] FDA had relaxed its stance" in light of their discussions because the FDA did *not* take any action after Vanda filed Study 2302—a similar 12-month extension—more than two months earlier); *see* ¶ 199 (referencing Ex. 3).)

6

*Second*, Plaintiff has not identified any public statement that is ***inconsistent*** with Vanda's private dialogue with the FDA, much less an Individual Defendant with intent to defraud.  Vanda spoke accurately when it said that the short-term study was ongoing, with results expected at the end of 2018.  (¶¶ 386, 397.)  Vanda further spoke accurately when it warned in general terms that clinical holds may be imposed during the approval process.  (¶ 392.)  Vanda also made clear that additional, longer studies would be needed before the FDA could approve tradipitant.  (¶¶ 219, 405.)  None of these Challenged Statements contradict information available internally.

*Third*, at most, Plaintiff contends that Vanda was overly optimistic when, in December 2019, Vanda said it soon would be meeting with the FDA to "further define and confirm the path towards registration of tradipitant" (¶ 403) and "implementing shortly" a "12-month protocol" (¶ 405).  Even if Vanda were overly optimistic about the prospects for moving forward with longer-term trials, that, too, would not establish intent to defraud shareholders.  As explained in *In re AstraZeneca Securities Litigation*, "if the management of the company releases positive reports about the drug to the public along the way which the management honestly believes to be true, and where there is no reckless disregard for truth, then that is not securities fraud[.]"[10]  559 F. Supp. 2d 453, 470 (S.D.N.Y. 2008), *aff'd sub nom. State Univ. Ret. Sys. of Ill.* v. *AstraZeneca PLC*, 334 F. App'x 404 (2d Cir. 2009).  Here, Vanda did not even go so far as to express optimism about the ultimate prospect for approval of tradipitant—at most, it expressed optimism about moving on with a longer-term study.  And, when that optimism did not pan out, Vanda promptly filed litigation disclosing the dispute (¶ 226)—undermining any inference of fraud.

---

[10]    The cases on which Plaintiff relies are readily distinguishable, as each involves specific statements that were directly contradicted by information that defendants then knew.  *In re Intercept Pharms., Inc. Sec. Litig.*, No. 14 Civ. 1123(NRB), 2015 WL 915271, at *7 (S.D.N.Y. Mar. 4, 2015) (defendants disclosed favorable results, but concealed unfavorable results, from study); *Van Dongen*, 951 F. Supp. 2d  at 473 (statements describing compensation as having no equity component directly contradicted by defendants' knowledge of undisclosed equity compensation plan); *In re Moody's Corp. Sec. Litig.*, 599 F. Supp. 2d 493, 515 (S.D.N.Y. 2009) (plaintiff identified "multiple statements by high ranking [company] officers indicating that [the company] was aware that its independence, ratings, and methodology were compromised" at the same time that the company "continued to assert its independence, insist that its ratings were accurate, and maintain that its methodology was sound").

Plaintiff declines to explain why Vanda would swiftly file a public lawsuit against the FDA if Vanda was attempting to conceal its dispute with the FDA, instead arguing that such allegations are relevant only to motive that Plaintiff does not allege.  (Opp'n 38.)  But Plaintiff's pleading burden is very high here—it must allege facts that give rise to a "strong inference" of fraudulent intent, and Vanda's transparency by filing its lawsuit undermines any inference of scienter based on conscious disregard and recklessness.  *See In re GeoPharma Inc. Sec. Litig.*, 411 F. Supp. 2d 434, 448 (S.D.N.Y. 2006) (defendant "not *hiding* anything from the market" by issuing press release drawing attention to purported fraud (emphasis in original)); *In re Nokia Corp. Sec. Litig.*, No. 96 CIV. 3752(DC), 1998 WL 150963, at *12–13 (S.D.N.Y. Apr. 1, 1998) (voluntary issuance of press release "undercuts the allegation that defendants were acting recklessly").

## II.    PLAINTIFF FAILS TO PLEAD FRAUD WITH PARTICULARITY

### A.    No Particularized Allegations About Fanapt® and Hetlioz®

Plaintiff does not contest that it is required to plead fraud with particularity as to ***each*** Defendant.  (Br. 20–23.)  In opposition, Plaintiff lists paragraph numbers from the Complaint, purportedly demonstrating the participation of each Defendant.  (Opp'n 30.)  But these paragraphs only prove Defendants' point, as the overwhelming majority generally lump in Vanda's "senior management" as a group, and are not specific to any Individual Defendant.  *C.D.T.S.* v. *UBS AG*, No. 12 Civ. 4924 (KBF), 2013 WL 6576031, at *6 (S.D.N.Y. Dec. 13, 2013) ("[s]cienter must be separately pled and individually supportable as to each defendant").

