**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KENNETH GORDON, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> VANDA PHARMACEUTICALS INC., MIHAEL H. POLYMEROPOULOS, JAMES P. KELLY, GIAN PIERO REVERBERI, and THOMAS E. GIBBS, <br><br> Defendants. | Case No. 1:19-cv-01108-FB-LB <br><br> **ORAL ARGUMENT REQUESTED** |

**DEFENDANTS' MEMORANDUM OF LAW IN RESPONSE TO
PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF LAW
IN FURTHER  OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS THE AMENDED COMPLAINT**

PAUL, WEISS, RIFKIND, WHARTON &
  GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone:  (212) 373-3000

*Counsel for Defendants*

Defendants submit this response to Plaintiff's Supplemental Brief, which unsuccessfully attempts to (a) distinguish the Second Circuit's ruling in *Jackson* v. *Abernathy*, 960 F.3d 94 (2d Cir. 2020) ("*Jackson*"), and (b) explain away the dismissal of the Qui Tam Action, upon which Plaintiff's unproven off-label marketing allegations are based.[1]  Plaintiff fails meaningfully to grapple with these cases, and the Supplemental Brief certainly does not alter the conclusion that the Complaint fails, *inter alia*, to plead a strong inference of scienter.

## I.  PLAINTIFF FAILS TO DISTINGUISH *JACKSON*

The *Jackson* decision requires a securities plaintiff to supply "connective tissue" between the alleged corporate misconduct and the alleged false statements.  960 F.3d at 99.  In an effort to supply this "connective tissue," Plaintiff proclaims the Complaint's "unprecedented detail" regarding "Vanda's scheme to market Fanapt and Hetlioz off-label."  (Suppl. 3.)  But such allegations are beside the point.  Even crediting unproven allegations of off-label marketing, that conduct says nothing regarding intent to defraud Vanda's ***shareholders***—otherwise, every instance of corporate mismanagement could summarily be converted to securities fraud.  *Jackson*, 960 F.3d at 96 (corporate scienter requires showing "that the misstatement was not a case of mere mismanagement, but rather the product of collective fraudulent conduct").

Plaintiff attempts to distinguish *Jackson* by arguing that the Individual Defendants here— who allegedly made the Challenged Statements—were "warn[ed]" about risks that were purportedly concealed from shareholders, whereas such allegations in *Jackson* were only conclusory.  (Suppl. 3–4.)  But this Complaint fares no better than the complaint in *Jackson*.  For Messrs. Kelly, Reverberi, and Gibbs, the Complaint makes ***zero*** attempt to plead ***any*** involvement in the knowing dissemination of false statements about off-label marketing (including because no such false statement was ever made).  (Br. 22–23; Reply 9.)  With respect to CEO Polymeropoulos,

---

[1]   "Br." refers to Defendants' moving brief; "Opposition" or "Opp'n" refers to Plaintiff's opposition brief; "Reply" refers to Defendants' reply brief; "Supplemental Brief" or "Suppl." refers to Plaintiff's supplemental opposition brief; and "Reply Exhibits" refers to the exhibits (each, "Ex.") to the Declaration of Brad D. Feldman, dated June 9, 2020.  All other capitalized terms not defined herein have the meanings set forth in Defendants' moving brief.

Plaintiff relies entirely on thinly pleaded claims by former sales staff that Polymeropoulos trained them (at a single training in 2015) to encourage doctors to prescribe off-label. (Br. 21–22; Reply 8.) Plaintiff does not plead that these sales staff were involved with Vanda's public disclosures, much less had any knowledge of Polymeropoulos's intent or participation (if any) in crafting public disclosures. There is thus no "connective tissue." *See Jackson*, 960 F.3d at 99.

