UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————————— x

KENNETH GORDON, Individually and on
Behalf of All Others Similarly Situated,

                         Plaintiff,

      vs.

VANDA PHARMACEUTICALS, INC., and
MIHAEL H. POLYMEROPOULOS,

                       Defendants.

———————————————————————— x

Civil Action No. 1:19-cv-01108-FB-LB

CLASS ACTION

Hon. Frederic Block

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MOTION TO EXCLUDE THE REPORT AND OPINIONS OF RENÉ M. STULZ, PH.D.**

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ..................................................................................................1

II.   RELEVANT BACKGROUND ...........................................................................3

III.  ARGUMENT........................................................................................................6

      A.    Courts Must Discharge Their Gatekeeping Function to Ensure that Only
Reliable and Relevant Evidence Is Admitted ............................................6

      B.    Dr. Stulz's Report and Opinions Are Unreliable, Usurp the Factfinder's
Role, and Are Unhelpful and Irrelevant.....................................................6

           1.    Dr. Stulz's Opinions On Price Impact Are Unreliable and
Speculative.......................................................................................6

           2.    Dr. Stulz Offers an Unqualified and Inadmissible Legal Opinion on
Predominance Under Fed. R. Civ. P. 23(b)(3)...........................11

           3.    Dr. Stulz Advances an Erroneous and Inadmissible Legal Opinion
on Steinholt's Damages Methodology........................................13

IV.   CONCLUSION...................................................................................................14

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Alpha Cap. Anstalt v. Intellipharmaceutics Int'l Inc.*,
2021 WL 2896040
(S.D.N.Y. July 9, 2021) ................................................................................................10

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
303 F.3d 256 (2d Cir. 2002).........................................................................................6

*Andrews v. Metro N. Commuter R.R. Co.*,
882 F.2d 705 (2d Cir. 1989).........................................................................................8

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988)............................................................................................ *passim*

*Bennet v. Target Corp.*,
2018 WL 5784354
(E.D.N.Y. Nov. 5, 2018)...............................................................................................11

*Burkhart v. Wa. Metro. Area Transit Auth.*,
112 F.3d 1207 (D.C. Cir. 1997)....................................................................................13

*Cammer v. Bloom*,
711 F. Supp. 1264 (D.N.J. 1989) ..............................................................................3, 4

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
310 F.R.D. 69 (S.D.N.Y. 2015) ....................................................................................11

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)...........................................................................................2, 4, 5, 13

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993)....................................................................................................1, 6, 11

*Gruber v. Gilbertson*,
2019 WL 4439415
(S.D.N.Y. Sept. 17, 2019)..............................................................................................13

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014)....................................................................................................8, 9

*Hilaire v. DeWalt Indus. Tool Co.*,
54 F. Supp. 3d 223 (E.D.N.Y. 2014) ..........................................................................9

**Page**

*In re Initial Pub. Offering Sec. Litig.*,
  174 F. Supp. 2d 61 (S.D.N.Y. 2001)................................................................11, 12

*In re JPMorgan Chase & Co. Secs. Litig.*,
  2015 U.S. Dist. LEXIS 132181
  (S.D.N.Y. Sept. 29, 2015) ........................................................................13

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  299 F. Supp. 3d 430 (S.D.N.Y. Feb. 28, 2018)................................................ *passim*

*In re M/V MSC Flaminia*,
  2017 WL 3208598
  (S.D.N.Y. July 28, 2017) ..........................................................................6

*In re Novatel Wireless Sec. Litig.*,
  2013 WL 12144150
  (S.D. Cal. Oct. 25, 2013) ..........................................................................14

*In re Pfizer Inc. Sec. Litig.*,
  819 F.3d 642 (2d Cir. 2016)........................................................................6

*In re Sadia, S.A. Sec. Litig.*,
  269 F.R.D. 298 (S.D.N.Y. 2010) ..........................................................9, 10, 11

*In re Vivendi, S.A., Sec. Litig.*,
  838 F.3d 223 (2d Cir. 2016)........................................................................10

*Krogman v. Sterritt*,
  202 F.R.D. 467 (N.D. Tex. 2001) ................................................................3, 4

*Linde v. Arab Bank, PLC*,
  922 F. Supp. 2d 316 (E.D.N.Y. 2013) ..........................................................12

*LinkCo, Inc. v. Fujitsu Ltd.*,
  2002 WL 1585551
  (S.D.N.Y. July 16, 2002) ..........................................................................12

*Malletier v. Dooney & Bourke, Inc.*,
  525 F. Supp. 2d 558 (S.D.N.Y. 2007)............................................................12

*Marcus v. J.C. Penney Co., Inc.*,
  2016 WL 8604331
  (E.D. Tex. Aug. 29, 2016) ..........................................................................14

**Page**

*Pearlman v. Cablevision Sys. Corp.*,
2015 WL 9462104
(E.D.N.Y. Dec. 28, 2015) ......................................................................................................12

