# EXHIBIT 3

# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------x

In re BHP BILLITON LIMITED                    Civil Action No. 1:16-cv-01445-NRB
SECURITIES LITIGATION

--------------------------------------------------------x

**Amended Expert Report of René M. Stulz, Ph.D.**
**Everett D. Reese Chair of Banking and Monetary Economics**
**The Ohio State University, Fisher College of Business**
**May 18, 2018**

10.     Plaintiffs originally alleged several categories of misstatements, claiming that BHP made "materially false and misleading statements" during the Class Period related to:

    a.   "[T]he Company's concentration on, and commitment to, the health and safety of employees, residents and the communities in which its mining operations are located;"

    b.   "[T]he adequacy and efficacy of the safety, risk management and monitoring practices, procedures and controls of the Company's mining operations;"

    c.   "[T]he Company's compliance with local laws and regulations of the locales in which its mining operations are based;"

    d.   "Samarco's iron ore production capacity and projected performance;"

    e.   "[T]he toxicity of mudflows resulting from the expulsion of tailings from the collapse of the Fundão dam;"

    f.   "[T]he health and longevity of the Company's progressive dividend;"

    g.   "[K]nown uncertainties and material risks associated with Samarco's operations;" and

    h.   "[T]he accuracy and completeness of the 2014 and 2015 Forms 20-F."[8]

11.     On August 29, 2017, the Court granted Defendants' motion to dismiss in part.  I understand that the motion to dismiss ruling excluded alleged misrepresentations and omissions in the Complaint other than certain pre-incident statements regarding BHP's commitment to safety and its risk management controls.[9]

12.     Plaintiffs claim that following the collapse of the dam "investors learned that Samarco had failed to implement a viable [emergency action plan] and that the Fundão dam had longstanding and systemic structural defects," and that "Samarco had ignored repeated warnings regarding these issues."[10]  Plaintiffs assert that when "Defendants' prior misrepresentations and fraudulent conduct were disclosed and became apparent to the market, the trading price of the

---

[8] Complaint, ¶ 195.

[9] Memorandum and Order, *In Re: BHP Billiton Limited Securities Litigation*, No. 16-01445, August 28, 2017 (filed August 29, 2017).  I understand that alleged misstatements and/or omissions related to compliance with local laws, Samarco's production capacity, and BHP's progressive dividend policy were dismissed on materiality grounds.  I understand that alleged misstatements regarding chemical compounds in the spilled tailings were dismissed on scienter grounds.

[10] Complaint, ¶ 11.

132. What Defendants might have known about the risk of an incident at the Fundão dam, and the actual underlying risk of an incident would both have been changing over time. Thus, a hypothetical disclosure of the "true" degree of risk earlier in the Class Period would be different from what feasibly could have been disclosed later in the Class Period.

133. Professor Feinstein's vague allusion to "valuation tools" may be an attempt to address these issues, but as noted extensively herein his discussion of these tools lacks any specificity. Absent further explanation of what information or valuation tools he will bring to bear throughout the Class Period (and how he will parameterize them), Professor Feinstein effectively asserts that there will be some appropriate tool, and asks the Court to trust him on that proposition. His vague description does not allow one to conduct an assessment of whether or not his approach is capable of isolating and measuring only those damages stemming from Plaintiffs' liability theories.

134. To summarize, I have discussed the challenges Professor Feinstein must address—but has, as of yet, failed to—in basing his proposed damages model on ADR price declines on the alleged corrective disclosure days. Even if Professor Feinstein is able to articulate a methodology to isolate only the portion of each stock price decline (if any) that is related to the alleged fraud, he has an additional problem: he has not articulated how he would translate this amount to a reliable measure of inflation for points in time earlier in the Class Period.

Executed this 18th day of May, 2018

_____

René M. Stulz, Ph. D