**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KENNETH GORDON, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>VANDA PHARMACEUTICALS INC. and MIHAEL H. POLYMEROPOULOS,<br><br><br><br>Defendants. | Case No. 1:19-cv-01108-FB-LB |

**MEMORANDUM OF LAW IN OPPOSITION TO LEAD PLAINTIFF'S
MOTION TO EXCLUDE THE REPORT AND OPINIONS OF RENÉ M. STULZ, PH.D.**

PAUL, WEISS, RIFKIND, WHARTON &
  GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone:  (212) 373-3000

*Counsel for Defendants*

# TABLE OF CONTENTS

Preliminary Statement ................................................................................................ 1

Relevant Background ................................................................................................. 4

Legal Standard ........................................................................................................... 7

Argument ................................................................................................................... 8

I.      Professor Stulz's Opinions about the Efficient Market Theory are Neither
        "Unreliable" nor "Speculative." .................................................................... 8

        A.      Professor Stulz Appropriately Explains How Steinholt's Price-Impact
                Theory Is Inconsistent with the Efficient Market Hypothesis. ............... 8

        B.      Plaintiff's Argument that Professor Stulz Impermissibly "Speculates" Is
                Both Wrong and Fails to Provide a Basis for Exclusion of Expert
                Evidence. ............................................................................................... 10

        C.      Plaintiff's Argument that Professor Stulz Did Not Perform an Event Study
                Is Wrong and Is Not a Valid Ground for Exclusion. ............................. 12

        D.      Plaintiff's Arguments about the "Credibility" of Earlier Disclosures Are
                Meritless and Not a Ground to Exclude Professor Stulz's Opinion. ...... 15

        E.      Plaintiff Mischaracterizes the Court's Prior Opinion. ......................... 16

        F.      Plaintiff's Attacks on Professor Stulz's Credibility Are Meritless and
                Irrelevant. ............................................................................................. 17

II.     Professor Stulz Appropriately Opines that Steinholt's Incorrect Assumptions
        would Lead to Individualized Inquiries. ........................................................ 18

III.    Professor Stulz Appropriately Identifies Flaws in Steinholt's Damages
        Methodology. ............................................................................................... 20

Conclusion .............................................................................................................. 21

## TABLE OF AUTHORITIES

**Cases**                                                          **Page(s)**

*Alpha Cap. Anstalt* v. *Intellipharmaceutics Int'l Inc.*,
No. 19CV9270 (DLC), 2021 WL 2896040 (S.D.N.Y. July 9, 2021) .......................................14

*In re Aluminum Warehousing Antitrust Litig.*,
336 F.R.D. 5 (S.D.N.Y. 2020) ...............................................................................................19, 21

*Amgen Inc.* v. *Connecticut Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) .....................................................................................................................10

*Barrie* v. *Intervoice-Brite, Inc.*,
No. CIV.A. 3:01-CV-1071, 2009 WL 3424614 (N.D. Tex. Oct. 26, 2009) ...........................18

*Basic Inc.* v. *Levinson*,
485 U.S. 224 (1988) .....................................................................................................................10

*Boucher* v. *U.S. Suzuki Motor Corp.*,
73 F.3d 18 (2d Cir. 1996) ......................................................................................................11, 16

*Burkhart* v. *Washington Metro. Area Transit Auth.*,
112 F.3d 1207 (D.C. Cir. 1997) .................................................................................................20

*Campbell ex rel. Campbell* v. *Metro. Prop. & Cas. Ins. Co.*,
239 F.3d 179 (2d Cir. 2001) .........................................................................................................7

*Carpenters Pension Tr. Fund of St. Louis* v. *Barclays PLC*,
310 F.R.D. 69 (S.D.N.Y. 2015) ..................................................................................................17

*Clark* v. *Travelers Cos., Inc.*,
No. 216CV02503ADSSIL, 2020 WL 473616 (E.D.N.Y. Jan. 29, 2020) ................................17

*Comcast Corp.* v. *Behrend*,
569 U.S. 27 (2013) .....................................................................................................................4, 21

*Computer Assocs. Int'l, Inc.* v. *Simple.com, Inc.*,
2005 WL 6042721 (E.D.N.Y. Jan. 19, 2005) ...........................................................................21

*Daubert* v. *Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) .............................................................................................................. passim

*Floyd* v. *City of New York*,
813 F. Supp. 2d 417 (S.D.N.Y. 2011) ........................................................................................11

*Fox* v. *Cheminova, Inc.*,
387 F. Supp. 2d 160 (E.D.N.Y. 2005) ..........................................................................................8

ii

*Goldman Sachs* v. *Arkansas Tchr. Ret. Sys.*,
   141 S. Ct. 1951 (2021)..................................................................................14, 17

*United States* v. *Gushlak*,
   728 F.3d 184 (2d Cir. 2013)................................................................................14

*IBEW Local 98 Pension Fund* v. *Best Buy Co.*,
   818 F.3d 775 (8th Cir. 2016) ...............................................................14, 15, 18

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   299 F. Supp. 3d 430 (S.D.N.Y. 2018)...........................................................19, 20

*LinkCo, Inc.* v. *Fujitsu Ltd.*,
   No. 00 CIV. 7242 (SAS), 2002 WL 1585551 (S.D.N.Y. July 16, 2002) ................20

*Long Island Hous. Servs., Inc.* v. *NPS Holiday Square LLC*,
   No. 18CV03583DGJMW, 2021 WL 4122739 (E.D.N.Y. Sept. 9, 2021) ..................7

*In re M/V MSC Flaminia*,
   No. 12-CV-8892 (KBF), 2017 WL 3208598 (S.D.N.Y. July 28, 2017)...................12

*Malletier* v. *Dooney & Bourke, Inc.*,
   525 F. Supp. 2d 558 (S.D.N.Y. 2007).................................................................20

*McCullock* v. *H.B. Fuller Co.*,
   61 F.3d 1038 (2d Cir. 1995)..............................................................................17

*In re Moody's Corp. Sec. Litig.*,
   No. 07-cv-8375-GBD (S.D.N.Y. May 28, 2010)...................................................14

*Ohio Pub. Emps. Ret. Sys.* v. *Fed. Home Loan Mort. Corp.*,
   No. 4:08-cv-00160-BYP (N.D. Ohio Sept. 1, 2017) .............................................14

*Ohio Pub. Emps. Ret. Sys.* v. *Fed. Home Loan Mortg. Corp.*,
   No. 4:08CV0160, 2018 WL 3861840 (N.D. Ohio Aug. 14, 2018) ...................14, 21

*Olin Corp.* v. *Lamrak Ins. Co.*,
   No. 84-cv-1968 (JSR), 2018 WL 1901634 (S.D.N.Y. April 18, 2018).............11, 20

*Pearlman* v. *Cablevision Sys. Corp.*,
   No. 10-CV-4992(JS)(GRB), 2015 WL 9462104 (E.D.N.Y. Dec. 28, 2015)...........20

*Phoenix Light SF Ltd.* v. *Bank of New York Mellon*,
   No. 14-CV-10104 (VEC), 2020 WL 1322856 (S.D.N.Y. Mar. 20, 2020) ..............20

*Picard* v. *Sage Realty*,
   No. 20 CIV. 10057 (JFK), 2021 WL 5926059 (S.D.N.Y. Dec. 15, 2021) ...............8

