UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————————— x

KENNETH GORDON, Individually and on          :    Civil Action No. 1:19-cv-01108-FB-LB
Behalf of All Others Similarly Situated,     :
                                             :    CLASS ACTION
                         Plaintiff,          :
                                             :    Hon. Frederic Block
        vs.                                  :
                                             :    **REPLY MEMORANDUM OF LAW IN**
VANDA PHARMACEUTICALS, INC., and             :    **FURTHER SUPPORT OF LEAD**
MIHAEL H. POLYMEROPOULOS,                    :    **PLAINTIFF'S MOTION TO EXCLUDE**
                                             :    **THE REPORT AND OPINIONS OF RENÉ**
                         Defendants.         :    **M. STULZ, PH.D.**
                                             :
———————————————————————— x

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION .................................................................................................1

II.     ARGUMENT.......................................................................................................3

        A.      Dr. Stulz's Methodology For Assessing Price Impact Is Unreliable and His
                Opinions Should Be Excluded ................................................................3

                1.      Dr. Stulz's Price Impact Opinion Relies on Erroneous
                        Assumptions and Is Unsupported by Expert Financial Analysis................4

                2.      Dr. Stulz's Price Impact Opinion Relies on an Incorrect Market
                        Efficiency Definition and Is Unsubstantiated by a Countering
                        Event Study or Any Other Empirical Evidence ..........................................5

                3.      Dr. Stulz's Price Impact Opinion Is Unreliable Because It Conflicts
                        with Findings of This Court....................................................................7

        B.      Dr. Stulz's Opinion on Individualized Inquiries Is Improper .................8

        C.      Dr. Stulz's Opinions on Class-Wide Damages Are Improper ................9

III.    CONCLUSION....................................................................................................9

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*City of Cape Coral Municipal Firefighters' Ret. Plan v. Emergent Biosolutions*,
  322 F. Supp. 3d 676 (D. Md. 2018) ..................................................................................6

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  563 U.S. 804 (2011) ........................................................................................................8

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  573 U.S. 258 (2014) .....................................................................................................6, 8

*IBEW Local 98 Pension Fund v. Best Buy Co.*,
  818 F.3d 775 (8th Cir. 2016) ..........................................................................................7

*In re Aluminum Warehousing Antitrust Litig.*,
  366 F.R.D. 5 (S.D.N.Y. 2020) .....................................................................................3, 9

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  299 F. Supp. 3d 430 (S.D.N.Y. 2018) ................................................................. *passim*

*In re Moody's Corp. Sec. Litig.*,
  274 F.R.D. 480 (S.D.N.Y. 2011) .....................................................................................7

*In re Rezulin Prods. Liab. Litig.*,
  309 F. Supp. 2d 531 (S.D.N.Y. 2004) ..............................................................................9

*In re Sadia, S.A. Sec. Litig.*,
  269 F.R.D. 298 (S.D.N.Y. 2010) .....................................................................................4

*In re Teva Sec. Litig.*,
  2021 WL 872156
  (D. Conn. Mar. 9, 2021) ..................................................................................................3

*Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mort. Corp.*,
  2018 WL 3861840
  (N.D. Ohio Aug. 14, 2018) ..............................................................................................7

*Olin Corp. v. Lamorak Ins. Co.*,
  2018 WL 1901634
  (S.D.N.Y. 2018) ...............................................................................................................5

*Robinson v. Sanctuary Music*,
  383 Fed. Appx. 54 (2d Cir. 2010) ...................................................................................8

**Page**

*Robinson v. Sanctuary Record Grps. Ltd.*,
    542 F. Supp. 2d 284 (S.D.N.Y. 2008)......................................................................8

*Victoria's Secret Stores Brand Mgmt., Inc. v. Sexy Hair Concepts, LLC*,
    2009 WL 959775
    (S.D.N.Y. Apr. 8, 2009)...................................................................................3

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
    Rule 23 .....................................................................................................2, 3, 8
    Rule 23(b)(3)................................................................................................8
    Rule 56 .......................................................................................................3

Lead Plaintiff Teamsters Local Union No. 727 Pension Fund ("Plaintiff") respectfully submits this reply in further support of its Motion to Exclude Dr. Stulz's Report and opinions.[1]

