UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------X
                              :
KENNETH GORDON,               :
                              :      19-CV-1108 (FB)(LB)
            Plaintiff,        :
                              :      July 13, 2021
                              :
        V.                    :      Brooklyn, New York
                              :
VANDA PHARMACEUTICALS,        :
et al.,                       :
            Defendant.        :
------------------------------X

TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
BEFORE THE HONORABLE LOIS BLOOM
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:          MICHAEL CAPECI, ESQ.
                            Robbins Geller Rudman & Dowd, LLP
                            58 South Service Road, Suite 200
                            Melville, NY 11747


For the Defendant:          AUDRA SOLOWAY, ESQ.
                            Paul, Weiss, Rifkind,
                            Wharton & Garrison, LLP
                            1285 Avenue of the Americas
                            New York, NY 10019


Court Transcriber:          ARIA SERVICES, INC.
                            c/o Elizabeth Barron
                            274 Hovey Road
                            Milo, ME 04463
                            Aria@leinen.net


Proceedings recorded by electronic sound recording,
transcript produced by transcription service

THE CLERK:  Civil cause for telephone status conference, docket number 19-CV-1108, Gordon v. Vanda Pharmaceuticals, et al.

Will the parties please state their name for the record.

MR. CAPECI:  Michael Capeci, David Rosenfeld, and Avital Malina from Robbins Geller Rudman & Dowd, on behalf of plaintiff.

MS. SOLOWAY:  Good morning.  Audra Soloway and Emily Miller from Paul Weiss on behalf of the defendants.

THE CLERK:  The Honorable Lois Bloom presiding.

THE COURT:  Good morning, Mr. Capeci, Mr. Rosenfeld, Ms. Malina, Ms. Soloway, and Ms. Miller. I'm just looking on the docket sheet.  Ms. Miller, I don't see a notice of appearance for you.  I see Mr. Kramer, Mr. Feldman.  So if you are going to note your appearance, I'd ask you to file a notice of appearance on the docket.

MS. MILLER:  Okay.

THE COURT:  Very good.  This is a telephone conference in plaintiff's putative class action alleging violations of the Securities and Exchange Act of 1934.  Plaintiff claims the defendants made

misleading statements about the pharmaceuticals Fanapt, Hetlioz, and Tradipitant. I last spoke to the parties on May 19th. At that time, I set the deadlines for class cert and for expert discovery and for briefing of plaintiff's motion for class cert, and I directed the parties to file a status letter by July 7th, 2021 regarding the other deadlines that need to be set in this matter, and I got what I asked for, which is a twenty-page document setting forth both the plaintiff's and the defendant's position.

There is a big difference of opinion between the parties. There is a qui tam action pending in the district court in D.C., and that case is brought by different plaintiffs. Of course, it's a different theory. It's under 17-CV-464. There's also a declaratory relief action pending brought by defendant in the district court in D.C. under 19-CV-301. I want to sort of cut through what the parties' positions were.

Defendants are arguing that I should put this on the same schedule or even consolidate it with a case that's not in this district. I don't think that is going to happen, Ms. Soloway. There is no precedent for it, I've never heard of it. Plaintiffs get to choose their forum, they've chosen this forum. And

what I really want to ask, Ms. Soloway, is so the plaintiffs and the defendants discussed what should be the deadlines.  Then the defendants apparently gave a deadline that the plaintiffs disagreed with.  And then the plaintiffs came back to defendants' position and said, okay, we'll agree with your position, and then you said, that's not our position anymore.

MS. SOLOWAY:  Your Honor, let me address both of those issues.  Just to clarify, we are not seeking to consolidate this action with the action in the District of D.C.  The underlying qui tam action that's pending in the District of D.C. is the action on which the unlawful sales practice allegations in the securities action are derived, your Honor.

So there's a relator in that case, a former Vanda employee, who contends that Vanda engaged in unlawful marketing practices.  70 paragraphs of the complaint in the securities class action essentially replicate the relator's and his colleagues' claims that there were illegal or unlawful marketing practices, and what we're saying is to the extent discovery in the securities action necessarily has to overlap because it's only possible for the defendants in our case to have allegedly lied, your Honor, about what the company's marketing practices were -- that can only

have happened if the underlying unlawful practices themselves happened, which is precisely the issue in the qui tam action.

THE COURT: However, let me stop you, Ms. Soloway.

MS. SOLOWAY: Sure.

THE COURT: Completely different elements to prove the case that plaintiffs are bringing here than to prove what is at issue in the qui tam case. Let me also state that that case was brought in 2017. This case was brought in 2019. Your client chose to get different counsel in this case than the case pending in D.C. There is no economy in putting these two cases on the same track.

