UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

|  |  |  |
|---|---|---|
| KENNETH GORDON, Individually and on Behalf of All Others Similarly Situated, | : | Civil Action No. 1:19-cv-01108-FB-LB |
|  | : |  |
|  | : | <u>CLASS ACTION</u> |
| Plaintiff, | : |  |
|  | : |  |
|  | : | LEAD PLAINTIFF'S MEMORANDUM OF |
| vs. | : | LAW IN SUPPORT OF UNOPPOSED |
|  | : | MOTION FOR PRELIMINARY APPROVAL |
| VANDA PHARMACEUTICALS, INC., and | : | OF SETTLEMENT |
| MIHAEL H. POLYMEROPOULOS, | : |  |
|  | : |  |
| Defendants. | : |  |
|  | : |  |

---

4868-0944-7960.v5

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ..........................................................................................................1

II.     SUMMARY OF THE ACTION.....................................................................................3

III.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL .................................4

        A.      Terms of the Settlement ....................................................................................4

        B.      The Standards for Preliminary Approval of a Proposed Settlement........................6

        C.      The Settlement Satisfies the Rule 23(e)(2) Factors .................................................8

                1.      Plaintiff and Lead Counsel Have Adequately Represented the
                        Class.......................................................................................................8

                2.      The Proposed Settlement Was Negotiated at Arm's Length ......................9

                3.      The Proposed Settlement Is Adequate in Light of the Costs, Risks,
                        and Delay of Trial and Appeal.................................................................10

                4.      The Proposed Method for Distributing Relief Is Effective........................12

                5.      Attorneys' Fees and Expenses ................................................................13

                6.      The Parties Have No Additional Agreement Other than an
                        Agreement to Address Requests for Exclusion ........................................14

                7.      Class Members Are Treated Equitably.....................................................14

        D.      The Settlement Also Meets the Remaining *Grinnell* Factors ...............................14

                1.      The Stage of the Proceedings...................................................................14

                2.      The Risks of Maintaining the Class Action Through Trial.......................16

                3.      The Ability of Defendants to Withstand a Greater Judgment....................16

                4.      The Reasonableness of the Settlement in Light of the Best Possible
                        Recovery and the Attendant Risks of Litigation.......................................16

IV.     THE PROPOSED FORM AND METHOD OF PROVIDING NOTICE TO THE
        CLASS ARE APPROPRIATE .........................................................................................18

V.      CERTIFICATION OF THE CLASS IS APPROPRIATE...............................................20

VI.     PROPOSED SCHEDULE OF SETTLEMENT EVENTS...............................................22

4868-0944-7960.v5

**Page**

VII.    CONCLUSION ................................................................................................................. 23

4868-0944-7960.v5

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
222 F.3d 52 (2d Cir. 2000)...................................................................................................21

*Billhofer v. Flamel Techs., S.A.*,
281 F.R.D. 150 (S.D.N.Y. 2012) .....................................................................................21, 22

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
310 F.R.D. 69 (S.D.N.Y. 2015) ..........................................................................................22

*Christine Asia Co. v. Yun Ma*,
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019).......................................................................10

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001)...................................................................................................16

*Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)........................................................................................ *passim*

*Dover v. British Airways, PLC (UK)*,
2018 U.S. Dist. LEXIS 174513 (E.D.N.Y. Oct. 9, 2018)........................................................9

*Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*,
301 F.R.D. 116 (S.D.N.Y. 2014) ...........................................................................................8

*Frank v. Eastman Kodak Co.*,
228 F.R.D. 174 (W.D.N.Y. 2005)..........................................................................................16

*Guevoura Fund Ltd. v. Sillerman*,
2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ........................................................................9

*Hawaii Structural Ironworkers Pension Trust Fund v. AMC Entertainment Holdings, Inc., et al.*,
No. 1:18-cv-00299-AJN, slip op. (S.D.N.Y. Feb. 14, 2022) ..................................................13

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
298 F.R.D. 171 (S.D.N.Y. 2014) .....................................................................................15, 21

*In re "Agent Orange" Prod. Liab. Litig.*,
597 F. Supp. 740 (E.D.N.Y. 1984),
*aff'd*, 818 F.2d 145 (2d Cir. 1987)........................................................................................16

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
281 F.R.D. 134 (S.D.N.Y. 2012) ..........................................................................................21

4868-0944-7960.v5

**Page**

*In re BHP Billiton Ltd. Sec. Litig.*,
    No. 1:16-cv-01445-NRB, slip op. (S.D.N.Y. Apr. 10, 2019) ....................................................13

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
    343 F. Supp. 3d 394 (S.D.N.Y. 2018)....................................................................................7

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)....................................................................9, 10

*In re Genworth Fin. Sec. Litig.*,
    2016 U.S. Dist. LEXIS 132269 (E.D. Va. Sept. 26, 2016)........................................................13

*In re Gilat Satellite Networks, Ltd.*,
    2007 WL 1191048 (E.D.N.Y. Apr. 19, 2007) ............................................................................18

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ....................................................................................15, 17

*In re Indep. Energy Holdings PLC Sec. Litig.*,
    2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003)........................................................................17

*In re Luxottica Grp. S.p.A. Sec. Litig.*,
    2005 WL 3046686 (E.D.N.Y. Nov. 15, 2005)..........................................................................18

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
    2007 WL 313474 (S.D.N.Y. Feb. 1, 2007)..............................................................................18

*In re PaineWebber Ltd. P'ships Litig.*,
    147 F.3d 132 (2d Cir. 1998)..................................................................................................6

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
    164 F.R.D. 362 (S.D.N.Y. 1996),
    *aff'd sub nom. Toland v. Prudential Sec. P'ship Litig.*,
    107 F.3d 3 (2d Cir. 1996) ....................................................................................................18

*In re Stock Exchs. Options Trading Antitrust Litig.*,
    2006 WL 3498590 (S.D.N.Y. Dec. 4, 2006) ............................................................................19