**Dr. Polymeropoulos.**  The only allegations specific to CEO Polymeropoulos are out-of-context snippets, largely from a single meeting in November 2015, at which Dr. Polymeropoulos allegedly trained Vanda's sales force to market Fanapt® and Hetlioz® off-label.  (*See* Br. 21–22.)  These allegations fail because none concerns his intent or knowledge regarding SEC filings and other disclosures to shareholders.  (*See supra* Part I.)

8

**Messrs. Kelly, Gibbs and Reverberi.**  Even thinner are Plaintiff's allegations regarding Messrs. Kelly and Gibbs, who merely attended the November 2015 meeting (¶ 83), and Mr. Reverberi, who attended a second sales meeting in 2018 and purportedly pressed sales staff to hit sales targets (¶¶ 113, 180).  Such allegations do not establish knowledge of wrongdoing, much less intent to deceive shareholders with the Challenged Statements.  *ATSI Comm'cns Inc.* v. *Shaar Fund, Ltd.*, 493 F.3d 87, 104 (2d Cir. 2007) (fraud not pleaded where plaintiff did not allege with particularity "what the defendants did" or "how this activity affected" company's stock).  Further, Plaintiff concedes that Mr. Gibbs did not make any false statements, requiring his dismissal.[11]

**No Corporate Scienter.**  Unable to plead fraud with particularity as to any Individual Defendant, Plaintiff speculates about the intent of *other* Vanda employees, such as David James (head of sales), Tom Griffin (head of sales after James), Paul Ramirez (an outside consultant), Kate Holland (VP of sales), and Kate Arnold (head of compliance), as well as Gardner and Bourgeois.  (Opp'n 29–30.)  But Plaintiff does not plead that **any** of these employees were responsible for communications with shareholders, and the Second Circuit expressly rejected Plaintiff's corporate scienter theory in *Jackson,* holding that corporate scienter cannot be established where the Court can "only guess what role those employees played in crafting or reviewing the challenged statements and whether it would otherwise be fair to charge the Corporate Defendants with their knowledge."  2020 WL 2755690, at *4; *Barrett* v. *PJT Partners Inc.*, No. 16-CV-2841 (VEC), 2017 WL 3995606, at *7 (S.D.N.Y. Sept. 8, 2017) ("determinative question" is not involvement in misconduct, but rather, involvement in public disclosures).[12]

---

[11]    Plaintiff contends that Mr. Gibbs is liable for the Form 10-Q Vanda filed on November 4, 2015, simply because he was part of Vanda's management at the time it was filed.  (Opp'n 44 n.22.)  But because Mr. Gibbs did not sign or certify that filing, he cannot be liable for its contents. *Janus Capital Grp., Inc.* v. *First Derivative Traders*, 564 U.S. 135, 144 (2011).  Plaintiff fails to respond to Defendants' *Janus* argument (Br. 42), and therefore has conceded it.  Regarding tradipitant, Plaintiff concedes, as it must, that Mr. Gibbs cannot be liable for any of the Challenged Statements, as all were made after December 2015, when he left Vanda.  (Opp'n 23 n.8.)

[12]    The cases Plaintiff cites in support of this argument pre-date the Second Circuit decision in *Jackson,* and are distinguishable because each of those cases involved particularized allegations that the employees, while not executive-level, contributed to public disclosures or otherwise directly participated in the company's fraud on

## B.    No Particularized Allegations About Tradipitant

With respect to the Tradipitant Allegations, Plaintiff does not and cannot refute that it has made no specific allegations as to any Defendant's participation in the alleged fraud.  Although Plaintiff contends that "the decision not to conduct the required safety test was necessarily made by, or approved by, Vanda's senior executives[,]" Plaintiff makes no particularized allegations as to who made that decision, when it was made, or why any Individual Defendant would have intended to deceive shareholders about it.  (Opp'n 37.)  This failure is fatal.

Nor can Plaintiff rely on a corporate scienter theory to support these claims.  Plaintiff must offer facts showing intent to deceive, either by those who made the false statement or by officers or directors directly involved in its dissemination.  *Jackson*, 2020 WL 2755690, at *3.  Plaintiff here does not identify any such individual whose intent can be imputed to the Company.

## III.   PLAINTIFF FAILS TO PLEAD AN ACTIONABLE MATERIAL MISSTATEMENT OR OMISSION

### A.    No Actionable Material Misstatements or Omissions About Fanapt®

Plaintiff does not dispute that Defendants never made false statements about the marketing practices for Fanapt® and Hetlioz®—indeed, Defendants never addressed the marketing practices *at all*.  Plaintiff now concedes that it alleges only a ***single*** false statement, and contends that all other Challenged Statements are actionable as omissions.  (Opp'n 14.)  Plaintiff is wrong.