Plaintiff's "core operations" argument also fails. As *Jackson* held, it is "exceedingly rare" that a statement is "so 'dramatic'" that scienter may be inferred, *id.* (citation omitted), and Plaintiff glaringly omits from its Supplemental Brief what "dramatic" false statement Vanda purportedly made—particularly since Vanda never even spoke on the topic of off-label marketing. Plaintiff instead argues that Fanapt® and Hetlioz® supply all of Vanda's revenue—expressly disregarding *Jackson*'s holding that scienter will not be inferred simply because a product is "key" to the company's commercial success. *Id.* Plaintiff's argument cannot survive post-*Jackson*.[2]

## II.   DEFENDANTS ACCURATELY CHARACTERIZED THE QUI TAM DISMISSAL

In Defendants' Reply, Defendants correctly observed that the Qui Tam Action had been dismissed because the relator plaintiff did not plead what (if any) off-label prescriptions were falsely presented to, and paid by, government payors. (Reply 1; *see also id.* at 3, 5, 12.) Plaintiff does not contest that. Rather, Plaintiff sets up the strawman argument that Defendants have conflated liability for making false statements in the Qui Tam Action with liability in this securities action. (Suppl. 2.) To the contrary, it is Defendants who have urged this Court ***not to conflate*** the purported acts of defrauding ***government payors*** through off-label marketing (the Qui Tam Action theory) from the purported defrauding of Vanda's ***shareholders*** through public disclosures (the securities class action theory).[3] (Br. 15–17; Reply 3.) It is precisely because intent to defraud

---

[2]   With respect to the Challenged Statements regarding tradipitant, Plaintiff's only response is to assert that Vanda made "critical factual admissions" in the FDA Action (Suppl. 4) that Vanda did not, in fact, make. (Reply 14.)

[3]   Plaintiff's Supplemental Brief suggests that falsity here is pleaded by Vanda "touting" its compliance with government regulations (Suppl. 2), but Plaintiff does not identify—in this brief or otherwise—any statement that Vanda actually made claiming such compliance, as no such statement was ever made. (Br. 25–31; Reply 11–13.)

shareholders has not been pled that this lawsuit must be dismissed—irrespective of the outcome of the unproven Qui Tam Action allegations.

### III.   PLAINTIFF'S REQUEST TO STRIKE EXHIBITS SHOULD BE DENIED

In a footnote, Plaintiff nonsensically requests that the Court strike the exhibits submitted with Defendants' Reply.  (Suppl. 1 n.2.)  All of these exhibits were cited by Defendants to respond directly to arguments that *Plaintiff* advanced in its Opposition.  Indeed, five of the seven are incorporated by reference in the Complaint (thus, there cannot possibly be prejudice to Plaintiff),[4] and the two others are public records subject to judicial notice, cited by Defendants only to respond to new points raised in Plaintiff's Opposition.[5]  The submission of these exhibits was entirely proper.  *E.g.*, *Briese Lichttechnik Vertriebs GmbH* v. *Langton*, No. 09 Civ. 9790(LTS)(MHD), 2012 WL 5457681, at *6–7 (S.D.N.Y. Nov. 8, 2012) (courts can consider materials on reply in response to arguments raised in an opposition brief).

Dated:  June 22, 2020
           New York, New York

PAUL, WEISS, RIFKIND, WHARTON &
    GARRISON LLP
By:

/s/ Audra J. Soloway
Daniel J. Kramer
Audra J. Soloway
Brad D. Feldman
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone:  (212) 373-3000
Email:  dkramer@paulweiss.com
Email:  asoloway@paulweiss.com
Email:  bfeldman@paulweiss.com

*Counsel for Defendants*

---

[4]   (Ex. 2 (responding to Opp'n 11, 23; referenced in ¶¶ 109, 219, 405); Ex. 3 (responding to Opp'n 38; referenced in ¶ 199); Ex. 4 (responding to Opp'n 2, 8; referenced in ¶¶ 146–47); Ex. 5 (responding to Opp'n 2, 9, 10, 22 n.7; referenced in ¶ 148); Ex. 6 (responding to Opp'n 11, 38; referenced in ¶ 223).)

[5]   (Ex. 1 (responding to Plaintiff's argument (at Opp'n 32) that Gibbs resignation is "suspicious," by attaching actual press release announcing non-suspicious reason for resignation); Ex. 7 (refuting unpleaded argument (first made in Opp'n at 41 & Pl.'s Ex. D) that stock price declined by 66 cents after Qui Tam Action complaint was unsealed, by attaching intraday stock prices on the day of the complaint's unsealing).)