*Pirnik v. Fiat Chrysler Autos., N.V.*,
327 F.R.D. 38 (S.D.N.Y. 2018) ............................................................................................10

*Roach v. T.L. Cannon Corp.*,
778 F.3d 401 (2d Cir. 2015).......................................................................................2, 4, 5, 13

*Robinson v. Sanctuary Rec. Grps., Ltd.*,
542 F. Supp. 2d 284 (S.D.N.Y. 2008).....................................................................................7

*Scheufele v. Tableau Software, Inc.*,
2020 WL 2553100
(S.D.N.Y. Feb. 13, 2020) .....................................................................................................13

*SEC v. Tourre*,
950 F. Supp. 2d 666 (S.D.N.Y. 2013)...................................................................................6, 7

*Sykes v. Mel S. Harris & Assocs.*,
780 F.3d 70 (2d Cir. 2015)....................................................................................................13

*U.S. v. Gushlak*,
728 F.3d 184 (2d Cir. 2011)...................................................................................................10

*U.S. v. Williams*,
506 F.3d 151 (2d Cir. 2007)......................................................................................................6

*Valente v. Textron, Inc.*,
931 F. Supp. 2d 409 (E.D.N.Y. 2013), *aff'd*, 559 F. App'x 11 (2d Cir. 2014).........................6

*Waggoner v. Barclays PLC*,
875 F.3d 79 (2d Cir. 2017)........................................................................................................3

*Willis v. Big Lots*,
2017 WL 1074048
(S.D. Ohio Mar. 17, 2017) .....................................................................................................14

Lead Plaintiff Teamsters Local Union No. 727 Pension Fund ("Plaintiff") respectfully submits this memorandum of law in support of its motion, pursuant to Federal Rule of Evidence 702 ("Rule 702"), for an Order excluding the September 17, 2021 rebuttal report ("Report") and opinions of René M. Stulz, Ph.D., an expert retained by defendants Vanda Pharmaceuticals Inc. ("Vanda") and Mihael H. Polymeropoulos (together, "Defendants") to "review and assess" the July 30, 2021 report and opinions of Plaintiff's expert, Bjorn I. Steinholt, CFA ("Steinholt"). *See* Ex. 1 (the "Stulz Report" or the "Report"), ¶5.[1]

## I.    INTRODUCTION

The opinions expressed in the Stulz Report fail to satisfy even the most basic requirements for admissibility embodied in Rule 702 and recognized in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and its progeny, and should be excluded.

First, in attempting (and failing) to prove a complete lack of price impact for one of the corrective disclosures alleged by Plaintiff – the February 11, 2019 release of the Aurelius Value report that first disclosed to investors the existence of a qui tam lawsuit that credibly alleged illegal off-label marketing by Vanda – Dr. Stulz provides an unreliable and legally deficient factual narrative that requires no specialized understanding of financial economics to assert.

Specifically, Dr. Stulz opines that a few unverified anonymous posts in 2018 on a gossip website disclosed Defendants' alleged off-label marketing scheme to the market before the Aurelius Value report was issued, even though he acknowledges there is no evidence these posts were actually known to the market or made by any current or former Vanda employee.  Dr. Stulz also opines that the qui tam lawsuit's contents were known to the market by February 5, 2019 even

---

[1]    All exhibits referenced herein are cited as "Ex. ___" and are attached to the December 1, 2021 Declaration of Michael G. Capeci, submitted in support of this motion (the "Capeci Decl."). Unless otherwise indicated, capitalized terms have the meanings provided in the Amended Complaint for Violations of the Federal Securities Laws (ECF No. 29) (the "Complaint").

though he (again) acknowledges that there is no evidence the market knew of this lawsuit's existence before the Aurelius Value report. Effectively, based on his own speculation, Dr. Stulz seeks to supplant the factfinder and presumes, without any admissible evidence in support, that certain information included in the Aurelius Value report was publicly announced to the market and was material to investors before February 11, 2019. In so doing, Dr. Stulz did not conduct his own event study – the gold standard tool used by financial economists to rebut price impact. Dr. Stulz's failure to apply the key analysis used by financial economists to attempt to disprove lack of price impact is, standing alone, a sufficient basis to exclude his opinions.

Second, Dr. Stulz opines that "individualized inquiries" – a purely legal determination that the Court is responsible for adjudicating in assessing Fed. R. Civ. P. 23(b)(3) – exist even if the qui tam allegations revealed by the Aurelius Value report were new and material to investors as of February 11, 2019. But Dr. Stulz admits that: (i) he is unqualified to offer legal opinions; (ii) the concept of individualized inquiries is not a term of art in financial economics; and (iii) he cannot identify any support in any financial economics materials for his view that individualized inquiries predominate in this case. Dr. Stulz should not be permitted to substitute his non-economics opinion for this Court's legal analysis of Fed. R. Civ. P. 23(b)(3).