*Pirnik* v. *Fiat Chrysler Automobiles, N.V.*,
  327 F.R.D. 38 (S.D.N.Y. 2018) ...................................................................................14

*In re Rezulin Prods. Liability Litig.*,
  309 F. Supp. 2d 531 (S.D.N.Y. 2004).........................................................................19

*Robinson* v. *Sanctuary Rec. Groups, Ltd.*,
  542 F. Supp. 2d 284 (S.D.N.Y. 2008), *vacated*, 383 F. App'x 54 (2d Cir.
  2010) ...........................................................................................................................12

*Rochester Gas & Elec. Corp.* v. *GPU, Inc.*,
  No. 00–CV–6369, 2008 WL 8912083 (W.D.N.Y. Aug. 8, 2008)...............................19

*In re Sadia, S.A. Securities Litigation*,
  269 F.R.D. 298 (S.D.N.Y. 2010) ................................................................................17

*SEC* v. *Tourre*,
  950 F. Supp. 2d 666 (S.D.N.Y. 2013).........................................................................12

*State of New York* v. *Solvent Chem. Co.*,
  No. 83-CV-1401C, 2006 WL 2640647 (W.D.N.Y. Sept. 14, 2006) ...........................8

*United States* v. *Tin Yat Chin*,
  371 F.3d 31 (2d Cir. 2004)............................................................................................7

*Victoria's Secret Stores Brand Mgmt., Inc.* v. *Sexy Hair Concepts, LLC*,
  No. 07 Civ. 5804 (GEL), 2009 WL 959775 (S.D.N.Y. Apr. 8, 2009) .......................8

**Other Authorities**

Fed. R. Civ. P. 23 .....................................................................................................3, 17, 19

Fed. R. Evid. 702 .................................................................................................................7

Fed. R. Evid. 704 ...............................................................................................................19

Katia Porzecanski *et al.*, *Hedge Funds Face Expansive Short-Selling Probe,
  Exciting Critics,* BLOOMBERG NEWS ENTERPRISE (Dec. 10, 2021) .........................16

Marge Thorsen, Richard Kaplan & Scott Hakala, *Rediscovering the Economics of
  Loss Causation,* 6 J. Bus. & Sec. L. 93, 110 (2006)..................................................13

Defendants respectfully submit this memorandum of law in opposition to the motion by Lead Plaintiff Teamsters Local Union No. 727 Pension Fund ("Plaintiff") to exclude the report and opinions of Professor René M. Stulz, the class certification expert of defendants Vanda Pharmaceuticals Inc. and Mihael H. Polymeropoulos ("Defendants").[1]

## PRELIMINARY STATEMENT

Plaintiff's motion is a transparent attempt to exclude Defendants' expert because his report and testimony dramatically undermine Plaintiff's class certification motion. This gambit should be swiftly rejected. As the Court stated at the pre-motion conference on November 22, 2021—at which the Court strongly discouraged Plaintiff from filing this motion—it will be the Court, and not a jury, reviewing and weighing the class certification evidence. This motion to exclude certainly does not meet the very high standard for exclusion of expert evidence presented to the Court as the finder-of-fact at class certification.

The subject of Plaintiff's motion is Professor René M. Stulz. Professor Stulz has a Ph.D. in economics from MIT; is a tenured professor at The Ohio State University, where he is Everett D. Reese Chair of Banking and Monetary Economics and the Director of the Dice Center for Research in Financial Economics; has numerous professional accolades, including several prestigious fellowships and service on the editorial boards of multiple leading journals, as well as being the former President of the American Finance Association; has written or edited eight books and over 140 papers on financial and securities-related topics; and has provided expert opinions in a number of securities class actions, not one of which has been rejected by any court under the *Daubert* standard. Even Plaintiff does not challenge Professor Stulz's impressive qualifications. Indeed, Plaintiff's own expert, Bjorn Steinholt—who, apart from a few economics courses taken during his MBA program, has no advanced training in economics—admits that Professor Stulz is

---

[1] Capitalized terms used herein have the meaning ascribed to them in Defendants' class certification opposition brief, served on December 1, 2021.

an expert in financial economics (whereas Steinholt purports to be a "securities analyst" with expertise in applying the "*Cammer* and *Krogman* factors" in securities litigation). (Ex. A, Steinholt Dep. Tr. at 29:22–32:5, 33:11–15, 34:16–25,)

Professor Stulz offered opinions concerning both of Plaintiff's theories in this securities class action, the Off-Label Claim and the Tradipitant Claim. In the present motion, Plaintiff largely focuses on the Off-Label Claim, where the evidence at class certification—including Professor Stulz's testimony—demonstrates a lack of price impact attributable to Defendants' purported misstatements. Applying his significant expertise in financial economics and efficient market theory, Professor Stulz explains that Plaintiff and Plaintiff's own expert have relied upon a theory of *delayed* price impact, which is inconsistent with the efficient market hypothesis on which Plaintiff expressly relies to establish class-wide reliance. Specifically, Vanda's stock price did not experience any statistically significant price impact when a Qui Tam lawsuit against Vanda (the "Qui Tam Action") was unsealed on the federal court docket, and thus became "publicly available" to Vanda investors. Plaintiff, however, contends that the market ignored this public information until it was repeated a week later in a short seller report by Aurelius Value (the "Aurelius Report"). Professor Stulz applies his considerable expertise in financial economics and efficient market theory to explain that Plaintiff's theory of delayed price impact cannot be supported by well-established economic principles.

Rather than grapple with this evidence on its merits, Plaintiff asserts a *Daubert* challenge. But Plaintiff fails to identify any cognizable basis to exclude Professor Stulz's qualifications or methodology. Instead, Plaintiff offers a series of reasons why, in its view, Professor Stulz's opinions are wrong. These arguments go only to the weight of the evidence, fail on their own terms, and should be rejected. These arguments certainly do not meet the very high bar for a *Daubert* challenge where, as here, the Court (not a jury) is the ultimate factfinder.

*First*, Plaintiff argues that Professor Stulz's opinion is "unreliable" and "speculative" when he analyzes Plaintiff's theory and concludes it is inconsistent with the efficient market hypothesis. But it is well within Professor Stulz's ken as a financial economist to apply economic principles to show that Plaintiff's own theory is inconsistent with the efficient market hypothesis. Plaintiff does not argue otherwise. Further, Plaintiff incorrectly asserts that Professor Stulz's opinions should be rejected because they are unsupported by an event study, but Plaintiff incorrectly equates "event study" with a regression analysis. Professor Stulz expressly adopted Plaintiff's expert's own regression model for purposes of his analysis, and Plaintiff fails to explain why Professor Stulz is required to perform his own regression in order to form an opinion. Moreover, while Plaintiff argues that Professor Stulz's understanding of the facts is "incomplete," this argument simply reflects Professor Stulz's disagreement with Plaintiff's expert, Steinholt, who proffers that certain public disclosures were not "credible" and that everyone in the market (except, apparently, Aurelius Value) overlooked publicly available information. Plaintiff's arguments plainly go to the weight of evidence, not admissibility, and are not valid grounds for exclusion under *Daubert*.