## I.    INTRODUCTION

Defendants' Opposition confirms that Dr. Stulz's Report and opinions should be excluded because they are unreliable, untethered to economic expertise, and unsupported by the law. Nowhere do Defendants articulate what specialized knowledge, economic principles, or tools Dr. Stulz used to form his opinions.  In particular, with respect to Dr. Stulz's price impact challenge, Defendants cannot escape the fact that Dr. Stulz never assessed whether the information he compiled was publicly announced or material (value-relevant) to investors before the February 11, 2019 publication of the Aurelius Value report – meaning his opinions are unreliable and rest upon unfounded and unproven speculation.  Likewise, Defendants offer no response to the fact that "individualized inquiries" is not a financial economics term of art, or that Dr. Stulz relied on any financial economics materials in proffering what equates to a legal opinion.  Nor do Defendants credibly explain how Dr. Stulz's damages criticisms are appropriate in light of the Second Circuit's established position on damages at this stage in securities fraud class actions.

Rather than address these obvious deficiencies, Defendants attempt to circumvent them by wrongly arguing that this motion relates only to merits questions, and not admissibility.  But Plaintiff's Motion to Exclude could not have been clearer: it "focuses here only on the *Daubert*-related deficiencies in the Stulz Report."  Pl. Mtn. at 4 n.5.  In a further effort to deflect from the

---

[1]    Capitalized terms have the same meanings as described in Plaintiff's Memorandum of Law in Support of Lead Plaintiff's Motion to Exclude the Report and Opinions of René M. Stulz, Ph.D., dated December 1, 2021 ("Plaintiff's Motion to Exclude," and cited as "Pl. Mtn."). Defendants' Memorandum of Law in Opposition to Lead Plaintiff's Motion to Exclude the Report and Opinions of René M. Stulz, dated January 7, 2022, is referred to as "Opposition" and cited as "Opp." Exhibits cited as "Pl. Ex. __" are attached to the December 1, 2021 Declaration of Michael G. Capeci, submitted in support of Plaintiff's Motion to Exclude.

deficiencies of the Stulz Report, Defendants level unfounded attacks on Plaintiff's expert, Steinholt. But those contentions are irrelevant to whether Dr. Stulz's Report and opinions meet the *Daubert* standard, and are plainly disingenuous because Defendants have not moved to exclude Steinholt's opinions. Moreover, belying Defendants' criticisms of Steinholt, Dr. Stulz ***entirely relies*** on Steinholt's event study, albeit to form an incoherent price impact challenge.

Likewise, Defendants recite Dr. Stulz's qualifications, even though they are not contested by Plaintiff. Beyond being irrelevant, they are no barrier to a finding of exclusion. Indeed, in *In re LIBOR-Based Financial Instruments Antitrust Litigation*, 299 F. Supp. 3d 430 (S.D.N.Y. 2018) ("*LIBOR*"), Judge Buchwald excluded (among other experts) Dr. H. Nejat Seyhun for submitting unreliable and inconsistent opinions, even though he "is the Jerome B. and Eilene M. York Professor of Business Administration and a Professor of Finance at the University of Michigan's Ross School of Business" and "holds a Ph.D. and M.S. from the University of Rochester and a B.S. from Northwestern University, and has written a number of published papers on various finance and securities topics." *Id.* at 473-89 & n.12. In other words, Dr. Seyhun is no less qualified than Dr. Stulz, but that did not preclude his exclusion in *LIBOR* – nor should it here for Dr. Stulz.

As a last ditch effort, Defendants argue that Plaintiff must meet a "very high bar" under *Daubert* because the Court, and not a jury, is the factfinder. Opp. at 2. But Defendants ignore the holding in *LIBOR* that the normal *Daubert* standard applies to expert submissions on Rule 23 motions. 299 F. Supp. 3d at 471. Even worse, Defendants misleadingly describe *LIBOR* as involving "a defendant's discovery obligations" (Opp. at 19-20 n.14), when, in fact, *LIBOR* assessed expert opinions on a Rule 23 motion.

In short, Defendants' Opposition does nothing to undermine Plaintiff's Motion to Exclude.