MS. SOLOWAY: Your Honor, let me explain the timing issue and the overlap issue. The qui tam action is originally filed as a sealed proceeding, while the government then has an opportunity to decide whether it wants to intervene.

THE COURT: I completely understand. This is not the only case that I've ever had where qui tam is an allegation, so I get that the government has a good period of time and it sometimes gets extended. But that doesn't mean that the forum selected by plaintiffs in this case get to be somewhat hijacked by

a case that was not their client's choosing.

MS. SOLOWAY:  And we're not seeking to hijack their choice of forum, your Honor.  What we're seeking is actually very simple.  We're seeking an informal coordination as to this case and the District of D.C. case, so that when there are deponents who are going to be deposed in both cases, they can sit once for the depositions and not have to sit on dates for example two months apart and be separately deposed on overlapping issues.  This was only --

THE COURT:  Let me stop you.  Let me stop you again.

MS. SOLOWAY:  Yes, your Honor.

THE COURT:  Again, in a civil case, a litigant gets a seven-hour deposition.  You get up to ten without court approval.  Why in this case, just because there is a different case pending against the same defendant on a different theory, why would that mean that they must take three and a half hours from their seven-hour allotment and let somebody else do questioning for those three and a half hours?

MS. SOLOWAY:  We haven't taken the position that they need to, your Honor.  What we said is that for each witness, if there's a need for an additional amount of time because the issues are sufficiently

different that they need to cover ground that's not covered by each other, then we would absolutely negotiate that because it's far preferable for us, your Honor -- I don't think this would be necessary for most witnesses but even if you end up with a two-day deposition, to haul these witnesses in, many of whom are former employees and are not within Vanda's control -- to hold them in for two totally separate depositions two months apart --

THE COURT:  Stop for a second.  Stop here for a second.

MS. SOLOWAY:  Yes, your Honor.

THE COURT:  If they're not in Vanda's control, then it's not really a problem for you, it's a problem for the employee.  And they're going to have to be subpoenaed in this action and in the action down there.  I'm not trying to speculate on what the difficulties will be.  What I'm trying to do, and this is what plaintiffs point out in their letter -- it's document 70, page 10.  They say at bottom, "Defendants cannot point this Court to a single case let alone any binding authority where a securities fraud plaintiff was forced to conduct fact discovery before a different judge that was overseeing a qui tam litigation.

So to the extent you're saying you weren't

seeking consolidation, I think that the plaintiffs got perhaps the wrong idea of what you were asking for. Again, I have no intention in doing this case differently than I would do any other case.  Judge Block has already ruled on a motion.  There's plenty of time to figure out the informal accommodations that you're now suggesting to me will save everybody in the long run.  I'm all for parties cooperating, I'm all for parties streamlining the process and not duplicating each other's efforts, but that's not exactly what your papers were asking for.

MS. SOLOWAY:  Your Honor, I think what we're asking for are really three discrete things, all of which I would describe as informal coordination.  One is to coordinate depositions so that where there are overlapping depositions, both nonparties and parties can have the efficiency of only sitting once for a deposition, even if that results in one longer deposition.

THE COURT:  I'm not doing that.  I'm not ordering that to happen.  That's what I just said. Again, I understand that you would only want your people to be called once.  And to the extent that there is overlap -- and now I'm pointing to page 14 of document 70, which is your position where you're

comparing factual allegations and you say, for example, 35 of plaintiff's initial document requests served thus far seek documents that will undoubtedly be sought in the qui tam action.  I'm supposed to predict what they're going to ask for in the qui tam action?

And that case is not before me, so why am I even hearing about what will undoubtedly be sought in another action where, by the way, plaintiff is represented by different counsel and defendants are represented by different counsel.  So if your client was sincere about what you're purporting to seek in this case, they would have gotten the same counsel in both cases.  That would have eliminated a lot of this overlap.

MS. SOLOWAY:  Your Honor, just to be clear, we're not seeking to force the plaintiffs in this case to stand down from their discovery requests.  In fact, they've already served discovery requests and we've been hours meeting and conferring on them.

THE COURT:  And that's what they're supposed to.

MS. SOLOWAY:  That is what we're --

THE COURT:  Ms. Soloway, that is what they're supposed to do.

MS. SOLOWAY:  Of course, and it's what we're

supposed to do as counsel in this case is to respond to their discovery requests and negotiate appropriately, and if we have to litigate conflicts, we'll litigate them.

THE COURT:  But you understand --

MS. SOLOWAY:  The issue there --

THE COURT:  I'm sorry to interrupt.  It sounds a bit insincere to the Court when defendants are talking about efficiently coordinating discovery and yet defendants, who get to choose their counsel just like plaintiff gets to choose their counsel, chose different counsel in this action than in the qui tam action.