*In re Time Warner, Inc. Sec. & ERISA Litig.*,
    2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)..............................................................................17

*In re Virtus Inv. Partners, Inc. Sec. Litig.*,
    2017 WL 2062985 (S.D.N.Y. May 15, 2017) ..........................................................................21

4868-0944-7960.v5

**Page**

*In re Vitamin C Antitrust Litig.*,
    2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012)....................................................................16

*In re Vivendi Universal, S.A. Sec. Litig.*,
    242 F.R.D. 76 (S.D.N.Y. 2007) ......................................................................................20

*Landmen Partners, Inc. v. Blackstone Group L.P.*,
    2013 WL 11330936 (S.D.N.Y. Feb. 18, 2013)...............................................................13

*N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*,
    2019 U.S. Dist. LEXIS 39807 (S.D.N.Y. Mar. 8, 2019) .................................................10

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972)............................................................................................17

*Villella v. Chem. & Mining Co. of Chile Inc.*,
    333 F.R.D. 39 (S.D.N.Y. 2019) ........................................................................................8

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)................................................................................................7

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982)..............................................................................................19

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §78u-4(a)(4) .............................................................................................................2, 5, 13
    §78u-4(a)(7) ........................................................................................................................2
    §78u-4(a)(7)(A)-(F) .........................................................................................................19

4868-0944-7960.v5

**Page**

Federal Rule of Civil Procedure

    Rule 23 ...................................................................................................................2, 18

    Rule 23(a)...........................................................................................................2, 8, 20

    Rule 23(a)(2)...............................................................................................................21

    Rule 23(b) ....................................................................................................................8

    Rule 23(b)(3)..................................................................................................., 220, 22

    Rule 23(e)...............................................................................................................6, 20

    Rule 23(e)(1)............................................................................................................1, 7

    Rule 23(e)(2).........................................................................................................1, 7, 8

    Rule 23(e)(2)(A) ...........................................................................................................8

    Rule 23(e)(2)(C)(i)......................................................................................................10

    Rule 23(e)(2)(C)(ii).....................................................................................................12

    Rule 23(e)(2)(C)(iii)....................................................................................................13

    Rule 23(e)(2)(C)(iv)....................................................................................................14

    Rule 23(e)(2)(D) .........................................................................................................14

    Rule 23(e)(3)................................................................................................................7

## SECONDARY AUTHORITIES

Janeen McIntosh and Svetlana Starykh,
    *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review*,
    NERA Economic Consulting (Jan. 25, 2022).......................................................17

4868-0944-7960.v5

Lead Plaintiff Teamsters Local Union No. 727 Pension Fund ("Lead Plaintiff" or "Plaintiff"), by and through its undersigned counsel, respectfully submits this memorandum in support of its unopposed motion for preliminary approval of the proposed Settlement.

## I.    INTRODUCTION

Plaintiff, on behalf of the Class, and Defendants (together, the "Settling Parties") have reached an agreement to resolve this putative securities class action for $11,500,000 in cash, inclusive of attorneys' fees and expenses ("Settlement Amount").  The terms of the Settlement are set forth in the Stipulation and Agreement of Settlement, dated May 5, 2022 ("Stipulation") and filed simultaneously herewith.[1]

The Settling Parties reached this Settlement after more than three years of litigation and extensive, arm's-length negotiations.  The Settlement is a very good result particularly given the costs and risks of further litigation.  It represents a substantial, immediate recovery for the Class – purchasers of Vanda common stock during the Class Period, November 4, 2015 through February 11, 2019, inclusive, and who were allegedly damaged thereby.  Moreover, the Settlement was reached by counsel with a thorough understanding of the strengths and weaknesses of the case after, among other things, an extensive investigation, the drafting of a detailed amended complaint, litigating Defendants' motion to dismiss, the review and analysis of over 494,000 pages of documents, the completion of four depositions, and briefing Plaintiff's motion for class certification. The Settling Parties ultimately negotiated the Settlement with the assistance of an experienced and neutral third-party mediator, Jed D. Melnick, Esq., following extensive arm's-length negotiations.

The Settlement satisfies Rule 23(e)(1) for the issuance of notice, including each of the Rule 23(e)(2) factors and the Second Circuit's factors set forth in *Detroit v. Grinnell Corp.*, 495 F.2d

---

[1]    Unless otherwise defined herein, all capitalized terms have the meanings ascribed to them in the Stipulation.

- 1 -

4868-0944-7960.v5

448 (2d Cir. 1974).[2]  Accordingly, Plaintiff respectfully requests that the Court grant preliminary approval of the Settlement so that notice may be provided to the Class.  Plaintiff requests that this Court enter the Settling Parties' agreed-upon form of Order Preliminarily Approving Settlement and Providing for Notice, submitted herewith as Exhibit A to the Stipulation, which will:

1.      Preliminarily approve the Settlement on the terms set forth in the Stipulation;

2.      Find that the Class satisfies each of the elements of Rules 23(a) and (b)(3) and therefore should be certified for settlement purposes;

3.      Approve the form and content of the Notice of Pendency and Proposed Settlement of Class Action ("Notice") and Summary Notice attached as Exhibits A-1 and A-3 to the Stipulation;

4.      Find that the procedures for distribution of the Notice and publication of the Summary Notice in the manner and form set forth in the Preliminary Approval Order constitute the best notice practicable under the circumstances, and comply with the notice requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and Section 21D(a)(7) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §78u-4(a)(7), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"); and

5.      Set a schedule and procedures for: disseminating the Notice and publication of the Summary Notice, requesting exclusion from the Class, objecting to the Settlement, the Plan of Allocation, or Lead Counsel's application for an award of attorneys' fees and expenses, including Plaintiff's application for an award pursuant to 15 U.S.C.

---

[2]      Citations, internal quotations, and footnotes omitted unless otherwise noted.