As to the sole alleged misstatement, Plaintiff argues that it was false for Vanda to state "we are recommending Fanapt® as a second-line treatment."  (*Id.* at 14–15.)  But Plaintiff concedes that this statement is true; as sold to patients, the FDA-approved label (*i.e.*, the packaging) expressly describes Fanapt® as recommended for patients who experienced a side effect from another antipsychotic.  (¶ 66.)  This true statement does not become false simply because, as

---

shareholders.  *See Pa. Pub. Sch. Emps.' Ret. Sys.* v. *Bank of Am. Corp.*, 874 F. Supp. 2d 341, 363 (S.D.N.Y. 2012) (vice president and assistant vice president whose intent could be imputed to corporation participated in obtaining shareholder approval for offering); *In re Citigroup Inc. Sec. Litig.*, 753 F. Supp. 2d 206, 237 (S.D.N.Y. 2010) (imputing scienter of credit strategist based on statements he made to the public at an investor conference).

10

Plaintiff now contends, Vanda's sales people were not sufficiently trained about whether the drug was a first-line or second-line treatment (¶¶128–31).[13]

With respect to the alleged omissions, Plaintiff does not—and cannot—dispute that a corporation has no affirmative duty to disclose uncharged, unadjudicated wrongdoing. (Br. 25–28); *City of Pontiac Policemen's & Firemen's Ret. Sys.* v. *UBS AG*, 752 F.3d 173, 184 (2d Cir. 2014). To avoid this obstacle, and because Vanda ***never*** assured investors that off-label marketing was not occurring, Plaintiff contorts Defendants' statements on various other topics to somehow create a duty to disclose purported off-label marketing. (Opp'n 15.) Courts have repeatedly rejected this argument. *Menaldi* v. *Och-Ziff Capital Mgmt. Grp. LLC*, 277 F. Supp. 3d 500, 513 (2d Cir. 2017) (statements describing compliance program not rendered false by potential compliance violations known to the company); *Ong* v. *Chipotle Mexican Grill, Inc.*, 294 F. Supp. 3d 199, 232–33 (S.D.N.Y. 2018) (statements discussing company's food safety practices did not create duty to disclose allegations that those practices were not followed). Plaintiff's cases are inapposite because, unlike here, defendants in those cases actually spoke on the precise topic at issue.[14]

Plaintiff's arguments for the purported "six sets of omissions" fail for other reasons as well:

- **Set 1 (Opp'n 15):** The true statements that Fanapt® is a "second line treatment" and the "sales team is making progress in introducing Fanapt® as an additional option in treating

---

[13]  Plaintiff relies on *Gauquie*, 2016 WL 4007591, and *Freudenberg* v. *E*Trade Fin. Corp.* 712 F. Supp. 2d 171 (S.D.N.Y. 2010), but *Gauquie* did not address falsity, *see* 2016 WL 4007591, at *2–3, and, in *Freudenberg*, falsity was adequately alleged only because the company's represented its loan portfolio as "superprime" (*i.e.*, high quality or conservative) when most of its loans did not qualify as even "prime," 712 F. Supp. 2d at 183. There is no such disconnect here.

[14]  Plaintiff relies on cases where, unlike here, defendants affirmatively suggested that alleged misconduct was not occurring or were otherwise directly connected to the omitted facts. *See, e.g.*, *In re Grupo Televisa Sec. Litig.*, 368 F. Supp. 3d 711, 721 (S.D.N.Y. 2019) (corporation's statement that it "in no way knew of, or condoned, any bribe or other improper conduct" rendered misleading by non-disclosure of known bribery payments); *Okla. Firefighters Pension & Ret. Sys.* v. *Lexmark Int'l, Inc.*, 367 F. Supp. 3d 16, 31 (S.D.N.Y. 2019) (statements that inventory levels were "flat" or "neutral" rendered misleading where inventory was elevated far beyond company's target threshold); *In re Inv. Tech. Grp., Inc. Sec. Litig.*, 251 F. Supp. 3d 596, 613 (S.D.N.Y. 2017) (statement that company's business model was "transparent and accurate" rendered misleading by omission of misconduct because it suggested that the company "complied with applicable laws and did not face any regulatory risk"); *In re Eletrobras Sec. Litig.*, 245 F. Supp. 3d 450, 463 (S.D.N.Y. 2017) (statements emphasizing strong ethical standards and adherence to Code of Ethics rendered misleading by omission of bribery and bid-rigging scheme).