Finally, Dr. Stulz opines that Steinholt has failed to propose a methodology designed to measure damages attributable to the theories of liability alleged in the Complaint. In reaching that conclusion, however, Dr. Stulz again advocates for a standard that contradicts binding authority from the Supreme Court and Second Circuit that merely require a plaintiff to link damages to the defendant's conduct, not ensure "that damages are capable of measurement on a classwide basis." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 402 (2d Cir. 2015) (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013)). Thus, Dr. Stulz's opinions regarding damages require exclusion.

## II.    RELEVANT BACKGROUND

This putative securities class action centers on allegedly materially false and misleading statements and omissions made by Defendants in violation of the Securities Exchange Act of 1934 regarding Vanda's three most important drugs: (i) Fanapt; (ii) Hetlioz; and (iii) Tradipitant.  ¶¶233-418.[2]  In denying Defendants' motion to dismiss on March 10, 2021, this Court upheld every single statement made by Defendants that is challenged in the Complaint.  ECF No. 55.[3]  Plaintiff alleges that Defendants made materially false and misleading statements and omissions concerning a long-running and multifaceted off-label promotion scheme for Fanapt and Hetlioz.  ¶¶3-5.  Plaintiff also alleges that Defendants failed to disclose that Vanda's refusal to conduct a routine non-rodent study to ensure Tradipitant's safety for human use meant that the FDA would impose a clinical hold on a necessary extension of a key clinical trial for Tradipitant.  ¶¶6-9.

On July 30, 2021, Plaintiff served Steinholt's expert report,[4] in which Steinholt examines the factors set forth in *Cammer v. Bloom*, 711 F. Supp. 1264, 1286-87 (D.N.J. 1989) and *Krogman v. Sterritt*, 202 F.R.D. 467, 474 (N.D. Tex. 2001), which are universally considered by courts when evaluating whether a security trades in an efficient market.  *See, e.g.*, *Waggoner v. Barclays PLC*, 875 F.3d 79, 94-95 (2d Cir. 2017).  Based on the evidence, Steinholt opined that each factor warrants a finding of market efficiency, meaning the *Basic* presumption of reliance applies for the proposed class period of November 4, 2015 through February 11, 2019.  *See Basic Inc. v. Levinson*, 485 U.S. 224, 241-42 (1988).  Steinholt also opined that damages in this case are subject to calculation on a class-wide basis using a common methodology – the precise model that courts

---

[2]    Citations to "¶__" are to paragraphs in the Complaint.

[3]    The Court also dismissed three individual defendants from the case.  *See* ECF No. 55.

[4]    Steinholt's Expert Report, dated July 30, 2021 (the "Steinholt Report"), is annexed as Exhibit A to the October 29, 2021 Declaration of Michael G. Capeci in support of Plaintiff's motion for class certification.  Plaintiff served the report on Defendants in accordance with the class certification schedule ordered by the Court.  *See* ECF No. 65.

have routinely accepted from Steinholt and other experts as adequate under *Comcast* and *Roach*.

On September 17, 2021, Defendants served Dr. Stulz's Report. *See* Ex. 1.[5]  In the Report, Dr. Stulz does not dispute Steinholt's: (i) findings on the *Cammer* and *Krogman* factors; (ii) opinion that the market for Vanda common stock was efficient during the Class Period; or (iii) opinion that the *Basic* presumption of reliance applies.  Ex. 2 at 45:11-25; 66:6-13.[6]  Instead, recognizing that *Basic* applies, Dr. Stulz attempts in the Report to rebut the presumption of reliance by arguing that there is a complete lack of price impact associated with the Aurelius Value report issued on February 11, 2019.  Ex. 1, ¶18.[7]

But Dr. Stulz does not conduct his own event study, or apply any other tool used by financial economists, to reach that conclusion.  *Id.*, ¶¶19-39.  Instead, in a blatant attempt to usurp the role of the factfinder, Dr. Stulz offers only his own speculation that certain information was publicly known and material to investors in advance of the Aurelius Value report.  Dr. Stulz fails to explain how his training as a financial economist qualifies him to make these determinations or makes him better suited than the factfinder to resolve them.  *Id.*

This is especially troubling because, in his Report, Dr. Stulz reached this conclusion without ever reviewing this Court's opinion denying, in part, Defendants' motion to dismiss.  *See id.*, Appendix C.[8]  Had Dr. Stulz done so, he would have learned that Defendants' argument that

---

[5]  Plaintiff vigorously disputes that Dr. Stulz's "analysis" suffices to prove a complete lack of price impact, but reserves those arguments for its class certification reply brief and focuses here only on the *Daubert*-related deficiencies in the Stulz Report.

[6]  The transcript of Dr. Stulz's October 22, 2021 deposition in this matter is attached as Ex. 2 to the Capeci Decl.  Citations thereto conform to the following format: [page]:[line]-[page]:[line].