*Second*, Plaintiff asks the Court to ignore Professor Stulz's alternative opinion that, if adopted, Steinholt's incorrect approach to the efficient market theory would inevitably create individualized inquiries among putative class members. If—as Steinholt assumes—some Vanda investors accessed publicly available information (as did Aurelius Value) and other investors did not, that would give rise to questions about whether individual members of the putative class were aware of allegations of off-label marketing before February 11, 2019. It is well within Professor Stulz's economic expertise to identify this flaw in Steinholt's application of the efficient market theory. Professor Stulz is not offering a legal opinion under Rule 23 concerning whether "individualized issues" preclude certification; that issue remains squarely with the Court.

3

***Third***, Plaintiff asks the Court to disregard Professor Stulz's critique of Steinholt's proposed damages methodology, leaving Defendants without any expert rebuttal evidence on the standard articulated by the Supreme Court in *Comcast Corp.* v. *Behrend*, 569 U.S. 27 (2013). Plaintiff's argument is perplexing:  it is Plaintiff's expert who purports to have identified a class-wide damages methodology, and Professor Stulz who has responded to that purported showing. Plaintiff's motion does not argue that Professor Stulz's criticisms relied on an improper methodology but rather that, as a legal matter, the flaws in Steinholt's opinion are not serious enough to defeat class certification.  Such arguments, again, go only to the sufficiency of the evidence and must be addressed on the merits of the class certification motion.

For these reasons, the Court should deny Plaintiff's motion to exclude.

## RELEVANT BACKGROUND

Because the Court advised that it would consider this *Daubert* motion simultaneously with class certification, we assume the Court's familiarity with that motion, and incorporate by reference the background information in Defendants' class certification opposition brief.  We supplement the relevant background briefly as follows:

**Steinholt's Opening Expert Report**:  Plaintiff relies on Bjorn Steinholt's Expert Report, dated July 30, 2021, in support of its class-certification motion.  Steinholt does not have a Ph.D. or other advanced degree in economics; has not published any books or scholarly articles in economics; does not hold a professorship or other academic appointment; and is not on the editorial board of any academic journals.[2]  Steinholt (a) evaluated whether Vanda's common stock traded in an efficient market during the putative class period and (b) explained how class-wide damages can be calculated in this case using a common damages methodology that is consistent with

---

[2]    Steinholt admits that the extent of his academic training in economics is limited to coursework completed as part of his MBA and that he does not consider himself to be a financial economist.  (Ex. A, Steinholt Dep. Tr. at 30:1–4, 31:4–7, Steinholt Dep.)

4

Plaintiff's allegations.  (Ex. B, Steinholt Rep. ¶ 7.)  Steinholt opined, based on several considerations—including that Vanda's common stock trades on NASDAQ, has substantial trading volume, garners substantial analyst coverage, and "reacts to unexpected new material information"—that Vanda traded in an efficient market. (*Id.* ¶¶ 18–55.) As part of this evaluation, Steinholt undertook a statistical regression analysis purporting to calculate any abnormal returns on Vanda's stock—controlling for certain market- and industry-wide factors—during each day of the putative class period.  (*Id.* ¶¶ 38–39 & Ex. D.)  Steinholt also examined the two alleged corrective disclosures in Plaintiff's Amended Complaint, which occurred on February 5 and 11, 2019, and opined that the alleged negative information released to the public on those days resulted in a statistically significant price decline for Vanda's common stock.  (*Id.* ¶¶ 43–47.)  These price declines then served as the basis for Steinholt's class-wide damages model:  the application of an "event-study framework" using these price declines to measure the amount by which Vanda's stock price was allegedly inflated by fraud during the putative class period. (*Id.* ¶¶ 56–62.)

**Professor Stulz's Report**:  Professor Stulz's report, dated September 17, 2021, identified several critical flaws in Steinholt's analysis and offered additional opinions about the application of the efficient market theory on the facts presented in this case.  *First*, Professor Stulz identified an inconsistency between Steinholt's theory of price impact and the efficient market hypothesis. (Pl. Ex. 1 ¶¶ 19–39.) In an efficient market, new, value-relevant public information is incorporated into a stock's price rapidly, usually within a day.  But Steinholt's theory of delayed price impact is inconsistent with that fundamental tenet of the efficient market theory.  Indeed, Steinholt's regression analysis conceded that there was no statistically significant price movement when the Qui Tam Action against Vanda was unsealed on February 4, 2019, or before that when, in late 2018, these allegations were made public on the CafePharma and Glassdoor websites.  Steinholt instead assumed that price impact could be demonstrated by the ***repetition*** of the off-label marketing allegations by the Aurelius Report on February 11, 2019, after Aurelius Value had

5

already traded on the information.   As Professor Stulz explains, Steinholt's opinion that information impacted Vanda's market price a week, if not more, after it became public is not consistent with the efficient market hypothesis.  (*Id.* ¶ 22.)  *Second*, Professor Stulz alternatively opined that, if one accepted Steinholt's flawed analysis, it would mean that some market participants, like Aurelius Value, were aware of the off-label marketing allegations, while others were not, giving rise to individualized inquiries about each class member's knowledge.  (*Id.* ¶¶ 40–42.)  *Third*, Professor Stulz opined that Steinholt's "generic, boilerplate overview of a damages approach" could not reliably calculate damages on a class-wide basis.  (*Id.* ¶¶ 43–79.)  Among other defects, Steinholt's damages model assumes that Defendants could have disclosed the full extent of the "corrective disclosure" on the first day of the class period and each day thereafter, which is simply not possible, and thus Steinholt does not explain how damages for different potential class members who purchased on different dates can be calculated.  (*Id.* ¶¶ 60–70.)

**Steinholt's Reply Report**:  Steinholt issued a reply report on October 29, 2021, responding to Professor Stulz.  In his reply, Steinholt offered a new definition of market efficiency:  while he previously opined that Vanda's stock price incorporated "***all*** publicly available information" (Ex. B, Steinholt Rep. ¶ 9 (emphasis added)), he now opines that, in an efficient market, stock prices react quickly only to "***obviously*** publicly available" information (Ex. C, Steinholt Reply Rep. ¶ 4 (emphasis added)).  Steinholt further opined that there was no basis to conclude that "unverified information by anonymous sources" online had been included in Vanda's stock price.  (*Id.* ¶ 5.) At Steinholt's deposition, however, Defendants demonstrated that Steinholt was unable to support his new efficient market definition (i.e., that the market price incorporates only "obviously publicly available" information) with citations to supporting academic literature, nor had he ever invoked that standard in any other case despite submitting numerous reports opining on market efficiency. (Ex. A, Steinholt Dep. Tr. at 75:18–98:9.)  Nor could Steinholt identify any reliable methodology to gauge whether public information is sufficiently "credible" for the market to incorporate that

6

information.  (*Id.* at 190:15–191:11.)   Addressing Professor Stulz's criticisms of Steinholt's damages analysis, Steinholt opined that a more detailed analysis would be "premature" before discovery had concluded and Plaintiff was ready to present its case at trial.  (Ex. C, Steinholt Reply Rep. ¶ 6.)