## II.    ARGUMENT

### A.    Dr. Stulz's Methodology For Assessing Price Impact Is Unreliable and His Opinions Should Be Excluded

Although Plaintiff's Motion to Exclude extensively cites *LIBOR* (Pl. Mtn. at 6-9, 12), Defendants do not attempt to address it, other than to inaccurately argue that *LIBOR* "has no bearing here" because it purportedly excluded an expert opinion about discovery obligations. Opp. at 19-20 n.14. Not so. *LIBOR* extensively discusses whether expert testimony on the elements of Rule 23 is permissible under *Daubert*, a reality Defendants cannot escape. 299 F. Supp. 3d at 456. Defendants' failure to squarely address *LIBOR* is, standing alone, fatal to their Opposition.

Moreover, *LIBOR* makes clear that there is no artificial barrier for Plaintiff's Motion to Exclude just because the Court is the factfinder on a Rule 23 motion. *LIBOR* reaches the exact opposite conclusion, holding that expert testimony offered on a Rule 23 motion must meet the *Daubert* standard. 299 F. Supp. 3d at 471.[2] Ignoring *LIBOR*, Defendants nonetheless argue that the need to assess expert opinions under *Daubert* is "eliminated" where the Court is the factfinder. Opp. at 8. That obviously wrong contention is unsupported by the cases cited by Defendants, none of which involved Rule 23 motions or distinguish (or even address) *LIBOR*. *See, e.g.*, *Victoria's Secret Stores Brand Mgmt., Inc. v. Sexy Hair Concepts, LLC*, 2009 WL 959775, at *8 n.5 (S.D.N.Y. Apr. 8, 2009) (applying *Daubert* and finding that a proposed expert witness can testify as a lay witness on a Rule 56 motion). Indeed, one of Defendants' main cases – *In re Aluminum Warehousing Antitrust Litigation*, 366 F.R.D. 5 (S.D.N.Y. 2020) – cites *LIBOR* in concluding that *Daubert* must be applied on Rule 23 motions even though the Court is the factfinder. *Id.* at 29.

---

[2]    *See also In re Teva Sec. Litig.*, 2021 WL 872156, at *10 (D. Conn. Mar. 9, 2021) (undertaking full *Daubert* review at class certification).

### 1.    Dr. Stulz's Price Impact Opinion Relies on Erroneous Assumptions and Is Unsupported by Expert Financial Analysis

Dr. Stulz's price impact challenge is unreliable because it is not the product of economic expertise or a valid methodology. Instead, it is based on cherry-picked information (*i.e.*, anonymous posts written on online message-boards such as CafePharma and Glassdoor, an FDA warning letter, and a pre-Class Period analyst report) that Dr. Stulz admits he never reviewed to ascertain if it was material or publicly announced to investors. Pl. Mtn. at 6-11. That is the hallmark of unreliable and speculative testimony that must be excluded. *Id.*[3]

Recognizing as much, Defendants do not meaningfully address Judge Scheindlin's ruling in *In re Sadia, S.A. Securities Litigation*, 269 F.R.D. 298 (S.D.N.Y. 2010), other than to pejoratively describe it as a "decade-old" decision and that Plaintiff's citation to it was an "obvious cheap shot[.] Opp. at 17.[4] That ignores the finding in *Sadia* that Dr. Stulz's opinions amounted to "rampant speculation" (269 F.R.D. at 315) – precisely what *Daubert* prohibits. *See LIBOR*, 299 F. Supp. 3d at 498 (holding that "opinions purporting to identify specific deficiencies in Rabobank's data productions are speculative, and therefore inadmissible."). Thus, while no *Daubert* motion was made in *Sadia*, Judge Scheindlin essentially conducted a *Daubert* analysis in rejecting Dr. Stulz.

---

[3]    Defendants argue that Dr. Stulz's factual narrative of this information is admissible because it is not extraneous and there is no risk of confusing a jury. Opp. at 12. Defendants miss the point. Dr. Stulz's sourcing of possibly publicly-accessible – but not publicly announced – information to opine on what was disclosed regarding Vanda's off-label marketing is a lay person's analysis that does not require expert knowledge. *See LIBOR*, 299 F. Supp. 3d at 490 ("[A]cting simply as a narrator . . . does not convey opinions based on an expert's knowledge and expertise.").