MS. SOLOWAY:  Your Honor, simply because there are two law firms involved I think doesn't in any way compromise the fact that there are overlying claims or overlapping discovery.  The issue here will come up, your Honor, only if for example -- let me give your Honor an example.  Let's say the plaintiff in our case takes th position that they want 15 of the former/current Vanda sales people's emails searched and they want to use X, Y, and Z search terms, and we're working in good faith obviously to negotiate something like that.

And then the qui tam plaintiffs -- I'm just

using this as an example, your Honor.  I'm not suggesting that this is necessarily going to happen.  They will say, we want 15 different sales people's email searched using additional search terms.  What we're seeking to do, your Honor, is in the event that disputes arise where overlapping discovery is sought, we're looking for a way to try to avoid conflicting rulings on what should be ordered where the documents are almost -- again, your Honor, we don't know that this dispute is going to arise but if it does, we could have a potential where we get conflicting rulings and Vanda has to do two totally different sets of things to get to the same underlying facts --

THE COURT:  Ms. Soloway --

MS. SOLOWAY:  -- which is were there or were there not --

THE COURT:  Ms. Soloway, I'm not in the business of predicting disputes.  I'm in the business of resolving disputes that have arisen, so let's move on, okay?  I would like you to address that second thing that you said you would, where the plaintiffs had asked for a certain deadline.  The defendants had disagreed and asked for a different deadline, and then the plaintiffs acceded to the defendants and then the defendants said no, that's not what we want anymore.

MS. SOLOWAY:  That's frankly not what happened, your Honor.  What we said to the plaintiff is, we think the issue of how we're going to coordinate as between document issues that may come up and depositions should be addressed.  We didn't pull the deadline and say we would never agree to that.  Right now, the current state of play, your Honor, is that we had previously proposed a fact discovery deadline in the class action of May 20th, 2022.  In the qui tam action, the plaintiff and the defendants had proposed to Judge Mehta (ph) the fact discovery deadline of August 31st, 2022.

Again, our position was not so much based on the date that's selected but based on the ability to try to coordinate any overlapping depositions by trying to keep the two schedules somewhat in sync.

THE COURT:  Except, Ms. Soloway, the original proposal by plaintiffs was for fact discovery in February of 2022.  So when you proposed --

MS. SOLOWAY:  No, your Honor.  Their original proposal was actually May 20th, 2022 and then they changed it to make it earlier when we asked them to coordinate with the qui tam.  So their original proposal was what we are now -- what we then proposed to your Honor and asked to hold them to, obviously

subject to this coordination issue getting worked out.

THE COURT:  The coordination issue -- the coordination issue is not an issue that I am going to work out, and I don't expect that Judge Mehta will work it out.  Again, the plaintiff has chosen the forum. Judge Block wrote a lengthy memorandum opinion and order back in March of '21.

I'm setting the discovery deadlines and moving the case through the process, which is my job, and what's going on in Washington D.C. is for that judge in that court to oversee.  I'm not in any way, shape, or form going to govern what happens in D.C. And I don't believe that any court in D.C. is going to govern what happens in the Eastern District of New York.  These are two separate cases. I understand there is overlap and I understand that there may not have been a schedule set but that's what I'm here to do today.

Can I please hear from plaintiff's counsel regarding what defendant's counsel just said about the proposed dates?

MR. CAPECI:  Good morning, your Honor.

THE COURT:  State your name, please.

MR. CAPECI:  Your Honor --

THE COURT:  State your name.

MR. CAPECI:  Sure.  Good morning, your Honor.  It's Michael Capeci from Robbins Geller on behalf of the plaintiff.  Our positions were set forth in the joint report.  I think it was pretty clear where we stood and where they stood.  We agreed to their proposed dates and our view is that enough is enough here.

We're trying to get a case schedule going.  We're trying to move our case along.  We've been fighting with them on the case schedule since March of 2021.  It's been months and months without it being resolved.  We think January for substantial completion and May for fact discovery deadline are more than sufficient time to accomplish what needs to be accomplished in this case.

THE COURT:  Usually, again, the plaintiff is asking for things to move more quickly than defendants.  To the extent that Ms. Soloway is stating that there should be accommodation, that everybody shouldn't have to recreate the wheel -- and I say this all the time in other types of cases.  If there are three defendants with different interests and they're deposing plaintiff, we don't really need to ask for plaintiff's whole history of employment and education three different times.  It's going to be the same.

So how can you assure me that there will be some informal accommodation where there can be accommodation between you and defendant's counsel regarding these overlapping claims?