- 2 -

§78u-4(a)(4), submitting papers in support of final approval of the Settlement, and the Settlement Hearing.

## II.    SUMMARY OF THE ACTION

The initial complaint was filed on February 25, 2019. On May 24, 2019, the Court appointed Teamsters Local Union No. 727 Pension Fund to serve as lead plaintiff. On July 23, 2019, Plaintiff filed an Amended Complaint ("Complaint"), which is the operative complaint. Like the initial complaint, the Complaint alleged claims against Vanda Pharmaceuticals, Inc. ("Vanda" or the "Company") and certain of its executives, for alleged violations of the Exchange Act.

Vanda is a biopharmaceutical company that focuses on the development and commercialization of a variety of drug products. The Complaint alleges that, during the Class Period, Defendants made false and misleading statements and/or failed to disclose that Vanda was engaged in alleged off-label promotion of its two commercially available drugs, Fanapt and Hetlioz. The Complaint also alleges that Defendants made false and misleading statements and/or failed to disclose information regarding the status of clinical trials for tradipitant, a drug in Vanda's clinical development pipeline.

The Complaint alleges that as a result of this and other information being withheld from the market, the price of the Company's shares was artificially inflated during the Class Period. On February 5 and 6, 2019, Vanda's stock fell 19.95% to close at $20.06 per share on February 6, 2019, after the alleged disclosure by Vanda that it had sued the FDA for issuing a partial clinical hold on its human study for tradipitant. On February 11, 2019, the stock fell 5% to close at $18 per share, following the alleged disclosure by a short-seller report that a *qui tam* whistleblower lawsuit had been filed and alleged that Vanda was engaged in an off-label marketing scheme for Fanapt and Hetlioz.

- 3 -

4868-0944-7960.v5

On March 23, 2020, Defendants moved to dismiss the Complaint, which the parties fully briefed. On March 10, 2021, the Court granted Defendants' motion in part and denied it in part, dismissing three former Vanda executives who were named as defendants in the Complaint, and sustaining claims against Vanda and its Chief Executive Officer. Thereafter, the parties diligently pursued discovery, including the production of approximately 494,000 pages of documents and the completion of four depositions.

On October 29, 2021, Plaintiff filed its motion for class certification, which motion is fully briefed and pending oral argument.

During the course of the Litigation, the parties engaged the services of Jed D. Melnick, Esq., a nationally recognized mediator. A mediation session with Mr. Melnick was held on March 14, 2022. That mediation session did not result in an immediate settlement, but the parties continued conversations with the mediator regarding a potential settlement of the Action. On March 16, 2022, Mr. Melnick issued a mediator's proposal for $11.5 million, which the parties accepted.

On March 17, 2022, the parties informed the Court that they had reached an agreement in principle to settle the Action, subject to final documentation of the Settlement's terms.

## III.   THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A.   Terms of the Settlement

The Settlement resolves all Released Claims of the Class against Defendants. The Stipulation provides that Defendants shall cause their insurers to pay, the entire $11.5 million Settlement Amount within 14 calendar days of the entry of the Preliminary Approval Order and the receipt of complete payment instructions and tax information. Stipulation, ¶2.2. The Settlement Amount, plus accrued interest, comprises the Settlement Fund. *Id.*, ¶1.24. The cost of settlement administration, including the costs of notice to the Class, as well as Taxes and Tax Expenses, will be funded by the Settlement Fund. Stipulation, ¶¶2.9, 2.11. Plaintiff proposes a nationally recognized class action settlement

- 4 -

administrator, Epiq Class Action & Claims Solutions, Inc. ("Claims Administrator"), to be retained here subject to the Court's approval. The proposed notice plan and plan for claims processing is discussed below in Section IV and in the accompanying Declaration of Nicholas Schmidt on Behalf of the Proposed Claims Administrator, Epiq Class Action & Claims Solutions, Inc. ("Schmidt Decl.").

If the Court grants preliminary approval, the Claims Administrator will mail the Notice and Proof of Claim and Release ("Proof of Claim") (Exhibits A-1 and A-2 to the Stipulation, respectively) to all Class Members who can be identified with reasonable effort. Schmidt Decl., ¶4. Additionally, the Claims Administrator will cause the Summary Notice (Exhibit A-3 to the Stipulation) to be published once in *The Wall Street Journal* and once over a national newswire service. *See* Stipulation, Ex. A, ¶11; Schmidt Decl., ¶4.

The Notice explains the terms of the Settlement, including that the Net Settlement Fund will be distributed to eligible Class Members who submit valid and timely Proofs of Claim pursuant to the proposed Plan of Allocation included in the Notice and subject to this Court's approval; there will be no reversion to Defendants. Stipulation, ¶¶3.1, 7.2. The Notice also advises Class Members of, among other information: (i) Lead Counsel's application for attorneys' fees and expenses, and Plaintiff's application for an award pursuant to 15 U.S.C. §78u-4(a)(4) in connection with its representation of the Class; (ii) the procedures for requesting exclusion from the Class or objecting to the Settlement, the Plan of Allocation, or the request for attorneys' fees and expenses, and/or Plaintiff's application for an award pursuant to 15 U.S.C. §78u-4(a)(4); and (iii) the date and time for the Settlement Hearing.

The recovery to individual Class Members will be determined pursuant to the Plan of Allocation, included in the Notice, and will depend on several variables, including: (i) the aggregate

- 5 -

4868-0944-7960.v5

value of the Recognized Claims represented by all valid and acceptable Proof of Claim forms; (ii) when Class Members' shares were purchased or acquired and the price at the time of purchase; (iii) any principal amounts received by the Class Member; and (iv) whether the shares were sold, and if so, when they were sold and for how much. *See* Stipulation, Ex. A-1 at 26-31. The Plan of Allocation treats all Class Members equitably based on the timing of their Vanda stock purchases, acquisitions, and sales. *Id.*

The Settling Parties have entered into a Supplemental Agreement which provides that Defendants shall have the option to terminate the Settlement in the event that valid requests for exclusion from the Class exceed certain criteria. Stipulation, ¶7.3.