11

adult patients with schizophrenia" do not become false because Plaintiff now contends that the sales team used impermissible sales practices. (Opp'n 15.) Rather, a claim can be stated only if the challenged statements "suggest that the undisclosed improper activity alleged by [p]laintiff *was not occurring*." *In re ITT Educ. Servs., Inc. Sec. & S'holder Derivatives Litig.*, 859 F. Supp. 2d 572, 579 (S.D.N.Y. 2012) (emphasis added). Vanda never said that off-label marketing was not occurring.

- **Set 2 (Opp'n 16):** The out-of-context statements that Vanda was "interested in pediatric applications" of Fanapt® and was "promoting the benefits of Fanapt® for adult schizophrenia patients" say nothing about potential off-label use of Fanapt® by physicians for children. Tellingly, it is Plaintiff who misleadingly inserted the word "only" before "adult" (Opp'n 16); Vanda never said it was promoting Fanapt® "*only*" for adults. (¶¶ 265, 280, 286, 302); *In re ITT Educ. Servs.*, 859 F. Supp. 2d at 579.

- **Set 3 (Opp'n 16):** Plaintiff concedes that it was "literally true" that the Fanapt® sales team was expanded from 12 to 50 people, as disclosed. Because there is no duty to disclose unadjudicated wrongdoing (Br. 26–27), Plaintiff is wrong that merely stating the size of the sales force somehow required Vanda to disclose off-label marketing practices.

- **Set 4 (Opp'n 17):** The general statement that sales and profitability depend on Vanda's ability to "successfully commercialize" Fanapt® say absolutely nothing about Vanda's training methods, marketing strategies, or off-label prescriptions. Further, this statement is quintessential "puffery"; the contrary cases cited by Plaintiff address statements that are far less general, where actual facts were misrepresented.[15]

- **Set 5 (Opp'n 17):** Plaintiff concedes that Vanda correctly disclosed that Fanapt® has a low incidence of akathisia (a side effect) but argues that "while legitimate," that statement required Vanda to disclose off-label marketing practices. That is nonsensical; Vanda correctly described a medical issue, not a marketing issue—there is nothing false here.[16]

- **Set 6 (Opp'n 17):** Plaintiff argues that Vanda falsely represented that failure to comply with governmental sales and marketing regulations "could harm [its] business" because that harm had already occurred. But courts routinely reject that argument unless the risk has become a "'near certainty.'" *In re FBR Inc. Sec. Litig.*, 544 F. Supp. 2d 346, 362 (S.D.N.Y. 2008) (quoting *Rombach* v. *Chang*, 355 F.3d 164, 173 (2d Cir. 2004)). Here, there is no allegation that Vanda's business has been harmed by the allegations in the now-dismissed Qui Tam Action. *Gardner*, 2020 WL 2542121, at *16. Moreover, generalized statements about compliance are not actionable under *Singh* v. *Cigna Corp.*, 918 F.3d 57

---

[15]   *See Richman* v. *Goldman Sachs Grp., Inc.*, 868 F. Supp. 2d 261, 279–80 (S.D.N.Y. 2012) ("repeated assertions that [the company] complies with the letter and spirit of the law" were not puffery); *Manavazian* v. *Atec Grp., Inc.*, 160 F. Supp. 2d 468, 480–81 (E.D.N.Y. 2001) (company's representation that it had "the 'framework' for 'organic growth' and the 'blueprint' for 'hyper-growth[,]'" when it knew such growth could not be achieved, was not puffery).

[16]   Plaintiff's reliance on *In re Ambac Financial Group, Inc. Securities Litigation*, is entirely misplaced, as the case pertained to a defendant's "affirmative[] characteriz[ion] [of] management practices as 'adequate,' 'conservative,' 'cautious,' and the like[,]" when they were not. 693 F. Supp. 2d 241, 271 (S.D.N.Y. 2010) (corporate officers' characterization of company's underwriting standards as "rigorous" and "conservative" were misleading because a lower standard was actually used) (citation omitted).

(2d Cir. 2019), and Plaintiff is simply wrong (Opp'n 21) in arguing that *Singh*—which addressed a very similar alleged misstatement—was narrowed to certain facts.[17]

### B.    No Actionable Material Misstatements or Omissions About Hetlioz®

With respect to the Hetlioz® Challenged Statements, Plaintiff now concedes, as it must, that the FDA approved Hetlioz® for use in both blind and sighted patients. (Opp'n 9.) Plaintiff now pivots away from its Complaint (¶¶ 5, 149, 156, 161, 173, 354–55, 360–61, 372–73) to instead criticize the purported marketing of Hetlioz® to patients with sleep conditions other than Non-24.[18] (Opp'n 21–22.) But even assuming Vanda marketed Hetlioz® for other sleep conditions, it never made any misrepresentation to the contrary. Plaintiff points only to Vanda's general and accurate statements about success in marketing Hetlioz® as a treatment for Non-24, arguing that these somehow became false because Vanda's broad-based education strategy may have led psychiatrists also to write prescriptions for patients with other sleep disorders. (Opp'n 22). That makes no sense; as Plaintiff admits, Vanda did seek to increase awareness about Non-24 and Hetlioz®, rendering its statements entirely accurate. Vanda never commented at all on its on- versus off-label marketing strategy, or suggested off-label marketing was not happening. *See Ong*, 294 F. Supp. 3d at 226–27; *In re ITT Educ. Servs.,* 859 F. Supp. 2d at 579.