[7]  Notably, Dr. Stulz does not attempt to prove lack of price impact for the corrective disclosure associated with Plaintiff's Tradipitant allegations – the February 5 post-market close press release issued by Vanda.  *See* Ex. 1, ¶18; Ex. 2 at 53:5-8.

[8]  Dr. Stulz's decision to ignore the Court's legal holdings in this case is especially troubling given that his prior practice has been to review the motion to dismiss opinions in cases where he has been a class certification expert for defendants.  *See, e.g.*, Ex. 3 at 5 n.9; Ex. 4 at 4 n.9.

- 4 -

"the Aurelius Report described allegations of off-label marketing that had been previously disclosed a week earlier, upon unsealing of the qui tam action" – essentially the same opinion offered by Dr. Stulz (Ex. 1 at ¶27) – had already been squarely rejected.  ECF No. 55 at 9 (holding that "the fact that the qui tam action was unsealed a few days before the Aurelius Report does not defeat the plaintiffs' claims" and finding that Defendants' argument on this point "'is a matter of proof at trial[.]'"); *cf.* Ex. 2 at 57:10-58:17 (confirming that the Report does not cite ECF No. 55).

Next, despite Dr. Stulz's repeated insistence throughout his deposition that he is not a legal expert, he nonetheless offers a purely legal opinion by contending that whether the information contained in the Aurelius Value report was previously publicly disclosed can only be resolved through an individualized inquiry of each putative class member.  Ex. 1, ¶¶40-42.  But providing legal opinions is not the province of a financial economist, and in doing so, Dr. Stulz seeks to usurp the Court's responsibility for determining whether common issues predominate under Fed. R. Civ. P. 23(b)(3).  Such speculative conclusions – which in any event are inaccurate because *Basic* recognizes that individualized inquiries are unnecessary if, as Dr. Stulz concedes here, the market is efficient (485 U.S. at 241-42) – do not belong in an expert report.

Finally, Dr. Stulz's Report and testimony attempts to dispute that damages are subject to calculation on a class-wide basis by arguing that Steinholt's damages model "must be able to isolate reliably damages attributable only to the allegedly misrepresented or omitted information given the specific facts and circumstances of the case."  Ex. 1, ¶43.  Even though it contravenes *Comcast* and *Roach*, Dr. Stulz demands an exceedingly detailed damages model that has never been required by any federal court in the Second Circuit at the class certification stage.  *Id.*, ¶¶44-79.  Again, Dr. Stulz inappropriately imposes his own erroneous and inadmissible legal views – this time on the specificity of Steinholt's damages model – at the class certification stage.

- 5 -

## III.   ARGUMENT

### A.   Courts Must Discharge Their Gatekeeping Function to Ensure that Only Reliable and Relevant Evidence Is Admitted

Expert evidence is admissible only if it is reliable and relevant.  *See Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 259 (2d Cir. 2002) (a court must "ensure that [expert] testimony rests on a reliable foundation and is relevant to the case").  Even so, the expert must be qualified to opine on any issue for which such evidence is offered.  *See Valente v. Textron, Inc.*, 931 F. Supp. 2d 409, 415 (E.D.N.Y. 2013), *aff'd*, 559 F. App'x 11 (2d Cir. 2014) (citing *U.S. v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007)); *see also In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 466-67 (S.D.N.Y. Feb. 28, 2018) ("*LIBOR*") (same).

"[T]he proponent of the expert testimony has the burden of 'establishing by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied.'" *Valente*, 931 F. Supp. 2d at 415 (quoting *Williams*, 506 F.3d at 160).  Courts possess a "'gatekeeping function under Rule 702'" to ensure expert evidence "'rests on a reliable foundation and is relevant to the task at hand.'"  *LIBOR*, 299 F. Supp. 3d at 466 (quoting *Amorgianos*, 303 F.3d at 265); *see also In re Pfizer Inc. Sec. Litig.*, 819 F.3d 642, 658 (2d Cir. 2016) (same).

As explained herein, Dr. Stulz's Report and opinions are inadmissible and are therefore appropriately excluded under Rule 702 and *Daubert* and its progeny.

### B.   Dr. Stulz's Report and Opinions Are Unreliable, Usurp the Factfinder's Role, and Are Unhelpful and Irrelevant

#### 1.   Dr. Stulz's Opinions On Price Impact Are Unreliable and Speculative

An expert cannot act as "a conduit for a factual narrative." *SEC v. Tourre*, 950 F. Supp. 2d 666, 681 (S.D.N.Y. 2013); *see also In re M/V MSC Flaminia*, 2017 WL 3208598, at *2 (S.D.N.Y. July 28, 2017) (an expert "may not supplant the role of the fact finder by reciting factual narratives or by weighing the evidence to reach factual determinations").  "'[A]cting simply as a narrator . . . does not convey opinions based on an expert's knowledge and expertise.'"  *LIBOR*, 299 F. Supp.