<b>LEGAL STANDARD</b>

When evaluating expert opinion testimony under the *Daubert* test, courts look to three factors:  "(1) qualifications, (2) reliability, and (3) relevance and assistance to the trier of fact." *Long Island Hous. Servs., Inc.* v. *NPS Holiday Square LLC*, No. 18CV03583DGJMW, 2021 WL 4122739, at *3 (E.D.N.Y. Sept. 9, 2021) (internal citation omitted).  With respect to qualifications, which are undisputed here, "a court must ascertain whether the proffered expert has the educational background or training in a relevant field by looking at the totality of the witness's background[.]" *Id.* (citing *SEC* v. *Revelation Cap. Mgmt., Ltd.*, 215 F. Supp. 3d 267, 273 (S.D.N.Y. 2016)).   The court should "compare the area in which the witness has superior knowledge, education, experience, or skill with the subject matter of the proffered testimony." *United States* v. *Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir. 2004).  With respect to reliability, a district court must determine "whether the proffered testimony has a sufficiently 'reliable foundation' to permit it to be considered[.]" *Campbell ex rel. Campbell* v. *Metro. Prop. & Cas. Ins. Co.*, 239 F.3d 179, 184–85 (2d Cir. 2001) (quoting *Daubert* v. *Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)).  "In this inquiry, the district court should consider the indicia of reliability identified in Rule 702, namely, (1) that the testimony is grounded on sufficient facts or data; (2) that the testimony is the product of reliable principles and methods; and (3) that the witness has applied the principles and methods reliably to the facts of the case." *Long Island Hous. Servs.*, 2021 WL 4122739, at *3 (citing *Amorgianos* v. *Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002)).  The final prong—"the relevance or fit of the expert testimony[—]requires

the Court to determine whether the expert's opinions fit the facts of the case at hand." *Fox* v. *Cheminova, Inc.*, 387 F. Supp. 2d 160, 175 (E.D.N.Y. 2005) (quotation marks omitted).

Where, as here, the district court is acting as the trier of fact, the concerns that typically animate courts when weighing *Daubert* motions are lessened, if not eliminated. "In the context of a bench trial . . . there is no possibility of prejudice, and no need to protect the factfinder from being overawed by 'expert' analysis." *Victoria's Secret Stores Brand Mgmt., Inc.* v. *Sexy Hair Concepts, LLC*, No. 07 Civ. 5804 (GEL), 2009 WL 959775, at *8 n.4 (S.D.N.Y. Apr. 8, 2009); *see also Picard* v. *Sage Realty*, No. 20 CIV. 10057 (JFK), 2021 WL 5926059, at *4 (S.D.N.Y. Dec. 15, 2021); *State of New York* v. *Solvent Chem. Co.*, No. 83-CV-1401C, 2006 WL 2640647, at *1 (W.D.N.Y. Sept. 14, 2006) (noting that the "primary purpose of the holdings in *Daubert* . . . is to protect juries from being bamboozled by technical evidence of dubious merit [and] this is not a prevailing concern where . . . the court functions as the trier of fact") (citations and internal quotation marks omitted).

## ARGUMENT

## I. PROFESSOR STULZ'S OPINIONS ABOUT THE EFFICIENT MARKET THEORY ARE NEITHER "UNRELIABLE" NOR "SPECULATIVE."

### A. Professor Stulz Appropriately Explains How Steinholt's Price-Impact Theory Is Inconsistent with the Efficient Market Hypothesis.

Plaintiff's primary argument is that Professor Stulz's opinions are "unreliable" and "speculative" in identifying an inconsistency between Steinholt's price-impact theory and the efficient market hypothesis. (Mot. at 6–11.) This argument should be swiftly rejected.

In his report and testimony, Professor Stulz applies his considerable (and undisputed) expertise as a financial economist to the facts of this case, explaining why Steinholt's opinion contains an irreconcilable inconsistency. Professor Stulz shows that allegations about off-label marketing were made public starting in late 2018 on certain websites (CafePharma and Glassdoor),

8

and again on February 4, 2019, when the Qui Tam Action was unsealed.[3]  (Pl. Ex. 1 ¶¶ 23–27.)

Professor Stulz then explains that, according to Steinholt's own calculations in his regression

analysis, those prior disclosures did not have a statistically significant impact on Vanda's stock

price. (*Id.* at 15–17 n.50–59.)  Nonetheless, Steinholt opines that allegations of off-label marketing

did move the market when they were repeated in the Aurelius Report on February 11, 2019.  As

Professor Stulz explains, Steinholt's opinion is thus inconsistent with the proposition that Vanda's

stock traded in an efficient market—which Steinholt insists is also true.  (*Id.* ¶¶ 18(a)(i)–(ii), 22,

41.)  In an efficient market, all new and value-relevant information is incorporated into the stock

price when the information becomes publicly available.  Among other reasons, this is because

securities analysts and institutional investors—of which Vanda had hundreds during the putative

class period—are highly motivated to seek and consider public information, which is then rapidly

incorporated into the stock price (if it is material at all).  (Ex. B, Steinholt Rep. ¶¶ 27, 32–34 &

Ex. C.)

Professor Stulz's opinions meet all aspects of the *Daubert* test.  As a trained financial

economist, Professor Stulz is qualified to opine about how to apply the efficient market hypothesis

and to evaluate price impact.  His opinions also fit the facts of this case, as they are based on a

careful consideration of the evidentiary record.  Plaintiff's motion does not identify any important

evidence that Professor Stulz overlooked.  Finally, Professor Stulz's opinion is obviously reliable

because it applies an understanding of the efficient market hypothesis that has been repeatedly

recognized by courts:  "in an efficient market, all publicly available information is rapidly

---

[3]    Plaintiff misrepresents Professor Stulz's testimony as "acknowledg[ing] [the Qui Tam Action] was unknown to investors until the Aurelius Report was issued" on February 11, 2019; Plaintiff admits this is false in a footnote, conceding that "Dr. Stulz insists that the qui tam complaint was known to the market by February 5, 2019[.]" (Mot. at 7 & n.10.)  In contrast to Plaintiff's gamesmanship, Professor Stulz's testimony is clear:  the Qui Tam Action complaint was publicly available when it was unsealed on February 4, 2019, and, if Vanda's shares traded in an efficient market, its allegations would have been incorporated into Vanda's stock price no later than February 5 to the extent they were value relevant.  (Pl. Ex. 1 ¶¶ 22, 41; Pl. Ex. 2 at 151:11–15, 153:7–19.)

incorporated into, and thus transmitted to investors through, the market price." *Amgen Inc.* v. *Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).

### B. Plaintiff's Argument that Professor Stulz Impermissibly "Speculates" Is Both Wrong and Fails to Provide a Basis for Exclusion of Expert Evidence.

Plaintiff also argues that it is "baseless speculation" for Professor Stulz to conclude "that the qui tam complaint was known to the market by February 5, 2019," because there is "no evidence of any investor having possession or knowledge of the qui tam complaint before February 11, 2019[.]" (Mot. at 7 n.10.) This argument merely reflects Plaintiff's disagreement with Professor Stulz on the merits, and should be rejected on that ground alone. Moreover, Plaintiff's position is flatly contradicted by the evidence.