[4]    Defendants misunderstand the purpose of the *Reuters* article, which is not to suggest that Dr. Stulz lied to Congress (Opp. at 17 & n.11), but that Dr. Stulz understands that publicly-accessible information can be wrong and must be assessed before being deemed reliable. The problem is that Dr. Stulz adamantly refused to do that for the CafePharma and Glassdoor posts for the obvious reason that no investor knew of or cared about anonymous posts on a gossip website – facts that Defendants offer no evidence to dispute. This speaks to the fundamental lack of method underlying Dr. Stulz's analysis and the unreliability of his opinions. *See LIBOR*, 299 F. Supp. 3d at 468 ("inconsistent results are an 'indicia of unreliability' in an expert's methodologies").

Similarly, Dr. Stulz's opinion that the qui tam lawsuit's contents were known to the market by February 5, 2019 is entirely speculative and unconnected to any financial expertise. According to Defendants, Dr. Stulz's opinion is that "at least some of Vanda's hundreds of institutional investors. . . *could have* reviewed" the qui tam complaint starting on February 4 (Opp. at 18 (emphasis added)) – plainly speculates on this possibility without the use of any financial economic tools. Even worse, neither Defendants nor Dr. Stulz have any evidence showing that this ever occurred, or when or how Aurelius Value obtained the qui tam complaint.[5] Defendants' failure to obtain this discovery does not mean they can substitute Dr. Stulz's speculation for admissible facts. *See LIBOR*, 299 F. Supp. 3d at 499 ("Mr. Beevers is not permitted to offer a definition of completeness that is untethered from any concrete requirements (beyond his personal definition of what is 'necessary') and then opine that Rabobank's productions fail to meet that wholly subjective standard.").

### 2.    Dr. Stulz's Price Impact Opinion Relies on an Incorrect Market Efficiency Definition and Is Unsubstantiated by a Countering Event Study or Any Other Empirical Evidence

Although Defendants fail to identify any economic tools that Dr. Stulz applied in forming his price impact opinion, they urge that the "expert evidence" he submits suffices. Opp. at 14. Defendants describe Dr. Stulz's process, as follows: "[a]pplying his training and experience as a financial economist, Professor Stulz identified certain dates on which allegations of Vanda's off-label marketing were publicly disclosed prior to the Aurelius Report's publication." *Id.* at 13.

---

[5]    Defendants argue that Dr. Stulz's opinions regarding price impact are reliable because they conform to "Defendants' theory of the facts[.]" Opp. at 11. That Dr. Stulz's opinions are unsurprisingly in accord with Defendants does not establish that they are substantiated by any empirical economic analysis. *See Olin Corp. v. Lamorak Ins. Co.*, 2018 WL 1901634, at \*21 (S.D.N.Y. 2018) (excluding expert testimony that was untethered to admissible facts in evidence).

Dr. Stulz's process improperly conflates merely ***accessible*** information with the actual standard set forth by the Supreme Court, which is that investors "generally consider most ***publicly announced*** material statements about companies, thereby affecting stock market prices." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 272 (2014) ("*Halliburton II*") (emphasis added). Even though the *Halliburton II* market efficiency definition is clearly stated in Steinholt's reports, Plaintiff's class certification papers, and the Motion to Exclude (*see, e.g.*, Pl. Mtn. at 8-9), Defendants and Dr. Stulz continue to contravene it by arguing that information that is potentially publicly ***accessible*** is equivalent to publicly ***announced*** information. Opp. at 9 n.3. But Dr. Stulz admits he never undertook any analysis of whether the pre-Aurelius Value report information he cites was ever publicly announced to the market. Pl. Mtn. at 8-9. That is why Dr. Stulz's attempt to portray Plaintiff's theory as "delayed price impact" (Opp. at 2) rings hollow – stock prices cannot be impacted by information that is not publicly announced, as *Halliburton II* recognizes and Defendants and Dr. Stulz ignore.