MR. CAPECI: Well, your Honor, certainly if someone in the qui tam action is deposed that we want to depose is deposed first, we would look at that transcript and we would make every effort to stipulate with defendants to those portions that we think would have overlap in our case so that we wouldn't have the burden --

THE COURT: How would you get copies of those transcripts?

MR. CAPECI: Well, I believe we've made a document request to defendants for the documents generated in that case. Arguably, that would include those transcripts. But I think that also, the way it more likely will work, and I think the reason that the qui tam plaintiffs asked for substantially more time than we were asking is because they have a much greater burden than we do. So really it's going to be them looking at our depositions and deciding what if anything can they use? I would be surprised if they got ahead of us really in any material respect in terms of fact discovery.

MS. SOLOWAY:  Your Honor, if I may address that.

THE COURT:  Ms. Soloway?

MS. SOLOWAY:  If I may address that, your Honor.  What I just heard is that the plaintiffs in our case are going to take depositions or if a qui tam plaintiff takes a deposition first, they're going to get to look at each other's transcripts and then they're all going to get a second day at some point a month or two months later with the same witness, and that's exactly what we're trying to prevent.  Even, your Honor, if we have day one and day two and have them next to each other so that people only have to appear once and maybe we can even these done faster than two days, we would be much better off.

THE COURT:  Ms. Soloway, Ms. Soloway.

MS. SOLOWAY:  Yes, your Honor.

THE COURT:  Your argument is not going to win me over.  I am not going to order the plaintiffs, who are represented by separate, different counsel on a different claim -- I do understand that there is going to be some information that this case -- plaintiffs' claim is that the defendants made misleading statements about these three drugs.  I understand there's going to be some overlap in the information.  But I'm not going

to require them that they have to depose the people seriatim. I'm just not. I set deadlines and the parties work within those deadlines, and you don't get to change the deadlines unless you get court approval, but I'm not going to micro-manage the case.

So if you want to be heard on why January 28th, 2022 will not be a date where substantial completion of fact document productions can be made, and if you want to be heard on why May 20th, other than that the qui tam action is setting different deadlines, I'm all ears. But if you're going to argue again that the case in D.C. has different deadlines and I should line up with their deadlines, I've heard you, I disagree, and we need to move on.

MS. SOLOWAY: Your Honor, subject to obviously the coordination issue that you've already addressed, these deadlines are fine with us.

THE COURT: Very good. Then I'm going to put in January 28th, 2022 as the substantial completion of fact document production and May 20th, 2022 as the fact discovery deadline, and all the other deadlines seem to have been worked out, although in the column saying it's contingent on the fact discovery deadline I believe now that I've set those deadlines, the parties can figure out the rest of those deadlines. Is that

18

correct?

MS. SOLOWAY:  Yes, your Honor, we can work together to reverse engineer it now that we have a deadline.

THE COURT:  Very good.  So those were the big issues that were raised in the letters, and I do want to compliment both of you.  Both sides laid out their positions well in the twenty-page letter I received.  I just again want to say, to the extent that there are efficiencies that you can accomplish as discovery proceeds by informally accommodating each other's requests, I encourage you to do so, but I am not going to require plaintiff to have to work within the framework set by a different court in a different course, and I am not going to require them to wait until a deposition has been held before they hold their depositions or hold them a day before or a day after. That I will not do.  Again, as I said, I'm in the business of resolving disputes but not in predicting what disputes will arise.

Were there other matters that needed to be addressed on today's conference call?

MR. CAPECI:  Your Honor, the parties are continuing to work on things like interrogatories and document requests.  So at this time, I don't think

plaintiff has anything else to bring to the Court's attention.

THE COURT:  Ms. Soloway, do you have anything else?

MS. SOLOWAY:  No, I would echo the same. We're continuing to work through our issues together, your Honor.

THE COURT:  Thank you very much.  And I will say we are sort of in midstream about getting things back into the courtroom and things back into chambers full time, so I will tell you that if you are involved in a dispute that you're unable to resolve at a deposition, that you should both contact chambers.  But if nobody picks up, you should email to the chambers email, which is bloom_chambers@nyed.uscourts.gov.  That way, if we're working remotely on the day that you're holding the deposition, we'll still get notice that you need us to come on to try to resolve a dispute.

I remind you that the federal rules limit the number of depositions without court approval, so these are things that you should be trying to work out on consent between the parties and then bring to the Court's attention.  With that, I wish you a good rest of your summer, everybody.  I will put out an order that memorializes today's rulings.  Thank you very

much.   This matter is adjourned.

MS. SOLOWAY:   Thank you, your Honor.

MR. CAPECI:   Thank you, your Honor.

* * * * * * *

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

ELIZABETH BARRON                        February 8, 2022