In exchange for the benefits provided under the Stipulation, Class Members will release any and all claims against Defendants concerning, based on, arising out of, or in connection with both: (i) the purchase or acquisition of Vanda common stock during the Class Period; and (ii) any of the allegations, acts, transactions, facts, events, matters, occurrences, representations, or omissions that were or could have been alleged or asserted in the Litigation. Stipulation, ¶1.20.

The proposed Settlement is a very good result for the Class and provides a significant cash recovery now without the risks and delays of further litigation.

## B.  The Standards for Preliminary Approval of a Proposed Settlement

Federal Rule of Civil Procedure 23(e) requires judicial approval for a settlement of claims brought as a class action. Fed. R. Civ. P. 23(e) ("The claims . . . of a certified class – or a class proposed to be certified for purposes of settlement – may be settled . . . only with the court's approval."). It is well established in this Circuit that the settlement of class action litigation is both favored and encouraged. *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998) (recognizing a "strong judicial policy in favor of settlements, particularly in the class action context");

- 6 -

*see also In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 408 (S.D.N.Y. 2018)

(same) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)).

Pursuant to Rule 23(e)(1), the issue at preliminary approval is whether the Court "will likely

be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of

judgment on the proposal."  Rule 23(e)(2) provides:

> (2)     Approval of the Proposal.  If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
>> (A)    the class representatives and class counsel have adequately represented the class;
>>
>> (B)    the proposal was negotiated at arm's length;
>>
>> (C)    the relief provided for the class is adequate, taking into account:
>>
>>> (i)    the costs, risks, and delay of trial and appeal;
>>>
>>> (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>>
>>> (iii)  the terms of any proposed award of attorney's fees, including timing of payment; and
>>>
>>> (iv)   any agreement required to be identified under Rule 23(e)(3); and
>>
>> (D)    the proposal treats class members equitably relative to each other.

These factors largely overlap with the Second Circuit's *Grinnell* factors, which include the

following:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

4868-0944-7960.v5

*Grinnell*, 495 F.2d at 463.  As discussed below, the proposed Settlement for $11.5 million in cash satisfies each of the factors identified under Rule 23(e)(2), as well as each of the Second Circuit's *Grinnell* factors.  In addition, each of the Rule 23(a) and (b) factors are met for certification of a class for settlement purposes.  Accordingly, Notice of the proposed Settlement should be sent to the Class.

### C.    The Settlement Satisfies the Rule 23(e)(2) Factors

#### 1.    Plaintiff and Lead Counsel Have Adequately Represented the Class

Plaintiff and Lead Counsel have adequately represented the Class as required by Rule 23(e)(2)(A) by diligently prosecuting this Litigation on behalf of Plaintiff and the Class, including, among other things, investigating the relevant factual events, drafting an amended complaint, successfully opposing Defendants' motion to dismiss through substantial briefing and engaging in oral argument thereon, engaging in document and written discovery, obtaining, reviewing, and analyzing over 494,000 pages of documents produced by Defendants and third parties, moving for class certification supported by expert declarations on the issues of market efficiency and price impact, moving to exclude Defendants' expert's opinions on market efficiency and price impact, and engaging in a full-day mediation session with Mr. Melnick, preceded by detailed mediation submissions exchanged between the parties.  Moreover, Lead Counsel has achieved a significant all-cash Settlement of $11.5 million which will provide immediate relief to the Class.

Lead Counsel has substantial experience in prosecuting complex securities class actions in this Circuit and throughout the country.  *See, e.g.*, *Villella v. Chem. & Mining Co. of Chile Inc.*, 333 F.R.D. 39, 59 (S.D.N.Y. 2019) (finding that Robbins Geller "has extensive experience in securities class actions and complex litigation, as well, indicating its ability to manage this litigation and ably apply the applicable law"); *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 135 (S.D.N.Y. 2014) ("The Court finds that Robbins Geller, the firm acting as counsel to

- 8 -

Plaintiffs, is experienced in securities class action litigation and qualified to conduct this lawsuit" and "Robbins Geller has previously been deemed qualified in similar litigation."); *see also* www.rgrdlaw.com.  The tenacity of Lead Counsel contributed to the $11.5 million Settlement, which will provide significant and immediate relief to the Class.

Bringing this experience and knowledge to bear, Lead Counsel believes that the Settlement is in the best interests of the Class.  Courts recognize that counsel's judgment is entitled to significant weight. *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *13 (S.D.N.Y. Nov. 8, 2010) ("Moreover, great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation."); *see also Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *6 (S.D.N.Y. Dec. 18, 2019) (recognizing "great weight is accorded to counsel's recommendation" if the proposed settlement is reached by experienced counsel after arm's-length negotiations).

### 2.    The Proposed Settlement Was Negotiated at Arm's Length

The Settlement is the result of extensive, arm's-length negotiations conducted through a neutral, third-party mediator with Defendants represented by highly sophisticated counsel.  At no point did Defendants concede that a single aspect of Plaintiff's claims was meritorious.  The negotiations that ultimately led to the Settlement did not happen overnight.  Rather, they began in advance and continued during a vigorous and adversarial mediation session on March 14, 2022, supported by comprehensive mediation submissions.  The mediation was not immediately successful, and litigation continued.  After additional discussions, Mr. Melnick issued a mediator's proposal that was accepted by the Settling Parties.

The mediation process provides compelling evidence that the Settlement is not the product of collusion between the parties.  *See Dover v. British Airways, PLC (UK)*, 2018 U.S. Dist. LEXIS

4868-0944-7960.v5

174513, at *10-*11 (E.D.N.Y. Oct. 9, 2018) (the parties' participation in mediation is evidence of arm's-length negotiations); *N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, 2019 U.S. Dist. LEXIS 39807, at *6, *13-*14 (S.D.N.Y. Mar. 8, 2019) (same). Thus, Plaintiff has established that the Settlement was negotiated at arm's length.