---

[17]  Other courts applying *Singh* have found similar "broad, aspirational, and vague" statements regarding compliance "quintessential puffery," *Okla. Law Enforcement Ret. Sys.* v. *Papa John's Int'l, Inc.*, No. 18-CV-7927 (KMW), 2020 WL 1243808, *6–7 (S.D.N.Y. Mar. 16, 2020), particularly where, as here, they are not coupled with any statements "reassure[ing] investors" that the company was, in fact, complying with the cited law, *Constr. Laborers Pension Tr. for S. Cal.* v. *CBS Corp.*, No. 18-CV-7796 (VEC), 2020 WL 248729, at *8 (S.D.N.Y. Jan. 15, 2020). Plaintiff also mischaracterizes *In re Signet Jewelers Ltd. Sec. Litig.*, 389 F. Supp. 3d 221 (S.D.N.Y. 2019). The *Signet* court merely clarified that *Singh* did not state a new rule. *Signet*, 389 F. Supp. at 229.

[18]  Plaintiff repeatedly mis-cites its own sources. For example, Plaintiff assumes that Vanda must have marketed off label because diagnostic testing purportedly is "require[d]" to diagnose Non-24 (Opp'n 2, 8), but Plaintiff's own source shows that such tests are not even the primary diagnostic method identified by the National Sleep Foundation. (Ex. 4, *Non-24 Sleep Wake Disorder Symptoms & Diagnosis*, National Sleep Foundation, available at https://www.sleepfoundation.org/non-24-sleep-wake-disorder/symptoms-diagnosis.) Likewise, Plaintiff's repeated refrain that there are "less than 100 sighted individuals worldwide [who] have Non-24" (Opp'n 22 n.7; *see also id.* at 2, 9, 10), both mischaracterizes the article from which it draws this conclusion and is irrelevant. That article, from 2014, references a single doctor's statement that "there have been fewer than 100 cases of sighted people with Non-24 . . . *reported in the scientific literature*." (Ex. 5, *Endo Type: Who Really Has Non-24,* MedPage Today (Mar. 28, 2014), available at https://www.medpagetoday.com/endocrinology/generalendocrinology/44984 (emphasis added); *see also* ¶ 148.) This figure thus does not purport to count all patients worldwide, and is significantly outdated—indeed, the article was published *more than a year before the Putative Class Period began.*

13

### C.      No Actionable Material Misstatement or Omission About Tradipitant

Plaintiff argues that the Challenged Statements regarding the tradipitant gastroparesis study were misleading because, notwithstanding ongoing dialogue with the FDA, Vanda purportedly "knew" in May 2018 that the FDA would impose a clinical hold on future studies of tradipitant in December.  (Opp'n 23.)  This argument is meritless, for multiple reasons.

*First*, conflating the meaning of the words "required" and "final," Plaintiff relies heavily on Vanda's purported "admission" that the FDA described the dog study as a "requirement." (Opp'n 23–24.)  Vanda admitted no such thing; to the contrary, Vanda repeatedly put quotes around "requirement" in its FDA complaint—clearly conveying Vanda's view that a dog study was *not* required.  (Ex. 6, FDA Action Compl. ¶¶ 1, 21, 90.)  In any event, semantics aside, Vanda's course of conduct from May to December demonstrates unequivocally that Vanda did not view the FDA's May 2018 position as final, and the FDA Action complaint recounts Vanda's months of effort to engage in dialogue with the FDA.  (*Id.* ¶¶ 94–96.)  As the Second Circuit has made clear, "[c]ontinuous dialogue between the FDA and the proponent of a new drug is the essence" of the approval process, and "differing views" are "inherent to the nature of a dialogue[.]" *Tongue* v. *Sanofi*, 816 F.3d 199, 211 (2d Cir. 2016).  It would make little sense for Vanda to undertake its dialogue with the FDA if it believed that the imposition of a clinical hold was a foregone conclusion.  *Gilllis* v. *QRX Pharma Ltd.*, 197 F. Supp. 3d 557, 600 (S.D.N.Y. 2016) (finding "implausible" that defendant would "continue[] to invest substantial time and resources in clinical studies . . . that it knew were doomed to fail").