- 6 -

3d at 490 (quoting *Tourre*, 950 F. Supp. 2d at 675); *cf. Robinson v. Sanctuary Rec. Grps., Ltd.*, 542 F. Supp. 2d 284, 292 (S.D.N.Y. 2008) (rejecting expert analysis "founded on hearsay supplied by Plaintiffs' counsel – hardly a source of first-hand, independent expert knowledge").

Providing an incomplete and inaccurate factual narrative is precisely what Dr. Stulz does throughout his Report and testimony in contending (wrongly) that the Aurelius Value report's contents were previously publicly disclosed with credibility to investors because of: (i) anonymous posts in 2018 on a gossip website (CafePharma);[9] (ii) a qui tam complaint being unsealed, which Dr. Stulz acknowledges was unknown to investors until the Aurelius Value report was issued;[10] (iii) a warning letter from the FDA that is entirely unrelated to the off-label marketing allegations of the Complaint;[11] and (iv) a pre-Class Period analyst report that states nothing about the marketing strategy employed by Vanda for Fanapt during the Class Period.[12] Ex. 1, ¶¶23-30.

---

[9]    Dr. Stulz admits that it is impossible to assess the credibility of the CafePharma posts because they are anonymous, but nonetheless testified that he presumed that they were material and reflected in Vanda's common stock price when the Aurelius Value report was issued on February 11, 2019. Ex. 2 at 104:8-25; 126:1-6; 128:18-129:2. This means Dr. Stulz's opinions on the CafePharma posts are inconsistent and unreliable. *See LIBOR*, 299 F. Supp. 3d at 478 ("[W]e conclude that the internally inconsistent nature of Dr. Seyhun's models seriously undermine their reliability."). These shortcomings apply equally to the Glassdoor posts that Dr. Stulz cites for the same proposition. Ex. 2 at 133:17-136:16.

[10]    Even though Dr. Stulz insists that the qui tam complaint was known to the market by February 5, 2019, he admits that he has no evidence of any investor having possession or knowledge of the qui tam complaint before February 11, 2019, nor does he have any evidence regarding when Aurelius Value learned of the qui tam complaint. Ex. 2 at 155:1-158:7; 160:24-161:5. Again, such baseless speculation is improper. *See LIBOR*, 299 F. Supp. 3d at 497 (rejecting expert testimony that "is forced to speculate as to the existence of those reports").

[11]    Dr. Stulz admits that: (i) the FDA warning letter only related to Vanda's failure to include risk information from the FDA labels for Fanapt and Hetlioz on the websites for the drugs; (ii) the Complaint makes no allegations regarding the risks of taking Hetlioz; and (iii) the Complaint does not allege the FDA warning letter was an example of off-label marketing. Ex. 2 at 143:14-24; 146:5-8; 148:1-7. Thus, Dr. Stulz's discussion of this letter is irrelevant because it is unrelated to Plaintiff's claims. *See LIBOR*, 299 F. Supp. 3d at 498 (rejecting irrelevant opinions).

[12]    Dr. Stulz admits that the analyst report makes no disclosure of any off-label marketing of Fanapt occurring at Vanda in March 2015 or thereafter. Ex. 2 at 168:20-171:7. Again, this means Dr. Stulz's opinion is irrelevant and requires exclusion. *See LIBOR*, 299 F. Supp. 3d at 498.

Even assuming these propositions are accurate – and they are not – nothing in Dr. Stulz's training as a financial economist qualifies him to supplant the factfinder in making such determinations. *See* Ex. 2 at 88:1-7; *id.* at 176:25-177:16 (acknowledging that Dr. Stulz merely collected information and did not conduct any financial analysis); *cf. Andrews v. Metro N. Commuter R.R. Co.*, 882 F.2d 705, 708 (2d Cir. 1989) (rejecting expert testimony that "assumed facts that were not in evidence."). Moreover, in providing his factual narrative, Dr. Stulz ignored this Court's decision on Defendants' motion to dismiss, which unequivocally held that the question of whether the qui tam complaint's unsealing was known to the market before the issuance of the Aurelius Value report must be reserved for the jury (ECF No. 55 at 9).[13] *See LIBOR*, 299 F. Supp. 3d at 498 (excluding testimony "on issues that we have already considered and adjudicated").