Contrary to Plaintiff's position, it is not "baseless speculation" to conclude that the information in the Qui Tam Action, if new and value relevant, would have been reflected in Vanda's stock price within 24 hours. Rather, that opinion represents a straightforward application of the efficient market hypothesis, which—by its nature—operates on the presumption that all public and value-relevant information is rapidly incorporated into the market price of securities.[4] Indeed, in this respect, Professor Stulz's opinion is entirely consistent with the Supreme Court's own description of the efficient market hypothesis. *See, e.g.*, *Amgen*, 568 U.S. at 466 (explaining that "in an efficient market, all publicly available information is rapidly incorporated into, and thus transmitted to investors through, the market price"); *Basic Inc.* v. *Levinson*, 485 U.S. 224, 246 (1988) ("The presumption is also supported by common sense and probability. Recent empirical studies have tended to confirm Congress' premise that the market price of shares traded on well-developed markets reflects all publicly available information, and, hence, any material

---

[4]    This conclusion is also consistent with the understanding of the efficient market hypothesis Steinholt offered in his opening report. (Ex. B, Steinholt Rep. ¶ 12 n.8 ("Generally, it is reasonable to assume that new and material information is incorporated into a stock price within one day.").) That is, under the "semi-strong" version of the market efficiency theory espoused by Steinholt in his opening report, *all* publicly available information is rapidly incorporated into the market price. While Plaintiff baselessly asserts that Professor Stulz relies on the "'strong form' of market efficiency" (Mot. at 9 n.14), that is false and unsupported by the record.

misrepresentations."). This conclusion is also consistent with Steinholt's opening report, which stated that Vanda's stock is followed by a large number of sophisticated investors who rapidly evaluate news about Vanda's stock and trade on it. (Ex. B, Steinholt Rep., ¶¶ 30–34 & Ex. C.)

Moreover, Plaintiff's argument that no investor was aware of the unsealed Qui Tam Action complaint is belied by the Aurelius Report itself: Aurelius Value, a Vanda investor, expressly states in the Report that it has already taken a short position in Vanda's stock based in part on the unsealed complaint, which is repeatedly quoted in the Report. Far from baseless "speculation," the only reasonable conclusion from the evidence available to Professor Stulz is that at least one investor, Aurelius Value, reviewed the Qui Tam Action complaint, analyzed it along with other public sources, and then shorted Vanda's stock—all before the Aurelius Report was published on February 11, 2019.

In any event, even if Plaintiff had a reasonable basis to dispute Professor Stulz's conclusion (and Plaintiff does not), Professor Stulz would be permitted to rely on Defendants' theory of the facts in forming his opinions, as "the testimony of a party's expert must be evaluated within the context of that party's own theory of the case." *Olin Corp.* v. *Lamrak Ins. Co.*, No. 84-cv-1968 (JSR), 2018 WL 1901634, at *21 (S.D.N.Y. April 18, 2018). At most, Plaintiff's disagreements about what inferences to draw from the record "go to the weight, not the admissibility, of the testimony." *Boucher* v. *U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996) (quotation marks and citation omitted).[5]

Plaintiff also criticizes Professor Stulz for advancing an improper "factual narrative" (Mot. at 7), but it is entirely appropriate for an expert report to recite the facts that are relevant to the

---

[5]   *See also Floyd* v. *City of New York*, 813 F. Supp. 2d 417, 450 (S.D.N.Y. 2011) (denying motion to exclude expert testimony where the argument for exclusion "simply underscore[d] the existence of a factual dispute"), *reconsidered on other grounds*, 813 F. Supp. 2d 457 (S.D.N.Y. 2011); *Olin*, 2018 WL 1901634, at *21 ("[W]here the legal or factual sustainability of a party's theory has not yet been decided, the possibility that such theory 'may be legally or factually deficient' is 'not justification[ ] for concluding that, in the context of [that party's] theory, [the expert's] testimony is unreliable or unhelpful.'" (quoting *In re Pfizer Inc. Sec. Litig.*, 819 F.3d 642, 661 (2d Cir. 2016)).

expert's opinion.  Tellingly, Plaintiff cites only two cases in which a court rejected "factual narratives" in expert opinions, and they are entirely inapposite.  In one case, the court struck lengthy factual narratives that extended for dozens of (and in one case almost a hundred) pages. *See In re M/V MSC Flaminia*, No. 12-CV-8892 (KBF), 2017 WL 3208598, at *11, *14, *21–22, *27 (S.D.N.Y. July 28, 2017).  The court emphasized that it was striking these passages because they did "not form the basis for [] expert conclusions but, rather, displace[d] this [c]ourt's role as factfinder."  *Id.* at *21.  Plaintiff identifies no lengthy and extraneous factual narratives that are irrelevant to Professor Stulz's economic opinion—instead, as noted above, Plaintiff merely disagrees with the inferences Defendants draw from the facts in the record.  (*See* Mot. at 6–11.) And in *SEC* v. *Tourre*, the court excluded proposed testimony in which an expert would "narrat[e] facts and testimony from the record of this case" because "to do so ***before the jury*** would be inappropriate."  950 F. Supp. 2d 666, 681 (S.D.N.Y. 2013) (emphasis added).  Here, there is no jury, and no risk of confusion between the economic opinions Professor Stulz is offering and the background facts in his report that form the basis for his opinions.[6]

### C.     Plaintiff's Argument that Professor Stulz Did Not Perform an Event Study Is Wrong and Is Not a Valid Ground for Exclusion.

Plaintiff also contends that Professor Stulz fails to support his opinions with an event study, but this contention reflects a misunderstanding of what an event study involves, and also inaccurately characterizes the analysis Professor Stulz performed.  (Mot. at 10.)  In any event, Professor Stulz was not required to conduct a fully independent event study in order to offer an opinion in this case.

---

[6]     Plaintiff also cites another decision that was vacated on appeal (which Plaintiff fails to acknowledge) where the expert relied on "hearsay supplied by Plaintiffs' counsel." *Robinson* v. *Sanctuary Rec. Groups, Ltd.*, 542 F. Supp. 2d 284, 292 (S.D.N.Y. 2008), *vacated*, 383 F. App'x 54 (2d Cir. 2010).  But Plaintiff does not contend that Professor Stulz relied on hearsay supplied by Defendants' counsel here; rather, he relied on the public materials (analyst reports, court papers, stock prices, etc.) identified in his report.

According to a source that Plaintiff's own expert cites, an event study involves "three interrelated stages":  (1) a review of "all available public information . . . guided by economic principles, literature, and the experience of the researcher"; (2) construction of a "market model" in the relevant market; and (3) a statistical analysis calculating returns for the security at issue on identified event dates.  Marge Thorsen, Richard Kaplan & Scott Hakala, *Rediscovering the Economics of Loss Causation*, 6 J. Bus. & Sec. L. 93, 110 (2006).  Steinholt has purported to undertake such an analysis, including performing a statistical regression analysis to calculate returns for Vanda's stock, and analyzing the stock movements on certain dates that Steinholt selected (such as the alleged corrective disclosure dates).  (Ex. B ¶¶ 38–48 & Exs. D–E, Steinholt Rep.)  However, Defendants submit that Steinholt's analysis of publicly available information as part of his event study was incomplete:  among other things, he did not consider public disclosures of off-label marketing allegations prior to the Aurelius Report (i.e., the various internet posts and the unsealed complaint that made public the allegations of off-label marketing).