In addition, Defendants do not address Dr. Stulz's failure to account for the contents of the Aurelius Value report, which discredited CafePharma in general and does not cite a single CafePharma post listed in Exhibit 1 to the Stulz Report. Pl. Mtn. at 9. Even worse, Defendants ignore that the Aurelius Value report strongly supports a finding that the qui tam complaint was not previously publicly announced to investors before February 11, 2019, by characterizing it as an "undisclosed and previously unreported lawsuit[.]" Pl. Ex. 5 at 3. Dr. Stulz's refusal to acknowledge this evidence further demonstrates the unreliability of his opinions.

Moreover, Dr. Stulz's admitted failure to substantiate his opinions through an event study (*see* Opp. at 12), and instead rely solely on Steinholt's event study, is fatal. *See City of Cape Coral Municipal Firefighters' Ret. Plan v. Emergent Biosolutions*, 322 F. Supp. 3d 676, 692 (D. Md. 2018)

(criticizing Dr. Stulz for failing to submit a contrary event study when challenging price impact). Dr. Stulz's failure to conduct his own event study is particularly egregious given that Steinholt's event study forms the basis of his price impact challenge. Stated differently, Dr. Stulz takes the untenable position that Steinholt's event study is sufficient to establish that Vanda common stock traded in an efficient market during the Class Period, but not that there was price impact for the February 11, 2019 disclosure of the Aurelius Value report. Dr. Stulz cannot have it both ways, and his inherently inconsistent opinions warrant exclusion. *See LIBOR*, 299 F. Supp. 3d at 489 (excluding "inconsistent" expert testimony).[6]

### 3. Dr. Stulz's Price Impact Opinion Is Unreliable Because It Conflicts with Findings of This Court

Dr. Stulz's price impact opinion is also inadmissible because it disregards this Court's motion to dismiss decision, which Dr. Stulz failed to review. Pl. Mtn. at 8. Despite Defendants' attempt to misrepresent the record in arguing that Dr. Stulz did review that decision (Opp. at 16-17 & n.10), a close review of Appendix A to the Stulz Report shows that Dr. Stulz only reviewed the "Analyst Reports" produced by Steinholt, ***not*** all of the documents he produced (which included the motion to dismiss decision). *See* Pl. Ex. 1, App. C at 1 ("These reports are included in the

---

[6]    In attempting to excuse Dr. Stulz's failure to conduct an event study (Opp. at 14-15), Defendants cite cases where the defense expert conducted either an event study or a regression analysis, neither of which Dr. Stulz performed here. *See In re Moody's Corp. Sec. Litig.*, 274 F.R.D. 480, 492 (S.D.N.Y. 2011) ("Defendants offer Dr. Rene Stulz's 'event study,' which is the usual method by which a party seeks to prove that a misrepresentation did not cause a statistically significant change in price."); *Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mort. Corp.*, 2018 WL 3861840, at *13 (N.D. Ohio Aug. 14, 2018) ("[U]sing a corrected version of [plaintiff expert's] market model regression, [the defense expert] analyzed whether there was statistically-significant movement in the price of Freddie Mac stock . . . and found statistically insignificant stock price reactions or reactions that were statistically significant in the wrong direction[.]"); *IBEW Local 98 Pension Fund v. Best Buy Co.*, 818 F.3d 775, 779 (8th Cir. 2016) ("Defendants countered with an event study by their expert, Kenneth Lehn . . ."). In other words, these cases did not involve "expert evidence similar to that presented here by Defendants" (Opp. at 14), and instead serve to illustrate precisely what is lacking from the Stulz Report.

production of documents relied upon by Bjorn I. Steinholt (STEINHOLT_0000001-STEINHOLT_0002736).").  Under the very next heading, entitled "Legal Documents," Dr. Stulz lists the only three legal documents that he did review.  *Id.*  ***Dr. Stulz did not include the Court's decision on the motion to dismiss in the list under the heading "Legal Documents*."  *Id.*

Defendants obviously recognize that Dr. Stulz's failure to review this Court's decision is fatal.  Indeed, Defendants admit in their Opposition that their motion to dismiss loss causation argument is identical to Dr. Stulz's price impact argument.  Opp. at 17.  Effectively, Defendants have confirmed that Dr. Stulz has run afoul of the Supreme Court's mandate that "[l]oss causation addresses a matter different from whether an investor relied on a misrepresentation, presumptively or otherwise, when buying or selling a stock," which is not an appropriate inquiry on a Rule 23 motion. *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 812 (2011).[7]