### 3. The Proposed Settlement Is Adequate in Light of the Costs, Risks, and Delay of Trial and Appeal

In assessing the Settlement, the Court should balance the benefits afforded to the Class, including the immediacy and certainty of a recovery, against the significant costs, risks, and delay of proceeding with this Litigation. *See* Rule 23(e)(2)(C)(i). This factor overlaps with the first (the complexity, expense, and likely duration of the litigation) and fourth (the risks of establishing liability and damages) *Grinnell* factors.

Securities class actions are notoriously complex and present numerous hurdles to proving liability and damages that are difficult for plaintiffs to meet. *See, e.g.*, *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *10 (S.D.N.Y. Oct. 16, 2019) ("In evaluating the settlement of a securities class action, federal courts, including this Court, have long recognized that such litigation is notably difficult and notoriously uncertain."); *Flag Telecom*, 2010 WL 4537550, at *15 (recognizing that complex securities class actions are "notably difficult and notoriously uncertain").

This case is a prime example of the complexity and risks of securities class actions. Plaintiff advanced numerous complex legal and factual issues under the federal securities laws. For instance, Plaintiff alleges that during the Class Period Defendants made false and misleading statements and/or failed to disclose that Vanda was engaged in the off-label promotion of Fanapt and Hetlioz. ECF 29, ¶¶3-5. The Complaint also alleges that Defendants made false and misleading statements and/or failed to disclose information regarding the status of clinical trials for tradipitant. *Id.*, ¶¶6-8.

- 10 -

4868-0944-7960.v5

While Plaintiff believes its claims would be borne out by the evidence presented at trial, it recognizes that there are significant hurdles to proving liability or even proceeding to trial. Among other things, Defendants deny all allegations of liability and have strenuously contended that Plaintiff would be unable to prove that Defendants made any false or misleading material statements with scienter (whether under a theory of corporate scienter or otherwise). Indeed, Defendants maintain, for example, that the Company's sales representatives were properly trained with respect to Fanapt and Hetlioz. Defendants also maintain that they lacked scienter because the alleged off-label marketing practices, even assuming arguendo that they occurred and could be characterized as such, could easily be attributed to isolated actions by certain sales representatives, not fraud. In addition, Defendants strenuously argued against Plaintiff's class certification motion on the issue of price impact, and believe that they have established that none of the decline on February 11, 2019 was due to the alleged off-label marketing schemes for Fanapt and Hetlioz.

With respect to the tradipitant allegations, among other things, Defendants contend both that Defendants did not make any false or misleading statements, and that Defendants had no duty under the federal securities laws to disclose the additional information Plaintiff contends was not disclosed. Defendants also vigorously contested that there was any scienter for the alleged tradipitant misstatements and omissions. Defendants also argued that the alleged stock price decline on February 4, 2019 was due to non-fraud related information, namely, the news that Vanda was suing the FDA.

Plaintiff also faced risks in establishing loss causation and damages. Defendants challenged loss causation in their motion to dismiss, challenged price impact in opposing class certification and undoubtedly would have argued on summary judgment and at trial that Plaintiff's damages methodology is unreliable and does not accurately account for the effect that confounding factors or market factors had on the stock price. Defendants would have further argued that damages, if any, are

- 11 -

zero or, at best, significantly less than Plaintiff had estimated.  As with contested liability issues, issues relating to loss causation and damages would have likely come down to an unpredictable and hotly disputed "battle of the experts."

Further, Plaintiff's case was particularly susceptible to a danger inherent in reliance on expert witness testimony, namely that the experts will be subject to a *Daubert* challenge.  If, for some reason, the Court determined that even one of Plaintiff's experts should be excluded from testifying at trial, Plaintiff's case would become much more difficult to prove.

Accordingly, in the absence of a settlement, there was a very real risk that the Class would have recovered an amount significantly less than the total Settlement Amount – or nothing at all. Thus, the $11.5 million recovery now, particularly when viewed in the context of the risks, costs, delay, and the uncertainties of further proceedings, weighs in favor of preliminary approval of the Settlement.

### 4.      The Proposed Method for Distributing Relief Is Effective

As demonstrated below, the method and effectiveness of the proposed notice and claims administration process (Rule 23(e)(2)(C)(ii)) are effective.  The notice plan includes direct mail notice to all those who can be identified with reasonable effort supplemented by the publication of the Summary Notice in *The Wall Street Journal* and over a national newswire service.  Schmidt Decl., ¶4.  In addition, a Settlement-specific website will be created where Settlement-related and other key documents will be posted, including the Stipulation, Notice, Proof of Claim, and Preliminary Approval Order.  *Id.*, ¶4.

Plaintiff proposes a thorough and comprehensive claims administration process, as explained in the Schmidt Decl., ¶¶3-11.  It starts with a standard claim form which requests the information necessary to calculate a claimant's recognized loss amount pursuant to the Plan of Allocation.  The

Claims Administrator will process the claims, calculate claimants' recognized losses pursuant to the Plan of Allocation and, ultimately, distribute the Net Settlement Fund to Authorized Claimants. The Plan of Allocation was prepared with information provided by Plaintiff's damages consultant and is based primarily on an analysis estimating the amount of alleged artificial inflation in the price of Vanda common stock during the Class Period.