*Second*, none of the Challenged Statements about Vanda's clinical studies were rendered misleading because, for most of the Putative Class Period, Vanda disclosed only that clinical studies were in progress—a true fact at that time.  *Schaeffer* v. *Nabriva Therapeutics PLC*, No. 19 Civ. 4183, slip op. at 27 (S.D.N.Y. Apr. 28, 2020) (finding no standalone duty to disclose interim FDA feedback).  Nor did Vanda mislead when, towards the end of the Putative Class Period on

14

the December 3, 2018 earnings call, it disclosed that it would be meeting with the FDA concerning a path forward, and would be implementing a 12-month protocol. (*Supra* p. 7.) Dr. Polymeropoulos could not possibly know on December 3—one week before the 12-month protocol was even submitted to the FDA (¶ 220), and two weeks before the FDA imposed the partial clinical hold (¶ 221)—that the FDA would decline to approve the 12-month protocol, much less that the Company's actions to modify its position would prove unsuccessful. (*See* ¶¶ 220–21). As the Second Circuit explained in *Tongue*, where the FDA repeatedly expressed concern with defendants testing methodology, "[d]efendants need not have disclosed the FDA feedback merely because it tended to cut against their projections [of FDA approval.]" 816 F.3d at 212. That Vanda's projection might have been optimistic does not make it misleading—even if it omitted "a fact that would have potentially undermined" the projection. *Tongue*, 816 F.3d at 211. Furthermore, this projection must be viewed in full context, and participants on the earnings call were specifically referred to Vanda's risk disclosures, which amply disclosed the risk of clinical holds and other delays in completing clinical trials. (Ex. 2 at 4, Dec. 3, 2018 Earnings Call; *see* Br. 32–33.)

*Third*, Plaintiff contends that Vanda misstated the risk that its failure to comply with applicable requirements may subject it to clinical holds. (Opp'n 24.) To the contrary, Vanda extensively disclosed the very risk of a clinical hold that ultimately came to pass in late December 2018 (Br. 32–33 & n.17, 39 n.23), and Plaintiff's only response is cursorily to describe these robust warnings as "woefully inadequate" (Opp'n 26). That the FDA would ultimately reject Vanda's position (*id.* at 25) was an open question until the FDA actually imposed the partial clinical hold in December 2018—after the alleged misstatements were made.

*Finally*, Plaintiff incorrectly states that Defendants "concede that the tradipitant statements are not forward-looking." (Opp'n 26.) Defendants made no such concession—to the contrary, Defendants argued that they were not required to predict the future. (Br. 33–35.) Indeed, the case

15

upon which Plaintiff relies—*Iowa Public Employees' Retirement System* v. *MF Global, Ltd.*, 620 F.3d 137, 144 (2d Cir. 2010)—makes clear that a statement is forward-looking and subject to heightened protections if it addresses future risks, which is exactly what Vanda's statements did.

## D.    Items 303 of Regulation S-K Did Not Require Disclosure

Plaintiff does not dispute, let alone address, Defendants' multiple cited authorities concerning Item 303, all of which demonstrate that Item 303 did not require disclosure of the alleged off-label marketing omissions.  (Br. 35–37.)  As those authorities make clear, marketing plans (which necessarily include off-label marketing) are not "events, trends, or uncertainties" required to be disclosed under Item 303.  *In re Canandaigua Sec. Litig.*, 944 F. Supp. 1202, 1210–11 (S.D.N.Y. 1996); (Br. 36).  Nor must a company disclose its internal business decisions under Item 303, even when those decisions are alleged to be part of a fraud.  *City of Omaha Police & Fire Ret. Sys.* v. *Evoqua Water Techs. Corp.*, No. 18-cv-10320 (AJN), 2020 WL 1529371, at *30 (S.D.N.Y. Mar. 30, 2020).  And, while Plaintiff admits that Item 303 concerns trends "reasonably likely" to impact "financial conditions or results of operation" (Opp'n 26), its only effort to satisfy this prong of Item 303 is to cite paragraphs of the Complaint that fail to plead ***any*** impact ***whatsoever*** on Vanda's financial condition from alleged off-label marketing (*id.* at 27 (citing ¶¶ 410–13)).  Similarly, with respect to tradipitant, Plaintiff makes only a conclusory assertion that the partial clinical hold could "reasonably be expected to materially impact . . . future revenues" despite that tradipitant has never been offered for sale.  (*Id.*)  Plaintiff does not explain how Vanda would estimate revenue impact on non-existent sales of an unapproved drug.  *See Holbrook* v. *Trivago N.V.*, No. 17 CIV. 8348 (NRB), 2019 WL 948809, at *12–14 (S.D.N.Y. Feb. 26, 2019), *aff'd sub nom. Shetty* v. *Trivago N.V.*, 796 F. App'x 31 (2d Cir. 2019) (no Item 303 violation where plaintiff did not cite evidence that omitted facts would have a material impact on revenue).