Furthermore, although Dr. Stulz purports to subscribe to the semi-strong form of market efficiency adopted by the Supreme Court and used by Steinholt (Ex 1. at n.149; Ex. 2 at 44:22-45:7), Dr. Stulz's opinions conflict with the "fairly modest premise" underlying that economic theory: "that 'market professionals generally consider **most publicly announced material statements** about companies, thereby affecting stock market prices.'" *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 272 (2014) (quoting *Basic*, 485 U.S. at 247 n.24) (emphasis added). Indeed, Dr. Stulz admits that he never assessed whether the information in his factual narrative was publicly announced or material to Vanda's investors before the Aurelius Value report. *See, e.g.*, Ex. 2 at 123:18-125:1; *supra* nn.9-12. Essentially, Dr. Stulz bypassed the question of whether the information in his factual narrative constituted "publicly announced material statements" about Vanda before the Aurelius Value report was issued, and instead presumed as much without any

---

[13] Dr. Stulz's failure to consider the Court's ruling on Defendants' motion to dismiss is especially surprising given that he testified that in compiling his report, he claimed to pay attention to "the issues that concern what I was opining on." Ex. 2 at 38:4-5.

evidence in support.[14]  Such "speculative" opinions are "inadmissible."  *LIBOR*, 299 F. Supp. 3d at 497-98 (excluding expert testimony where there was no admissible evidence to support the opinion); *see also Hilaire v. DeWalt Indus. Tool Co.*, 54 F. Supp. 3d 223, 243 (E.D.N.Y. 2014) ("[W]here the expert's testimony is 'connected to existing data only by the ipse dixit of the expert,' the court may determine that there is an insufficient analytical connection between the opinion offered and the supporting facts to warrant admission of the expert's opinion").[15]

This is not the first time Dr. Stulz has tried to pass off conjecture for expert opinion or advocated baseless inferences in attempting to prove a lack of price impact.  In *In re Sadia, S.A. Securities Litigation*, 269 F.R.D. 298 (S.D.N.Y. 2010), Dr. Stulz attempted to rebut the *Basic* presumption of reliance in the context of class certification by opining that the challenged "statements and omissions had no price impact."  *Id*. at 314.  To do so, Dr. Stulz contended that the disclosure of hedging contracts "when Sadia would have received a net profit" from them would not have caused its ADRs to decline.  *Id*.  From this, he opined that the "misstatements . . . could not have artificially inflated the price of Sadia's ADRs . . . and, thus, had no price impact."  *Id*.  Judge Scheindlin found that unwinding the contracts "would have resulted in a net profit," but nevertheless concluded that Dr. Stulz's "argument fails for lack of evidentiary support."  *Id*. at 314-15. Specifically, "Sadia has not presented evidence supporting the next step in its logic – that

---

[14]   Dr. Stulz's opinions implicitly endorse the "strong form" of market efficiency, which holds that all public and private information is rapidly incorporated into a company's stock price. *Halliburton*, 573 U.S. at 289-90 n.4.  The Supreme Court recognizes that the "strong form" is not generally accepted by courts or financial economists (*id.*), meaning that Dr. Stulz's reliance on the incorrect form of market efficiency in the Report should not be permitted.

[15]   Dr. Stulz's discussion of the February 11, 2019 corrective disclosure is also incoherent because he opines that the Aurelius Value report merely regurgitated information from CafePharma, but the Aurelius Value report itself states that the information from CafePharma was "unverified" and does not cite or mention any of the CafePharma or Glassdoor posts listed in Exhibit 1 to the Stulz Report. *See* Ex. 5 at 15-16.  Dr. Stulz acknowledges as much (Ex. 2 at 110:17-21), yet nonetheless opines – without any basis – that the Aurelius Value report "relied on information from the online forum CafePharma[.]"  Ex. 1 at ¶25.

- 9 -

. . . the price of [its] ADRs would not have declined" after disclosure.  *Id*. at 315.  Even worse:

> Stulz's opinion is based almost entirely on a single academic study that evaluates income-increasing *accounting* restatements. But even Stulz recognized this article does not "directly address[] the situation that developed at Sadia . . . ." ***Neither he nor Sadia submitted evidence specific to this case or conducted an independent study that would lend credence to their position.***

*Id*. (italics in original; bold and italics added).  Not surprisingly, Judge Scheindlin rejected "[Dr.] Stulz's unsubstantiated hypothesis," and refused his "invit[ation] . . . to engage in rampant speculation . . . ." *Id*.[16]

As in *Sadia*, here Dr. Stulz did not conduct an event study – the gold standard tool used by financial economists to rebut price impact – to support his opinions.  *See* Ex. 2 at 55:13-21; *see also In re Vivendi, S.A., Sec. Litig.*, 838 F.3d 223, 253 (2d Cir. 2016) (event studies are "'standard operating procedure in federal securities litigation[.]'").  Dr. Stulz's admitted failure in this regard, standing alone, requires exclusion.  *See Alpha Cap. Anstalt v. Intellipharmaceutics Int'l Inc.*, 2021 WL 2896040, at *6 (S.D.N.Y. July 9, 2021) (excluding expert where he "did not conduct an event study or other analysis of his own" and instead "merely argues that [the opposing expert's] conclusions are unsupported" yet failed to provide "citations to accepted practices or academic literature in the relevant area of economic analysis."); *see also U.S. v. Gushlak,* 728 F.3d 184, 197 (2d Cir. 2011) (courts rely on experts from "the other side to bring to the court's attention the ways in which [a] model may be unsound, and, if necessary, propose a viable alternative").  Courts routinely recognize that event studies by rebuttal experts are necessary for legitimate price impact arguments.  *See, e.g.*, *Pirnik v. Fiat Chrysler Autos., N.V.*, 327 F.R.D. 38, 45 (S.D.N.Y. 2018) ("Notably, however, Defendant did not conduct, or submit, their own event study to show the