Professor Stulz's report analyzed Steinholt's event study, identified its flaws, and showed that Steinholt's regression analysis actually undermines Plaintiff's theory that the alleged Off-Label Claim misrepresentations had any price impact.  Applying his training and experience as a financial economist, Professor Stulz identified certain dates on which allegations of Vanda's off-label marketing were publicly disclosed prior to the Aurelius Report's publication.  Professor Stulz then applied Steinholt's own statistical regression analysis to those dates, verifying that these disclosures did not have a statistically significant impact.  Based on this analysis, Professor Stulz opined that, assuming Vanda's stock trades in an efficient market, (a) there was no price impact on the date the Qui Tam Action complaint was unsealed, as well as dates of earlier public disclosures, and (b) it would be inconsistent with the efficient market theory for the repetition of the same information in the Aurelius Report to cause a stock drop.  (Pl. Ex. 1 ¶ 23.)  Plaintiff fails to explain why it was purportedly inappropriate for Professor Stulz to use Steinholt's own

13

regression analysis as part of his rebuttal expert opinion, much less why he was obligated to construct an entirely new event study rather than building upon, and critiquing, the analysis by Steinholt.[7]

Moreover, an "event study" is not the only evidence that a Court is permitted to consider in deciding class certification motions. As the Supreme Court held recently in *Goldman Sachs* v. *Arkansas Teacher Retirement System*, when assessing price impact at class certification, courts "should be open to all probative evidence on that question—qualitative as well as quantitative— aided by a good dose of common sense." 141 S. Ct. 1951, 1960 (2021). Further, in other cases where defendants successfully rebutted the fraud-on-the-market presumption at class certification, courts considered expert evidence similar to that presented here by Defendants:

- In *Ohio Public Employees Retirement System* v. *Federal Home Loan Mortgage Corp.*, the defendants' experts used the plaintiff's expert's event study regression to demonstrate lack of front-end price impact, rather than performing an entirely new event study. Expert Report of Mukesh Bajaj, Ph.D. ¶¶ 161, 163–68, *Ohio Pub. Emps. Ret. Sys.* v. *Fed. Home Loan Mort. Corp.*, No. 4:08-cv-00160-BYP (N.D. Ohio Sept. 1, 2017) (ECF No. 383-2). The court accepted this evidence as demonstrating the absence of price impact on the dates of the alleged misrepresentations. *Ohio Public Emps. Ret. Sys.*, 2018 WL 3861840, at *18–20 (N.D. Ohio Aug. 14, 2018).

- In *In re Moody's Corp. Securities Litigation*, the defendants' expert (Professor Stulz) examined relevant public information and opined that certain information was well known to the market prior to the alleged corrective disclosure. Expert Report of René M. Stulz, Ph.D. at Part II, *In re Moody's Corp. Sec. Litig.*, No. 07-cv-8375-GBD (S.D.N.Y. May 28, 2010) (ECF No. 96-10). The court concluded that the defendants had "severed the link between the misrepresentation and the price by showing that the allegedly false information the market was absorbing was not causing the stock price to artificially inflate." *Moody's*, 274 F.R.D. 480, 493 (S.D.N.Y. 2011).

---

[7] None of the cases cited by Plaintiff suggests that Professor Stulz was required to conduct his own entirely independent event study in this case, in light of the facts presented by Plaintiff and the opinion offered by Steinholt. In any event, Plaintiff's cited cases do not show that this issue warrants exclusion. *See United States* v. *Gushlak*, 728 F.3d 184, 201–02 (2d Cir. 2013) ("The decision not to conduct a detailed event study . . . did not render [the expert's] approach unsound or his ultimate estimate unreasonable."); *Alpha Cap. Anstalt* v. *Intellipharmaceutics Int'l Inc.*, No. 19CV9270 (DLC), 2021 WL 2896040, at *5–6 (S.D.N.Y. July 9, 2021) (excluding expert's opinion upon finding multiple failings beyond the absence of an event study); *Pirnik* v. *Fiat Chrysler Automobiles, N.V.*, 327 F.R.D. 38, 45–47 (S.D.N.Y. 2018) (considering but declining to credit expert's opinion for multiple reasons, not limited to the expert's failure to conduct an event study).

14

- In *IBEW Local 98 Pension Fund* v. *Best Buy Co.*, the Eighth Circuit found that defendants presented "strong evidence" to rebut the fraud-on-the-market presumption by pointing to plaintiff's own expert's opinion, including its analysis of stock price movements, which demonstrated a lack of any connection between the stock price movement and certain alleged misstatements. 818 F.3d 775, 782 (8th Cir. 2016). Likewise, here, Professor Stulz relies on certain aspects of Plaintiff's own expert report (the regression analysis) in offering his own opinion.

### D.    Plaintiff's Arguments about the "Credibility" of Earlier Disclosures Are Meritless and Not a Ground to Exclude Professor Stulz's Opinion.

Plaintiff criticizes a supposed opinion by Professor Stulz about the "credibility" of the Aurelius Report relative to earlier public disclosures. (*See* Mot. at 7 (accusing Professor Stulz of "contending (wrongly) that the Aurelius Value report's contents were previously publicly disclosed *with credibility* to investors." (emphasis added)).) As a threshold issue, it is unclear what supposed opinion by Professor Stulz Plaintiff is challenging here; the word "credibility" appears nowhere in Professor Stulz's report. (*See* Pl. Ex. 1.)

It appears that Plaintiff's argument about "credibility" is instead designed to bolster an opinion offered by its own expert, Steinholt, who opined that the earlier disclosures of purported off-label marketing on various public websites were insufficiently "credible" for the market to react to them (Ex. C, Steinholt Reply Rep. ¶ 18), but then opined that the Aurelius Value Report reflected a "credible investigation" (*Id.* ¶¶ 17–18). But Steinholt admitted at his deposition that he has no basis to opine that Aurelius' investigation was "credible." (Ex. A, Steinholt Dep. Tr. at 192:7–23.) Steinholt also does not explain how the Aurelius Report could be more "credible" than the sources on which it relied—which include the public websites that Steinholt criticizes.

Plaintiff apparently seeks to exclude Professor Stulz's opinion to the extent that he did not endorse Steinholt's "credibility" argument[8] by testifying at his deposition that "the information in

---

8    Plaintiff also incorrectly asserts that Professor Stulz's opinions regarding the CafePharma and Glassdoor posts are "inconsistent and unreliable" because he purportedly testified that he "presumed that [the website postings] were material and reflected in Vanda's common stock price when the Aurelius Report was issued on February 11, 2019" but "admit[ted] that it is impossible to assess the credibility" of these posts "because they are anonymous[.]" (Mot. 7 n.9.) Professor Stulz offered no opinion whatsoever as to the materiality of the website

the Aurelius Value report was already in the market" through the website posts, the Qui Tam Action, and other sources. (Pl. Ex. 2 at 105:1–6.) Again, this reflects mere disagreement, not a basis to exclude evidence. If Plaintiff believes that the Aurelius Value short seller report is more "credible" than other sources, and thus carried greater weight with investors, Plaintiff is free to make that irrelevant argument. (Defendants disagree: the Aurelius Report was itself issued by an anonymous source with a disclosed financial interest in causing Vanda's stock to drop and Aurelius Value is one of several short sellers now under investigation by the Department of Justice for engineering stock drops through their research reports.[9]) In all events, this argument reflects nothing more than disagreement about how to interpret the evidence and is not a basis to exclude expert testimony. *Boucher*, 73 F.3d at 21 (contentions that an expert's assumptions are unfounded are matters of weight and credibility, not admissibility).