## B.    Dr. Stulz's Opinion on Individualized Inquiries Is Improper

Defendants do not seriously contend that Dr. Stulz's opinion regarding individualized inquiries is based on his financial expertise.  Opp. at 18-19.  Nor could they, as "individualized inquiries" is a legal determination under Rule 23(b)(3) and Dr. Stulz admits he cannot offer a legal opinion.  Pl. Mtn. at 11-13.  Instead, Defendants double down on their disregard of *Halliburton II* in arguing that Dr. Stulz provided valuable financial economics expertise by speculating that because the qui tam complaint was theoretically publicly accessible on a court docket, hedge fund investors must have known about – even though Defendants and Dr. Stulz have no evidence to support that contention.  Opp. at 19.  This belated (and inaccurate) attempt to save Dr. Stulz's opinion fails.  *See*

---

[7]    Defendants wrongly contend that Plaintiff's citation to *Robinson v. Sanctuary Record Groups, Limited*, 542 F. Supp. 2d 284 (S.D.N.Y. 2008) (Pl. Mtn. at 7), which assessed expert testimony offered in connection with assessing default damages (542 F. Supp. 2d at 289), was reversed on appeal.  Opp. at 12 n.6.  In reality, the appeal in *Robinson* reversed the denial of a motion to vacate the default judgment, and does not address *Daubert*.  *See Robinson v. Sanctuary Music*, 383 Fed. Appx. 54 (2d Cir. 2010).

*Aluminum Warehousing*, 336 F.R.D. at 31 (defense expert was permitted to opine on individualized inquiries because, unlike Dr. Stulz, he "discussed and presented calculations relating to, purchases and sales of aluminum, to analyze how one might identify a first-level purchase of aluminum."); *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 541 (S.D.N.Y. 2004) (*Daubert* "requires the exclusion of testimony that states a legal conclusion[.]").[8]

### C.    Dr. Stulz's Opinions on Class-Wide Damages Are Improper

Defendants do not dispute that in securities fraud class actions the Second Circuit has rejected the level of detail requested by Dr. Stulz in attempting to discredit Steinholt's damages model. Opp. at 20-21. Nonetheless, Defendants argue that Dr. Stulz's arguments are "relevant," citing out-of-Circuit authority that contravenes the Second Circuit and a non-securities class action that distinguishes the importance of *Comcast* in the antitrust context. *See Aluminum Warehousing*, 336 F.R.D. at 47 ("Following *Comcast*, circuit courts in **antitrust cases** have consistently, and correctly, read that decision to require that district courts carefully examine, at the class certification stages, the soundness of an expert's model relied upon to establish classwide impact.") (emphasis added). These arguments cannot escape that an expert's failure to account for "the applicable legal standard" in opining on damages warrants the expert's exclusion. *LIBOR*, 299 F. Supp. 3d at 560.

### III.    CONCLUSION

For the reasons set forth herein and in Plaintiff's Motion to Exclude, Plaintiff respectfully requests that the Court grant this motion and exclude Dr. Stulz's Report and opinions.

---

[8]    Defendants have largely mooted the issue by relegating their individualized inquiries argument to a footnote in their class certification opposition brief.

DATED:  January 28, 2022               Respectfully submitted,

                                   ROBBINS GELLER RUDMAN
                                     & DOWD LLP
                                   DAVID A. ROSENFELD
                                   MICHAEL G. CAPECI
                                   AVITAL O. MALINA

                                          */s/ Michael G. Capeci*
                                   MICHAEL G. CAPECI

                                   58 South Service Road, Suite 200
                                   Melville, NY  11747
                                   Telephone:  631/367-7100
                                   631/367-1173 (fax)
                                   drosenfeld@rgrdlaw.com
                                   mcapeci@rgrdlaw.com
                                   amalina@rgrdlaw.com

                                   *Lead Counsel for Lead Plaintiff*

- 10 -