### 5.    Attorneys' Fees and Expenses

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." The proposed Preliminary Approval Order provides that Lead Counsel will apply to this Court for an award of attorneys' fees and expenses 35 calendar days prior to the Settlement Hearing. *See* Preliminary Approval Order, ¶23. As stated in the proposed Notice, Lead Counsel intends to seek an award of attorneys' fees in an amount up to one-third of the Settlement Amount and litigation expenses in an amount not to exceed $250,000, plus interest on these amounts at the same rate as earned by the Settlement Fund. In addition, Plaintiff may seek an award of no more than $10,000 pursuant to 15 U.S.C. §78u-4(a)(4) in connection with its representation of the Class. This fee request is in line with other settlements recently approved in this District. *See, e.g.*, *Hawaii Structural Ironworkers Pension Trust Fund v. AMC Entertainment Holdings, Inc., et al.*, No. 1:18-cv-00299-AJN, slip op. (S.D.N.Y. Feb. 14, 2022) (awarding one-third of $18 million recovery, plus expenses); *In re BHP Billiton Ltd. Sec. Litig.*, No. 1:16-cv-01445-NRB, slip op. (S.D.N.Y. Apr. 10, 2019) (awarding 30% of $50 million recovery, plus expenses); *Landmen Partners, Inc. v. Blackstone Group L.P.*, 2013 WL 11330936, at *3 (S.D.N.Y. Feb. 18, 2013) (awarding one-third of $85 million recovery, plus expenses). The Stipulation provides that any attorneys' fees and expenses awarded by the Court shall be paid to Lead Counsel when the Court executes the Judgment and an order awarding such fees and expenses. Stipulation, ¶6.2; *see In re*

*Genworth Fin. Sec. Litig.*, 2016 U.S. Dist. LEXIS 132269, at \*28 (E.D. Va. Sept. 26, 2016) (ordering that "attorneys' fees and Litigation Expenses awarded above may be paid to Lead Counsel immediately upon entry of this Order").

### 6. The Parties Have No Additional Agreement Other than an Agreement to Address Requests for Exclusion

Rule 23(e)(2)(C)(iv) requires the disclosure of any other agreement. The parties have entered into a standard supplemental agreement which provides that in the event Class Members with Class Period purchases of Vanda common stock that exceed a certain percentage of all Vanda shares subject to the Settlement validly request exclusion from the Class, Defendants shall have the option to terminate the Settlement. *See* Stipulation, ¶7.3.

### 7. Class Members Are Treated Equitably

The final factor, Rule 23(e)(2)(D), looks at whether Class Members are treated equitably. As reflected in the Plan of Allocation set forth in the Notice (Stipulation, Ex. A-1), the Settlement treats Class Members equitably relative to each other, based on the timing of their Vanda common stock purchases, acquisitions, and sales, and by providing that each Authorized Claimant shall receive his, her or its *pro rata* share of the Net Settlement Fund based on their recognized losses under the Plan of Allocation.

### D. The Settlement Also Meets the Remaining *Grinnell* Factors[3]

### 1. The Stage of the Proceedings

Plaintiff's and Lead Counsel's knowledge of the merits as well as the strengths and weaknesses of their claims is certainly adequate to support the Settlement. This knowledge is based, in part, on the extensive investigation undertaken by Lead Counsel in preparing the initial complaint

---

[3] With respect to the second *Grinnell* factor (the reaction of the class), the Notice regarding the Settlement has not yet been mailed or otherwise distributed. In the event any objections are received after the Notice is disseminated, they will be addressed by Lead Counsel in connection with Plaintiff's motion for final approval of the Settlement and in its reply in further support thereof.

- 14 -

4868-0944-7960.v5

and the amended complaint, which included speaking with numerous former employees of Vanda, including the relator in the *qui tam* whistleblower lawsuit, and reviewing the Company's SEC filings, legal filings in Vanda's lawsuit against the FDA, and other public statements. The resultant accumulation of information permitted Plaintiff and Lead Counsel to allege specific facts regarding Defendants' alleged off-label promotion of Fanapt and Hetlioz as well as the FDA's requirements for tradipitant clinical testing. Once the motion to dismiss was denied as to Defendants, the parties engaged in document and written discovery, including the parties' production of over 494,000 pages of documents. In addition, the parties conducted four depositions. As a result of the extensive investigation and the targeted discovery conducted on issues at the heart of the Complaint's allegations, Plaintiff and Lead Counsel were in a position to intelligently weigh the strengths and weaknesses of their case and to engage in effective settlement discussions with Defendants and Mr. Melnick. *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004) ("Formal discovery is not a prerequisite; the question is whether the parties had adequate information about their claims."); *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 177 (S.D.N.Y. 2014) (finding that even where "no merits discovery occurred in this case to date," lead counsel was "knowledgeable with respect to possible outcomes and risks in this matter and, thus, able to recommend the Settlement").

Indeed, prior to mediation, the parties simultaneously exchanged detailed mediation submissions and reply submissions in which they vigorously laid out the strengths of their positions and attacked each other's potential weaknesses. During mediation, the parties thoroughly discussed and vetted the facts and law, as Mr. Melnick engaged in a critical analysis of the parties' arguments.

This factor strongly supports preliminary approval of the Settlement.

- 15 -

4868-0944-7960.v5

### 2.      The Risks of Maintaining the Class Action Through Trial

At the time of Settlement, the parties had fully briefed Plaintiff's motion for class certification.  The fact that the Class was not yet certified presented yet another risk to Plaintiff and the proposed Class.  In fact, even assuming class certification was achieved, the Court could have revisited certification at any time, and if at all possible, Defendants were sure to move to decertify the Class before trial or on appeal – presenting a continuous risk that the case, or particular claims, might not be maintained on a class-wide basis through trial.  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) ("the risk that the case might not be certified is not illusory").  Thus, this factor weighs in favor of preliminary approval of the Settlement.

### 3.      The Ability of Defendants to Withstand a Greater Judgment

A court may also consider a defendant's ability to withstand a judgment greater than that secured by settlement, although it is not generally one of the determining factors.  *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001).  While Defendants here are able to withstand a judgment in excess of the Settlement Amount, courts generally do not find this to be an impediment to settlement when the other factors favor the settlement.  *See In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *6 (E.D.N.Y. Oct. 23, 2012) (acknowledging that "in any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and . . . this fact alone does not undermine the reasonableness of the instant settlement").