Plaintiff's reliance on *Indiana Public Retirement System* v. *SAIC, Inc.*, 818 F.3d 85 (2d Cir. 2016), is misplaced.  In *SAIC*, disclosure of the alleged misconduct was required because the

16

defendants had *actual knowledge* from an internal audit that the company was required to repay a significant portion of its revenue. *Id.* at 95 & n.8 (explaining that the uncertainty at issue was far more severe than that "arising out of a run-of-the-mill civil enforcement investigation" and did, ultimately, lead to "substantial liability"). By contrast, here, Plaintiff identifies no financial impact whatsoever to Vanda's financial statements from either off-label marketing or the dispute with the FDA. Much less does Plaintiff satisfy *SAIC*'s requirement that the uncertainty was *actually known* to the registrant at the time of the filing. *Id.* at 95; *see Lewis* v. *YRC Worldwide Inc.*, No. 1:19-CV-0001 (GTS/ATB), 2020 WL 1493915, at *9 (N.D.N.Y. Mar. 27, 2020) (distinguishing *SAIC* where "it is not reasonable to expect [d]efendants to have known the outcome").

### E.    Items 503 of Regulation S-K Did Not Require Disclosure

With respect to Defendants' Item 503 argument with respect to Fanapt® and Hetlioz®, Plaintiff misrepresents *UBS*, 752 F.3d 173, as standing for the proposition that "Item 503 requires disclosure of the risks related to illegal conduct." (Opp'n 28.) In fact, the court in *UBS* specifically *rejected* the plaintiff's argument that Item 503 required the defendant to disclose its involvement in an alleged tax fraud scheme, holding that "companies do not have a duty to disclose uncharged, unadjudicated wrongdoing." 752 F.3d at 184 (citation omitted).

With respect to tradipitant, Plaintiff makes no attempt to show why Item 503 required any further disclosure beyond Vanda's warnings, including that that tradipitant may never be commercially viable. (Br. 38–39.) It therefore has conceded the point.

### IV.    PLAINTIFF FAILS TO PLEAD LOSS CAUSATION

### A.    The Aurelius Report Was Not a Corrective Disclosure of Off-Label Marketing

Plaintiff asserts that the "Aurelius Report publicly disclosed *for the first time* that Vanda was engaged in an off-label promotion scheme for Fanapt and Hetlioz[.]" (Opp'n 39 (emphasis added).) But that is simply not true. The Qui Tam Action—which made that same allegation—

was unsealed and made public on February 4, 2019, more than a week prior to the publication of the Aurelius Report.  (Br. 40.)

Plaintiff fails to mention, let alone address, the controlling Second Circuit case that mandates dismissal:  *In re Omnicom Group, Inc. Securities Litigation*, 597 F.3d 501, 512 (2d Cir. 2010).  In *Omnicom,* the Second Circuit held that a negative journalistic characterization of facts that are already public *cannot* qualify as a corrective disclosure.  (Br. 39–40.)  That is precisely the case here.

Having failed to distinguish *Omnicom*, Plaintiff instead offers flawed excuses for its defective pleading.  Plaintiff contends that the Qui Tam Action's unsealing should not matter because Defendants do not show that investors "knew about" the Qui Tam Action, and the unsealing did not attract adequate publicity.  (Opp'n 40.)  These arguments fail because the complaint was a publicly filed document and Plaintiff's own pleading relies on the "fraud on the market doctrine" to prove reliance, presuming that the market promptly digests *all* publicly available information.  (¶¶ 443, 445–46.)  As *Omnicom* explains, and Plaintiff does not dispute, when a shareholder relies on the fraud-on-the-market theory, it necessarily concedes that public information is promptly digested and reflected in the stock price.  597 F.3d at 511.  Neither of the cases cited by Plaintiff refute this point:  *Billhofer* v. *Flamel Technologies* is a class certification decision, and did not address whether a subsequent disclosure of already-public information can plead loss causation, 281 F.R.D. 150, 160 (S.D.N.Y 2012), and *In re Sequans Communications S.A. Securities Litigation*, rested on a finding that the second disclosure included new, material information that had not been disclosed earlier, No. 17-CV-4665 (FB) (SJB), 2019 WL 4805072, at *3 (E.D.N.Y. Sept. 30, 2019).[19]