---

[16]    Dr. Stulz testified that he reviews the portions of legal decisions in cases where he serves as an expert that discuss his opinions (Ex. 2 at 37:24-38:23), meaning he is fully aware of the criticisms leveled against him in *Sadia* yet nonetheless employed the same improper tactic here.

absence of price impact; instead, they rely on, and criticize, the event study conducted by Plaintiffs' expert, Dr. Zachary Nye. That alone would arguably support rejection of Defendants' arguments at this stage of the proceedings."); *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 94-95 (S.D.N.Y. 2015) (same).

The unreliability of Dr. Stulz's opinions is perhaps best illustrated by his disingenuous assessment of a *Reuters* Special Report from 2010 that harshly criticized him for failing to disclose potential conflicts of interest when testifying before Congress in 2009.[17]  When presented with this article at his deposition, Dr. Stulz had no difficulty testifying that such information was "unreliable" (Ex. 2 at 35:17-36:3) because "journalists make mistakes" (*id.* at 31:5-8) and that in assessing information, a financial economist would "think about whether it's right." *Id.* at 34:20-35:1.  In other words, Dr. Stulz believes that anonymous CafePharma posts should be presumed as reliable without any verification (Ex. 1, ¶25), but articles in *Reuters* should not if they report (accurately) on Dr. Stulz.  Obviously, Dr. Stulz understands that the quality and accessibility of information matters, but only when it suits him – the hallmark of unreliable expert testimony.

In sum, as in *Sadia*, Dr. Stulz again provides unsubstantiated opinions that invite the Court to make precisely the type of unfounded inferential leaps that *Daubert* is designed to preclude. Thus, the Report and Dr. Stulz's opinions are inadmissible.

### 2.     Dr. Stulz Offers an Unqualified and Inadmissible Legal Opinion on Predominance Under Fed. R. Civ. P. 23(b)(3)

"[E]xpert testimony is not useful if it merely usurps either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying the law to the facts before it." *Bennet v. Target Corp.*, 2018 WL 5784354, at *5 (E.D.N.Y. Nov. 5, 2018); *see also In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d 61, 64 (S.D.N.Y. 2001) ("[E]xperts may not

---

[17]  https://www.reuters.com/article/us-academics-conflicts/special-report-for-some-professors-disclosure-is-academic-idUSTRE6BJ3LF20101220 (last visited December 1, 2021).

invade the court's province by testifying on issues of law."). "The rule prohibiting [such opinion] . . . is so well-established that it is often deemed a basic premise or assumption of evidence law . . . ." *Id.* at 64 (collecting cases).

Just "because a witness qualifies as an expert with respect to certain matters or areas of knowledge" does not mean "that he or she is qualified to express expert opinions as to other fields." *LIBOR*, 299 F. Supp. 3d at 466; *see also Linde v. Arab Bank, PLC*, 922 F. Supp. 2d 316, 322 (E.D.N.Y. 2013). Even if Dr. Stulz qualifies as an expert in financial economics, he is not a legal expert – a fact he repeatedly acknowledges over 25 times throughout his deposition. *See, e.g.*, Ex. 2 at 48:1-3 ("I'm not an attorney. I have no legal expertise, so I would not have any expertise concerning such analysis from a legal standpoint.").

Notwithstanding these disclaimers – which merely demonstrate Dr. Stulz's understanding that he should not opine on legal issues – Dr. Stulz renders a purely legal opinion in urging this Court to make a finding that individualized inquiries exist that preclude a finding of predominance under Fed. R. Civ. P. 23(b)(3). Ex. 1, ¶¶40-42. Indeed, Dr. Stulz readily acknowledges that the phrase "individualized inquiries" is "not a term of art in financial economics" (Ex. 2 at 192:10-22) and that he cannot identify any instance where the term "individualized inquiries" appears in financial economics literature. *Id.* at 197:4-203:19. Thus, by Dr. Stulz's own admission, he is offering an improper legal opinion that has no basis in financial economics and should be excluded. *See Pearlman v. Cablevision Sys. Corp.*, 2015 WL 9462104, at *11 (E.D.N.Y. Dec. 28, 2015) ("It is well settled that expert testimony must be excluded where it 'states a legal conclusion'"); *see also Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 637 (S.D.N.Y. 2007) (excluding expert where he provided "no support in the literature or in any other survey for the method he used"); *LinkCo, Inc. v. Fujitsu Ltd.*, 2002 WL 1585551, at *3 (S.D.N.Y. July 16, 2002) (barring

- 12 -

"impermissible opinions on issues of law"); *Burkhart v. Wa. Metro. Area Transit Auth.*, 112 F.3d 1207, 1213 (D.C. Cir. 1997) ("Spurlock's testimony as to the applicable legal standard was plainly erroneous, thus demonstrating the danger in allowing experts to testify as to their understanding of the law.").