## E.    Plaintiff Mischaracterizes the Court's Prior Opinion.

Plaintiff also accuses Professor Stulz of "ignor[ing]" this Court's decision on Defendants' motion to dismiss, which (contrary to Plaintiff's motion) was included among the documents on which Professor Stulz relied in preparing his report.[10] (Mot. at 8.) This argument mischaracterizes the Court's prior opinion, which simply held that the issue of loss causation raised factual issues that could not be resolved on a motion to dismiss:

> Media reports and other similar public disclosures are adequate to establish loss causation in this context. Contrary to the defendant's contentions, the fact that the qui tam action was unsealed a few days before the Aurelius Report does not defeat the plaintiffs' claims, especially in this procedural posture. The "effect of [an]

---

posts. (Pl. Ex. 2 at 124:9–13 ("Could it have been value relevant when it was first published? It could be. I don't know. What I know is that by the time it was in Cafepharma, there's no evidence of abnormal returns.").)

[9]    *See* Katia Porzecanski *et al.*, *Hedge Funds Face Expansive Short-Selling Probe, Exciting Critics*, BLOOMBERG NEWS ENTERPRISE (Dec. 10, 2021).

[10]    Plaintiff's assertion that Professor Stulz reached his conclusions "without ever reviewing this Court's opinion denying, in part, Defendants' motion to dismiss" (Mot. at 4) is a blatant misrepresentation of the record. Appendix C to Professor Stulz's report lists, among the documents he relied on, the Court's opinion (which was identified by Plaintiff with Bates number STEINHOLT_0002632). (Pl. Ex. 1 at App. C (explaining that Professor Stulz considered all documents in the Bates range STEINHOLT_0000001–STEINHOLT_0002736).)

16

intervening event on plaintiff's theory of loss causation 'is a matter of proof at trial and not to be decided on a Rule 12(b)(6) motion to dismiss.'"

(MTD Op. at 9 (citations omitted).)  This reasoning, which addressed the question of whether loss causation could be pleaded in light of the intervening unsealing of the Qui Tam Action complaint, has no force at the class certification stage.  As the Supreme Court recently reiterated in *Goldman*, the Court must now decide, sitting as the finder of fact and applying the preponderance-of-the-evidence standard, whether Rule 23 has been satisfied and whether Defendants have successfully rebutted the fraud-on-the-market presumption.  *See Goldman*, 141 S. Ct. at 1960.  That issue is a matter of evidentiary proof, and Professor Stulz's report speaks to it directly.

### F.    Plaintiff's Attacks on Professor Stulz's Credibility Are Meritless and Irrelevant.

Finally, Plaintiff uses its motion to launch meritless and irrelevant attacks on Professor Stulz's credibility, which are also not a proper basis to exclude his opinions.  Plaintiff points to Judge Scheindlin's decade-old ruling in *In re Sadia, S.A. Securities Litigation* (Mot. at 9–10), but that opinion simply rejected one of Professor Stulz's opinions on the merits, finding the opposing expert more persuasive.  269 F.R.D. 298, 317 (S.D.N.Y. 2010).  Plaintiff also points to a decade-old *Reuters* article that criticized Professor Stulz for purportedly failing to disclose alleged conflicts of interest prior to congressional testimony.  (Mot. at 11.)  As Professor Stulz explained at his deposition, however, that particular article ignored that Professor Stulz had, in fact, made the required disclosures.[11]   In any event, Professor Stulz did not—contrary to Plaintiff's argument—offer a general opinion about the reliability of press articles.  These obvious cheap shots, which merely take aim at Professor Stulz's credibility, are both wholly unpersuasive and irrelevant to Plaintiff's *Daubert* motion.[12]   The Court will have the opportunity to evaluate

---

[11]    As Professor Stulz explained, he disclosed all of the information requested of him and provided his resume, which included the professional association the *Reuters* article contended he failed to disclose.  (Pl. Ex. 2 at 30:19–31:4.)

[12]    *McCullock* v. *H.B. Fuller Co.*, 61 F.3d 1038, 1043 (2d Cir. 1995) (rejecting arguments that go to "weight and credibility," not admissibility); *Clark* v. *Travelers Cos., Inc.*, No. 216CV02503ADSSIL, 2020 WL 473616, at *3 (E.D.N.Y. Jan. 29, 2020) (in applying *Daubert*, trial judges should not engage in "evaluating witness credibility

Professor Stulz's credibility—as well as the credibility of Plaintiff's expert, Steinholt, whose opinions have been harshly criticized[13]—in adjudicating Plaintiff's class certification motion after hearing the evidence.

## II. PROFESSOR STULZ APPROPRIATELY OPINES THAT STEINHOLT'S INCORRECT ASSUMPTIONS WOULD LEAD TO INDIVIDUALIZED INQUIRIES.

Plaintiff also accuses Professor Stulz of offering an impermissible opinion on the ultimate legal issue of whether individualized issues predominate over class-wide issues. (Mot. at 11–13.) In three paragraphs of his rebuttal report, Professor Stulz offers a simple criticism of Steinholt's opinion: Steinholt assumes—contrary to the efficient market theory—that the public disclosures in Glassdoor, CafePharma, and the Qui Tam Action were not incorporated into the value of Vanda's stock price (if value-relevant at all) when they became publicly available. (Pl. Ex. 1 ¶¶ 40–42.) As Professor Stulz explains, at least some of Vanda's hundreds of institutional investors (who, like Aurelius Value, are all highly incentivized to find new information about Vanda on which to trade) could have reviewed this public information. (Pl. Ex. 2 at 113:9–22; *see also* Ex. B, Steinholt Rep. ¶ 34.) As a result, Steinholt's approach gives rise to individualized inquiries concerning when each putative class member became aware of allegations of off-label marketing at Vanda. (Pl. Ex. 1 ¶¶ 40–41.) Professor Stulz's opinion is highly relevant to class certification because investors who knew of the Off-Label Claim allegations before February 11, 2019, but decided to invest anyway, would be subject to individual issues of reliance and damages.

---

and weight of evidence," which is "the ageless role of the jury" (citing *McCullock* v. *H.B. Fuller Co.*, 61 F.3d 1038 (2d Cir. 1995))); *Carpenters Pension Tr. Fund of St. Louis* v. *Barclays PLC,* 310 F.R.D. 69, 76 (S.D.N.Y. 2015) ("trial courts must consider only the admissibility of expert evidence rather than its weight or credibility" when applying *Daubert*).

[13]  *See IBEW Local 98 Pension Fund* v. *Best Buy Co.*, 818 F.3d 775, 782 (8th Cir. 2016) (holding that "*the opinion of plaintiff's own expert*"—i.e., Steinholt—undermined plaintiff's case by showing alleged misrepresentations had no price impact, as pointed out by defendants (emphasis added)); *Barrie* v. *Intervoice-Brite, Inc.*, No. CIV.A. 3:01-CV-1071, 2009 WL 3424614, at *15 (N.D. Tex. Oct. 26, 2009) ("Boiled down to its essence, Steinholt's reasoning is that any major drop in stock price indicates that there must have been some prior mistruths that are now corrected or exposed, whether or not the disclosure preceding that precipitous drop has any relationship to those alleged false statements.").