### 4.      The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation

The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987).  The Court need only determine whether the Settlement falls within

4868-0944-7960.v5

a "range of reasonableness" – a range which "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see also Global Crossing*, 225 F.R.D. at 461 (noting that "the certainty of [a] settlement amount has to be judged in [the] context of the legal and practical obstacles to obtaining a large recovery"); *In re Indep. Energy Holdings PLC Sec. Litig.*, 2003 WL 22244676, at *3-*4 (S.D.N.Y. Sept. 29, 2003) (noting few cases tried before a jury result in full amount of damages claimed).

In addition, in considering the reasonableness of the Settlement, the Court should consider that the Settlement provides for payment to the Class now, rather than a speculative payment years down the road. *See In re Time Warner, Inc. Sec. & ERISA Litig.*, 2006 WL 903236, at *13 (S.D.N.Y. Apr. 6, 2006) (where settlement fund is in escrow earning interest, "the benefit of the Settlement will . . . be realized far earlier than a hypothetical post-trial recovery"). The Settlement represents a very good result of at least approximately 10.2% of reasonably recoverable damages consistent with the proposed Plan of Allocation. Further, Defendants argued that damages were zero and that plaintiff-style damages were significantly less than the above, which if credited at trial would mean that the Settlement would represent an even greater percentage of estimated recoverable damages. Under any of these scenarios, the Settlement falls well within the range of reasonableness and supports preliminary approval. Indeed, the percentage is many multiples of the 1.8% median percentage recovery to investor losses in securities class actions in 2021. *See* https://www.nera.com/content/dam/nera/publications/2022/PUB_2021_Full-Year_Trends_012022.pdf (Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review*, at 24, fig. 22, NERA Economic Consulting (Jan. 25, 2022)).

- 17 -

## IV.    THE PROPOSED FORM AND METHOD OF PROVIDING NOTICE TO THE CLASS ARE APPROPRIATE

There are no "rigid rules" when measuring the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules; rather, the court should look to its reasonableness. *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 2007 WL 313474, at *8 (S.D.N.Y. Feb. 1, 2007). "Notice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members." *Id*.

The proposed Preliminary Approval Order (Stipulation, Ex. A) provides that the Claims Administrator will mail the Notice and Proof of Claim to all Class Members who can be identified with reasonable effort. Stipulation, Ex. A, ¶10.  This includes mailing to all those Class Members identified by Vanda's transfer agent and to brokers and other nominees who purchased or acquired Vanda shares on behalf of others.  In addition, the Claims Administrator will publish the Summary Notice in the national edition of *The Wall Street Journal* and once over a national newswire service. *Id.*, ¶11.

Notice programs such as the one proposed by Lead Counsel have been approved as adequate under the Due Process Clause, Rule 23, and the PSLRA in a multitude of cases. *See, e.g.*, *In re Gilat Satellite Networks, Ltd.*, 2007 WL 1191048, at *11 (E.D.N.Y. Apr. 19, 2007) (approving proposed notice program where notice mailed to shareholders of record listed on transfer records and to "more than 2500 of the largest banks, brokerages, and other nominees"); *In re Luxottica Grp. S.p.A. Sec. Litig.*, 2005 WL 3046686, at *2 (E.D.N.Y. Nov. 15, 2005) (approving notice program, consisting of mailing and summary notice publication in *The Wall Street Journal* and *The New York Times*); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 164 F.R.D. 362, 368 (S.D.N.Y. 1996) (approving proposed notice and noting mailing of notice to each identifiable class member's last known address is "a

- 18 -

procedure that has been given wide-spread approval in other class actions"), *aff'd sub nom. Toland v. Prudential Sec. P'ship Litig.*, 107 F.3d 3 (2d Cir. 1996).

In addition, the content of a notice is generally found to be reasonable if "the average class member understands the terms of the proposed settlement and the options provided to class members thereunder." *In re Stock Exchs. Options Trading Antitrust Litig.*, 2006 WL 3498590, at *6 (S.D.N.Y. Dec. 4, 2006); *see also Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982) (the notice must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings") (alteration in original).

The PSLRA requires that the settlement notice include the following: (1) the amount of the settlement proposed for distribution, determined in the aggregate and on an average per share basis; (2) if the parties do not agree on the average amount of damages per share recoverable in the event plaintiff prevailed, a statement from each party concerning the issue(s) on which the parties disagree; (3) a statement indicating which parties or counsel intend to apply for an award of fees and costs (including the amount of such fees and costs determined on an average per share basis), and a brief explanation supporting the fees and costs sought; (4) the name, telephone number, and address of one or more representatives of counsel for the class who will be reasonably available to answer questions concerning any matter contained in the notice of settlement; (5) a brief statement explaining the reasons why the parties are proposing the settlement; and (6) such other information as may be required by the court. *See* 15 U.S.C. §78u-4(a)(7)(A)-(F).

The proposed Notice contains all of the information required by the PSLRA. It clearly advises recipients that they have the right to request to be excluded from the Class or to object to any aspect of the Settlement, the Plan of Allocation, or Lead Counsel's fee and expense application. The

- 19 -

4868-0944-7960.v5

Notice also provides recipients with the contact information for the Claims Administrator and Lead Counsel. The information is provided in a format that is accessible to the reader and is in the same or similar format that has been approved by this and many other courts in this jurisdiction, which also supports its approval.

## V.     CERTIFICATION OF THE CLASS IS APPROPRIATE

Under the terms of the Stipulation, the Settling Parties have agreed, for the purposes of the Settlement only, to the certification of the Class. The Class is defined as:

> All persons and entities who purchased or otherwise acquired Vanda common stock between November 4, 2015 and February 11, 2019, inclusive, and who were allegedly damaged thereby. Excluded from the Class are Defendants, the officers and directors of Vanda at all relevant times, members of their immediate families, any entity in which any Defendant has or had a controlling interest, and the legal representatives, heirs, successors-in-interest or assigns of any such excluded party. Also excluded from the Class are any Persons who timely and validly request exclusion from the Class as ordered by the Court.[4]

Stipulation, ¶1.3.