---

[19]    The remainder of the cases on which Plaintiff relies are similarly distinguishable. *Ont. Teachers' Pension Plan Bd.* v. *Teva Pharm. Indus. Ltd.*, No. 3:17-cv-558 (SRU), 2019 WL 4674839, at *25 (D. Conn. Sept. 25, 2019) (crediting decline following publication of article first revealing investigation of company); *In re Winstar Comm'cns*, No. 01 CV 3014(GBD), 2006 WL 473885, at *15 (S.D.N.Y. Feb. 27, 2006) (crediting decline

18

Plaintiff also argues that the Aurelius Report did not simply recount information that had already been made public in the Qui Tam Action because it described interviews with former Vanda employees and a sleep doctor.  This line of argument was rejected in *Omnicom*, where the later news report included interviews with accounting professors about the suspect transaction; as the Second Circuit held, such "conclusory suspicions" from additional individuals do not amount to "newly disclosed facts" sufficient to plead loss causation if they "add[] nothing to the public's knowledge" regarding the alleged fraud.  597 F.3d at 512.  Here, too, the mere fact that the Aurelius Report identified new sources did not reveal material, new information.  *Id.*

Finally, Plaintiff now contends for the first time that Vanda's stock price declined by 66 cents (2.5%), on February 4, the day the Qui Tam Action was unsealed.  (Opp'n 41.)  This allegation is contained nowhere in the Complaint, and should be disregarded.  *Fadem* v. *Ford Motor Co.*, 352 F. Supp. 2d 501, 516 (S.D.N.Y. 2005) ("It is long-standing precedent in this circuit that parties cannot amend their pleadings through issues raised solely in their briefs" and collecting cases).  Further, Plaintiff does not ask to amend its already-amended Complaint to alter its pleading of loss causation—no doubt because only 9 cents of that 66-cent decline happened ***after*** the mid-day unsealing, and thus relying on February 4 as the corrective disclosure date would gut Plaintiff's alleged damages claim.  (*See* Ex. 7 at 1, 12, Vanda Intraday Trading Data, February 4, 2019.)

**B.      The FDA Action Filing Was Not a Corrective Disclosure as to Tradipitant**

Plaintiff is also wrong that Vanda's filing of the FDA Action was a corrective disclosure with respect to tradipitant.  (Opp'n 41.)  To qualify as a corrective disclosure, the alleged disclosure must "reveal the falsity of [the] alleged misstatement." *In re Manulife Fin. Corp. Sec. Litig.*, 276 F.R.D. 87, 104 (S.D.N.Y 2011) (citation omitted).  The filing of the FDA Action in February 2019

---

following short seller report that first revealed company's "insufficient cash flow" and "questionable accounting practices").

cannot reveal the falsity of statements made ***before*** the FDA communicated its decision in December 2018.[20]

## V.     PLAINTIFF'S REQUEST FOR LEAVE TO AMEND SHOULD BE DENIED

Plaintiff had the opportunity to amend its already-amended Complaint following the January 14, 2020 pre-motion conference (Br. 43 n.26), and—apart from alluding to an outstanding FOIA request and an "ongoing" investigation—does not explain how it will cure the pleading deficiencies. (Opp'n 45.) Absent proposing a concrete cure, Plaintiff's request to amend should be denied. *Hayden* v. *Cty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999).

## CONCLUSION

For these reasons and those in Defendants' opening brief, the Complaint should be dismissed with prejudice.

Dated: June 9, 2020
     New York, New York

<div style="margin-left:40%">

PAUL, WEISS, RIFKIND, WHARTON &
  GARRISON LLP

By:  /s/ Audra J. Soloway
     Daniel J. Kramer
     Audra J. Soloway
     Brad D. Feldman
     1285 Avenue of the Americas
     New York, New York 10019-6064
     Telephone: (212) 373-3000
     Email: dkramer@paulweiss.com
     Email: asoloway@paulweiss.com
     Email: bfeldman@paulweiss.com

*Counsel for Defendants*

</div>

---

[20] Plaintiff do not dispute that to state a claim under Section 20(a), it must plead both (1) a primary violation of the securities laws and (2) culpable participation by the Individual Defendants in the alleged fraud, a requirement tantamount to scienter. Because Plaintiff has failed to plead either, its Section 20(a) claims must be dismissed. Moreover, Plaintiff's reliance on *In re Refco, Inc. Securities Litigation* to show that Messrs. Gibbs and Reverberi were control persons, is misplaced because, in that case, it was "specifically allege[d] that [the officer] 'prepared and approved' the [relevant statement]," 503 F. Supp. 2d 611, 639 (S.D.N.Y. 2007), and the Complaint here contains no similar allegations (Br. 43 n.25 (citing cases)).