### 3.     Dr. Stulz Advances an Erroneous and Inadmissible Legal Opinion on Steinholt's Damages Methodology

In his Report and testimony, Dr. Stulz expounds at length on the various damages issues he believes exist in this case, ultimately opining that Steinholt's proposed damages model fails to account for all of them.  Ex. 1, ¶¶43-70.  In so doing, however, Dr. Stulz departs from binding Supreme Court and Second Circuit case law by demanding a level of detail that is manifestly unnecessary at the class certification stage.  In other words, Dr. Stulz asks this Court to disregard precedential legal authority to conform to his personal view of what a class certification damages model should entail.

The Second Circuit has recognized that the Supreme Court's decision in "*Comcast* does not mandate . . . that damages are capable of measurement on a classwide basis." *Roach*, 778 F.3d at 402.  "All that is required at class certification is that the plaintiffs must be able to show that their damages stemmed from defendants' actions that created legal liability[.]" *Scheufele v. Tableau Software, Inc.*, 2020 WL 2553100, at *4 (S.D.N.Y. Feb. 13, 2020); *see also In re JPMorgan Chase & Co. Secs. Litig.*, 2015 U.S. Dist. LEXIS 132181, at *23-*24 (S.D.N.Y. Sept. 29, 2015) (quoting *Sykes v. Mel S. Harris & Assocs.*, 780 F.3d 70, 82 (2d Cir. 2015)).

Unsurprisingly, the degree of specificity that Dr. Stulz claims is required has repeatedly been found to be unnecessary at the class certification stage, including by those courts that have accepted virtually identical damages models proposed by Steinholt at class certification.[18]  The

---

[18]  *See, e.g.*, *Gruber v. Gilbertson*, 2019 WL 4439415, at *8 (S.D.N.Y. Sept. 17, 2019); Ex. 6 (Memorandum of Law & Order, *Plymouth Cnty. Ret. Sys. v. Patterson Cos. Inc.*, No. 18-cv-00871-

requirements that Dr. Stulz urges this Court to impose are not requirements at all, and Dr. Stulz's testimony to the contrary flatly contradicts binding legal authority. *See* Ex. 2 at 193:6-9 ("now to compute class-wide damages is not possible with – is not possible because different investors could be damaged differently"); *id.* at 220:1-9 (admitting that he chose to ignore the many decisions cited in the Steinholt Report where Steinholt's damages model has been found sufficient at the class certification stage). Thus, Dr. Stulz's opinion regarding damages models at class certification is inconsistent with, and precluded by, the established case law of this Circuit, which renders his Report and opinions unreliable and subject to exclusion.[19]

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant this motion in its entirety and exclude the Report and opinions of Dr. Stulz.

---

MJD-HB, ECF No. 175 (D. Minn. Sept. 28, 2020)); *Willis v. Big Lots*, 2017 WL 1074048, at *7 (S.D. Ohio Mar. 17, 2017); *Marcus v. J.C. Penney Co., Inc.*, 2016 WL 8604331, at *10 (E.D. Tex. Aug. 29, 2016); *In re Novatel Wireless Sec. Litig.*, 2013 WL 12144150, at *13 (S.D. Cal. Oct. 25, 2013).

[19] Dr. Stulz's damages discussion is also riddled with factual errors that contradict Vanda's own admissions in its lawsuit with the FDA. *Compare* Ex. 1, ¶64(c) ("The FDA and Vanda participate in a teleconference, during which the FDA suggests that Vanda could not extend Study 2301 until after completion of a nine-month non-rodent toxicity study.") *with* Ex. 2 at 234:20-235:5 (conceding that Vanda admits it was conclusively told this information and that Vanda's complaint did not use the word "suggests," meaning this portion of the Stulz Report is inaccurate). That Dr. Stulz advances a factual narrative that not even his client, Vanda, set forth in the FDA litigation speaks volumes about the unreliability of his opinions.

- 14 -

DATED:  December 1, 2021

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
DAVID A. ROSENFELD
MICHAEL G. CAPECI
AVITAL O. MALINA


*/s/ Michael G. Capeci*
MICHAEL G. CAPECI

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
drosenfeld@rgrdlaw.com
mcapeci@rgrdlaw.com
amalina@rgrdlaw.com

*Lead Counsel for Lead Plaintiff*

CERTIFICATE OF SERVICE

I, Michael G. Capeci, hereby certify that on December 1, 2021, I authorized a true and correct copy of the foregoing document to be served on defense counsel via electronic mail.


*/s/ Michael G. Capeci*

MICHAEL G. CAPECI