This reflects another flaw in Steinholt's (incorrect) application of the efficient market hypothesis, under which the market only selectively absorbs publicly available information.

It is entirely within the scope of Professor Stulz's expertise as a financial economist to explain these flaws in Steinholt's opinion. It is then entirely left to this Court to address the ultimate legal issue—the presence of individualized inquiries, and whether Rule 23 can be satisfied. *See Rochester Gas & Elec. Corp.* v. *GPU, Inc.*, No. 00–CV–6369, 2008 WL 8912083, at *5 & n.7 (W.D.N.Y. Aug. 8, 2008) (noting that while the ultimate legal determination was for the court to make, the expert's testimony placing factual information in context with established legal principles was admissible and "was of assistance to the court") (collecting cases); *In re Rezulin Prods. Liability Litig.*, 309 F. Supp. 2d 531, 541 (S.D.N.Y. 2004) ("an expert may give an opinion to help the [factfinder] decide an issue in the case" and, therefore, "factual conclusions on an ultimate issue to be decided by the [factfinder] are permissible").

Plaintiff also misstates the legal standard on this issue. Rule 704 expressly provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a). It is common for experts to offer "factual conclusions accompanied by economic analysis on mixed questions of law and fact that bear on issues relevant to [a class certification] motion"—which is exactly what Professor Stulz has done. *In re Aluminum Warehousing Antitrust Litig.*, 336 F.R.D. 5, 32 (S.D.N.Y. 2020). The *Aluminum Warehousing* court thus rejected a similar challenge to an expert's opinion that "individualized inquiries" would be necessary, concluding that the expert's "use of the term[] 'individualized inquiry' . . . in his report does not transform his empirical and economic analysis into testimony stating ultimate legal conclusions[.]" *Id.* (internal citations omitted). The same is true of Professor Stulz's opinion here.[14]

---

[14] The risk that Professor Stulz has offered a "legal opinion" is also mitigated here by the lack of a jury. Indeed, Plaintiff cites only one case in support of this argument in which expert testimony was excluded at class certification because the expert offered an opinion on an ultimate legal issue: Judge Buchwald's opinion in *LIBOR*, where a plaintiff's expert improperly sought to opine on the scope of a defendant's discovery

### III.    PROFESSOR STULZ APPROPRIATELY IDENTIFIES FLAWS IN STEINHOLT'S DAMAGES METHODOLOGY.

Finally, Plaintiff argues that the Court should not consider Professor Stulz's opinion on the various flaws in Steinholt's damages methodology. Plaintiff argues that Professor Stulz's opinion should be excluded because it does not offer a legally sufficient basis to deny class certification and purportedly requires the Court to "disregard precedential legal authority." (Mot. at 13.) But this argument can be rejected out of hand, because sufficiency of the evidence is irrelevant under the *Daubert* standard. *See Phoenix Light SF Ltd.* v. *Bank of New York Mellon*, No. 14-CV-10104 (VEC), 2020 WL 1322856, at *12 (S.D.N.Y. Mar. 20, 2020) ("Doubts about the legal sufficiency of [a party's] theory . . . is not grounds for excluding expert testimony that assumes the viability of that theory"); *Olin*, 2018 WL 1901634, at *21 (explaining that "the testimony of a party's expert must be evaluated within the context of that party's own theory of the case" and "where the legal or factual sustainability of a party's theory has not yet been decided, the possibility that such theory 'may be legally or factually deficient' is 'not justification[ ] for concluding that, in the context of [that party's] theory, [the expert's] testimony is unreliable or unhelpful'" (quoting *In re Pfizer*, 819 F.3d at 661)).

Indeed, Plaintiff's argument does not address any of part of the *Daubert* test. Plaintiff does not identify any deficits in Professor Stulz's qualifications or methodology. Plaintiff also does not argue that potential flaws in Steinholt's proposed class-wide damages methodology are irrelevant

---

obligations. *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 498–99 (S.D.N.Y. 2018). That ruling, of course, has no bearing here. Plaintiff's other cited cases come from other areas of law that are obviously distinguishable, including because all of them involved merits experts proffered to testify before a jury. *See Burkhart* v. *Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1213–14 (D.C. Cir. 1997) (expert in jury case offered impermissible legal opinion on meaning of legal terms in federal disability regulations); *Pearlman* v. *Cablevision Sys. Corp.*, No. 10-CV-4992(JS)(GRB), 2015 WL 9462104, at *11–12 (E.D.N.Y. Dec. 28, 2015) (expert in jury case offered ultimate legal conclusions on contract interpretation without any relevant opinion on industry custom or practice); *LinkCo, Inc.* v. *Fujitsu Ltd.*, No. 00 CIV 7242 (SAS), 2002 WL 1585551, at *3 (S.D.N.Y. July 16, 2002) (expert in jury case offered impermissible opinion on legal standard for trade secret damages). Plaintiff also relies on *Malletier* v. *Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558 (S.D.N.Y. 2007), where the court did not apply this principle to any expert opinion, but rather criticized the plaintiff's expert for relying upon a survey in which he asked participants to reach a legal conclusion—one of several flaws that rendered the survey unreliable.

to class certification; in fact, such flaws are plainly relevant under the Supreme Court's holding in *Comcast.  See Ohio Pub. Emps. Ret. Sys.* v. *Fed. Home Loan Mortg. Corp.*, No. 4:08CV0160, 2018 WL 3861840, at *14 (N.D. Ohio Aug. 14, 2018) (denying motion to exclude similar expert opinion, concluding that it addressed "precisely the requirement the Supreme Court articulated in *Comcast*"); *In re Aluminum Warehousing*, 336 F.R.D. at 46–47 ("[W]here an expert's model is the basis for a plaintiff's claim of classwide impact and causation, a court is obliged to rigorously examine the soundness of that model at the class certification stage."). Plaintiff does not even dispute that Steinholt's methodology suffers from the flaws Professor Stulz has identified. At most, Plaintiff argues that Professor Stulz "applies an incorrect legal standard," an issue that does not warrant exclusion because the Court "will be able to effectively evaluate [the expert's] report and any possible testimony, and to accord that report and any possible testimony the appropriate weight."  *Computer Assocs. Int'l, Inc.* v. *Simple.com, Inc.*, 2005 WL 6042721, at *2 (E.D.N.Y. Jan. 19, 2005).  Tellingly, Plaintiff cites no case in which a class certification expert opinion has been excluded based on this argument.

## CONCLUSION

For the reasons stated above, Defendants respectfully request that the Court deny Plaintiff's motion to exclude Professor Stulz's report and opinions.

21

Dated:  January 7, 2022
    New York, New York

                                    PAUL, WEISS, RIFKIND, WHARTON &
                                        GARRISON LLP

                                    By:   */s/* Audra J. Soloway
                                          Daniel J. Kramer
                                          Audra J. Soloway
                                          Justin D. Ward
                                          Emily M. Miller
                                          1285 Avenue of the Americas
                                          New York, New York 10019-6064
                                          Telephone:  (212) 373-3000
                                          Email:  dkramer@paulweiss.com
                                          Email:  asoloway@paulweiss.com
                                          Email:  jward@paulweiss.com
                                          Email:  emiller@paulweiss.com

                                          *Counsel for Defendants*

22