The proposed Class satisfies the requirements of Federal Rule of Civil Procedure 23(a), 23(b)(3), and 23(e), and should be certified for settlement purposes only. In addition, Plaintiff should be appointed as the Class representative, and Lead Counsel should be appointed as Class counsel.

First, given that Vanda had more than 52 million shares of common stock outstanding during the Class Period, as well as more than 420 institutional investors that owned Vanda common stock, the Class easily consists of more than 40 members and numerosity is satisfied. *See* ECF 82-1 at 9; *see also In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 84 (S.D.N.Y. 2007) (numerosity "may be

---

[4]     The Class definition for purposes of the Settlement is substantially similar to the Class definition in Plaintiff's Amended Complaint for Violations of the Federal Securities Laws (*see* ECF 29, ¶¶1, 436) and in Plaintiff's motion for class certification (*see* ECF 82-1 at 2).

4868-0944-7960.v5

satisfied by a showing that a large number of shares were outstanding and traded during the relevant period").

Second, because the Class's claims arise from the same alleged misstatements and omissions and rely on the same theories of liability, questions of law and fact are common to the Class. *See* ECF 82-1 at 10; *see also Billhofer v. Flamel Techs., S.A.*, 281 F.R.D. 150, 156 (S.D.N.Y. 2012) ("[c]ommon questions of law and fact are present where, as here, the alleged fraud involves material misrepresentations and omissions in documents circulated to the investing public"); *Advanced Battery Techs.*, 298 F.R.D. at 181 ("Securities-fraud cases generally meet Rule 23(a)(2)'s commonality requirement."). The facts here raise common questions as to whether: (1) Defendants violated the Exchange Act; (2) Defendants' statements misrepresented or omitted material facts; (3) Defendants acted knowingly or recklessly; and (4) investors suffered damages as a result of the alleged misconduct. These common questions readily establish commonality. *See In re Virtus Inv. Partners, Inc. Sec. Litig.*, 2017 WL 2062985, at *2 (S.D.N.Y. May 15, 2017) (finding commonality satisfied in a securities case that raised similar common questions as raised here).

Third, Plaintiff's claims are typical of the Class's because they share the same factual and legal underpinnings. *See In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 281 F.R.D. 134, 139 (S.D.N.Y. 2012) ("[i]n a securities class action . . . the claims and nature of evidence are generally considered sufficient to satisfy the typicality requirement").

Fourth, Plaintiff is an adequate class representative because it has no interests "antagonistic" to those of the proposed Class, and there is no doubt that its counsel is "qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). Plaintiff, like all Class Members, purchased Vanda common stock at market prices during the Class Period and alleges that it was injured by the same material misrepresentations and

- 21 -

omissions and subsequent stock price decline that injured all Class Members. *See* ECF 82-1 at 11-13. Plaintiff has "actively supervised and monitored the progress of this litigation, and will continue to actively participate in its prosecution." *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 100 (S.D.N.Y. 2015).

Additionally, the requirements of Rule 23(b)(3) are satisfied as common questions of law and fact predominate over individual ones and class treatment is superior to individual adjudications. ECF 82-1 at 13-22. Indeed, because the elements of Plaintiff's claims, such as falsity, scienter, reliance, economic loss, and loss causation, all present common questions of law and fact that predominate over individualized ones, courts within this District recognize that the predominance requirement is "readily met in certain cases alleging . . . securities fraud." *Billhofer*, 281 F.R.D. at 158 (alteration in original). Superiority is also readily met because adjudicating individual claims would be a significant waste of judicial resources. Plaintiff is unaware of any other related litigation commenced by purchasers of Vanda common stock during the Class Period.

Accordingly, class certification is appropriate here for Settlement purposes.

## VI.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS

If the Court grants preliminary approval of the proposed Settlement, the Settling Parties respectfully submit the following procedural schedule for the Court's review:

| EVENT | TIME FOR COMPLIANCE |
|---|---|
| Deadline to commence mailing the Notice and Proof of Claim ("Notice Date") | 10 business days after entry of the Preliminary Approval Order |
| Deadline for publishing the Summary Notice in *The Wall Street Journal* and over a national newswire service | 14 calendar days after the Notice Date |
| Posting and filing of Plaintiff's motion for final approval of the Settlement and Plan of Allocation, and Lead Counsel's application for an award of attorneys' fees and expenses, and an award to | 35 calendar days before the Settlement Hearing |

- 22 -

| EVENT | TIME FOR COMPLIANCE |
|---|---|
| Plaintiff | |
| Deadline for opting out or submitting an objection | 21 calendar days before the Settlement Hearing |
| Deadline for filing Proofs of Claim | 90 calendar days after the Notice Date |
| Posting and filing of Plaintiff's reply in further support of final approval of the Settlement and Plan of Allocation, and in support of Lead Counsel's application for an award of attorneys' fees and expenses, and an award to Plaintiff | 7 calendar days before the Settlement Hearing |
| Settlement Hearing | At least 100 calendar days after entry of the Preliminary Approval Order, at the Court's convenience |

## VII.   CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the Court enter the Preliminary Approval Order which will provide for: (i) preliminary approval of the Settlement; (ii) approval of the proposed form and manner of providing notice to the Class; (iii) certification of the Class for settlement purposes; and (iv) a date and time for the Settlement Hearing to consider final approval of the Settlement and related matters.

DATED:  May 19, 2022

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
MICHAEL G. CAPECI

*s/ Michael G. Capeci*
MICHAEL G. CAPECI

- 23 -

4868-0944-7960.v5

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com
mcapeci@rgrdlaw.com

*Lead Counsel for Lead Plaintiff*

4868-0944-7960.v5