UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
KENNETH GORDON, *on behalf of*
*themselves and all others similarly situated*,

                Plaintiffs,                          **ORDER**
                                                     **19 CV 1108 (FB)(LB)**

    -against-

VANDA PHARMACEUTICALS INC.
and MIHAEL POLYMEROPOULOS,

                Defendants.
-------------------------------------------------------X
**BLOOM, United States Magistrate Judge:**

      This class action against defendants Vanda Pharmaceuticals, Inc. and Mihael H. Polymeropoulos alleges violations of the Securities Exchange Act of 1934. Am. Compl. ¶¶ 1, 14, 448-54, ECF No. 29. The parties have settled this matter and lead plaintiff Teamsters Local Union No. 727 Pension Fund now moves for preliminary approval of the parties' settlement agreement and for certification of a settlement class.[1] ECF Nos. 93-96. For the reasons set forth below, the motion for preliminary settlement approval and class certification is granted.[2]

## BACKGROUND

      Defendant Vanda Pharmaceuticals, Inc. ("Vanda"), a publicly traded biopharmaceutical company, markets and sells the drugs Fanapt and Hetlioz.[3] Am. Compl. ¶¶ 2, 15. These drugs are

---

[1] In support, plaintiff provide a memorandum of law (Pl. Mem., ECF No. 94), the settlement agreement (Settle. Agree., ECF No. 96), a proposed notice for distribution to class members (Notice, ECF No. 96-2) and summary notice (Summ. Notice, ECF No. 96-4), a proposed proof of claim and release (ECF No. 96-3), and a declaration from the proposed claims administrator, Epiq Class Action & Claims Solutions, Inc. (Schmid Decl., No. 95), along with a sample cover letter to nominees (ECF No. 95-1).

[2] The parties have consented under 28 U.S.C. § 636(c) to the jurisdiction of a Magistrate Judge for the purposes of deciding the instant motion for preliminary approval and the motion for final approval. ECF No. 92.

[3] These facts are taken from the Amended Complaint. Am. Compl., ECF No. 23. Defendants do not admit or concede any wrongdoing.

FDA-approved; Fanapt to treat schizophrenia and Hetlioz to treat the circadian rhythm disorder Non-24 which occurs mostly in blind people. Id. ¶ 2.

Plaintiffs allege that defendants made materially false and misleading statements regarding the off-label promotion of both Fanapt and Hetlioz. Id. ¶ 3. Off-label promotion - which is illegal - involves marketing and encouraging doctors to prescribe a drug for a non-FDA approved use. Id. Plaintiffs allege that, among other efforts, defendants promoted the use of Fanapt to treat mental disorders other than schizophrenia; provided unrealistic sales targets; paid sales representatives for off-label sales; marketed the drug for pediatric use although it was only approved for adult use; downplayed certain side effects; and promoted less than the approved daily dosage. Id. ¶ 4. Regarding Hetlioz, plaintiffs allege defendants marketed the drug to psychiatrists and focused sales on sighted people who had difficulty sleeping rather than blind patients and patients suffering from the Non-24 disorder. Id. ¶ 5.

Plaintiffs further allege that defendants made misleading and materially false statements about Tradipitant, a drug in the clinical trial stage. Id. ¶ 6. The FDA required Vanda to conduct a nine-month long, non-rodent, study to ensure the drug's safety before studying the use of Tradipitant in humans for longer than three months. Id. However, without doing the nine-month study, Vanda "tried to conduct [T]radipitant studies [in humans] lasting longer than three months." Id. ¶ 7.  As a result, the FDA issued a clinical trial hold for Tridipitant, jeopardizing its future commercial use. Id.

Investors learned about Vanda's activities regarding Fanapt and Hetlioz from a short seller report issued on February 11, 2019. Id. ¶ 9. Vanda's failure to conduct the required Tradipitant study came to light when Vanda announced a lawsuit against the FDA after market close on February 5, 2019. Id. Both revelations were followed by declines in the company's stock price. Id.

## PROCEDURAL HISTORY

Plaintiffs commenced this action on February 25, 2019, compl., ECF No. 1, and the Court appointed Teamsters Local Union No. 727 as lead plaintiff on May 24, 2019, ECF No. 26. Teamsters Local Union No. 727 filed an amended complaint on July 23, 2019, am. Compl., ECF No. 29, and defendants moved to dismiss the amended complaint for failure to state a claim, ECF No. 48. The motion was granted in part and denied in part. Mem. & Order, ECF No. 55. The Court dismissed the claims against defendants James Kelly, Gian Reverberi, and Thomas Gibbs and ordered the claims against defendants Vanda and Polymeropoulos to proceed. Id. 5-6. Defendants answered the amended complaint, answer, ECF No. 60, and discovery commenced, see Electronic Orders dated May 19, 2021; July 13, 2021; July 28, 2021. The Court also set a briefing schedule for lead plaintiff's motion for class certification. See Electronic Order dated November 29, 2021.

The parties filed their fully briefed motion for class certification on January 28, 2022, but stated that they planned to engage in private mediation. ECF Nos. 82-84. As the case proceeded, the Court held a series of conferences to address discovery disputes between the parties. See Electronic Orders dated Dec. 21, 2021; Jan. 13, 2022; Feb. 7, 2022; Mar. 15, 2022. At a conference on April 14, 2022, the parties confirmed on the record that they had reached a preliminary settlement. See Electronic Order dated Apr. 14, 2022.

## DISCUSSION

Pursuant to Federal Rule of Civil Procedure 23(e), approval of a class action settlement generally occurs in two stages: (1) the preliminary approval stage, where the Court makes an initial evaluation of the settlement's fairness before notifying the class and (2) the final approval stage when class members and the parties are given an opportunity to be heard before the Court approves the settlement. See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig., 330 F.R.D.

11, 27 (E.D.N.Y. 2019) (citations omitted). At the preliminary approval stage, the Court must ask whether it "will likely be able to" first, approve the settlement as fair, reasonable, and adequate, and second, "certify the class for purposes of judgment on the proposal." Rosenfeld v. Lenich, No. 18 cv 6720 (NGG)(PK), 2021 WL 508339, at *4 (E.D.N.Y. Feb. 11, 2021) (quoting Fed. R. Civ. P. 23(e)(1)(B)). "Thus, to grant preliminary approval the court must consider the factors relevant to final approval and certification, and it must conclude that it is likely to find that those factors are satisfied." Mikhlin v. Oasmia Pharm. AB, No. 19 cv 4349 (NGG)(RER), 2021 WL 1259559, at *2 (E.D.N.Y. Jan. 6, 2021). While "the judicial role in reviewing a proposed settlement is demanding[,]" the reviewing court must not lose sight of the "strong judicial policy in favor of settlements, particularly in the class action context." In re Payment Card, 330 F.R.D. at 27 (internal quotation marks omitted).

## I.   **Preliminary Approval of the Settlement**

The Second Circuit's settlement approval analysis generally relies on two overlapping multi-factor tests. The 2018 amendments to Federal Rule of Civil Procedure 23(e)(2) supply the first test, which requires the Court, in evaluating the fairness, reasonableness, and adequacy of a settlement, to consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

Courts also supplement this analysis with the <u>Grinnell</u> factors,[4] which pre-date but were not displaced by the 2018 amendments to Rule 23(e). Courts often use the <u>Grinnell</u> factors to compliment or expand the Rule 23(e) analysis. <u>See e.g.</u>, <u>In re GSE Bonds Antitrust Litig.</u>, 414 F. Supp. 3d 686, 699 (S.D.N.Y. 2019). For the reasons discussed below, the Court finds that the Rule 23(e) factors and the relevant <u>Grinnell</u> factors weigh in favor of preliminary approval.

**A. The Court Will Likely Be Able to Approve the Settlement**

i.   <u>Adequacy of Representation</u>

Rule 23(e)(2)(A) requires the Court to analyze whether "the class representatives and class counsel have adequately represented the class." Turning first to the class representative, lead plaintiff asserts the same general injury as the rest of the class—economic loss caused by defendants alleged misrepresentations, which, until their disclosure, inflated the price of Vanda's stock. Lead plaintiff therefore has an "interest in vigorously pursuing the claims of the class." <u>In re GSE Bonds Antitrust Litig.</u>, 414 F. Supp. 3d at 692 (internal quotation marks omitted). For its part, lead counsel's firm of Robbins Geller Rudman & Dowd has "extensive experience in securities class actions and complex litigation…." <u>Villella v. Chem. & Mining Co. of Chile Inc.</u>, 333 F.R.D. 39, 59 (S.D.N.Y. 2019); <u>see also</u> <u>Micholle v. Ophthotech Corp.</u>, No. 17 cv 1758 (VSB), 2022 WL 1158684, at *2 (S.D.N.Y. Mar. 14, 2022). Further, lead counsel's preparation and professionalism before this Court supports a finding of adequate representation. <u>See</u> <u>Mikhlin</u>, 2021 WL 1259559, at *4; <u>In re GSE Bonds Antitrust Litig.</u>, 414 F. Supp. 3d at 692. Indeed, the

---

[4] The factors are: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." <u>Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.</u>, 396 F.3d 96, 117 (2d Cir. 2005) (citing <u>City of Detroit v. Grinnell Corp.</u>, 495 F.2d 448, 463 (2d Cir. 1974)); <u>see also</u> <u>In Re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.</u>, 330 F.R.D. 11, 29 (E.D.N.Y. 2019)

involvement of "experienced, capable counsel" in the instant settlement negotiations gives the resulting agreement a "presumption of correctness." In re Telik, Inc. Sec. Litig., 576 F. Supp. 2d 570, 575 (S.D.N.Y. 2008) (internal quotation marks omitted).

     ii.    Arm's Length Negotiation

     Next, the Court considers whether the parties' proposed settlement is the product of an arm's length negotiation. Fed. R. Civ. P. 23(e)(2)(B). Here, "the Court is not aware of any evidence or indicia suggesting that the negotiations were collusive." Simerlein v. Toyota Motor Corp., No. 17 cv 1091 (VAB), 2019 WL 1435055, at *13 (D. Conn. 2019). To the contrary, the parties reached the instant settlement after undertaking an adversarial day-long mediation before Jed D. Melnick, a neutral third-party, ultimately adopting the mediator's recommended settlement amount. Pl. Mem. at 4. "The participation of [Jed D. Melnick, a] highly qualified mediator strongly supports a finding that negotiations were conducted at arm's length and without collusion." Yang v. Focus Media Holding Ltd., No. 11 cv 9051 (CM)(GWG), 2014 WL 4401280, at *5 (S.D.N.Y. 2014); see also In re Penthouse Executive Club Compensation Litig., No. 10 cv 1145 (KMW), 2013 WL 1828598, *2 (S.D.N.Y. 2013); Mikhlin, 2021 WL 1259559, at *5 (granting preliminary settlement approval in securities class action where the parties "exchanged mediation briefs addressing the merits of the case and attended a day-long mediation session"). Further demonstrating a lack of collusion, the parties "vigorously litigated this case," Simerlein, 2019 WL 1435055, at *13, litigating a motion to dismiss, fully briefing a motion for class certification, exchanging almost 500,000 pages of documents through discovery, conducting four depositions, and sparring over numerous discovery issues.

iii.   <u>Adequate Relief for the Class</u>

Having reviewed the settlement proposal, the Court finds that it will likely be able to approve the "relief provided for the class [as] adequate…." Fed. R. Civ. P. 23(e)(2)(C). Turning first to the "costs, risks, and delay of trial and appeal[,]" Fed R. Civ. P. 23(e)(2)(C)(i), settlement is favored when the alternative–litigating the case–will be long, complex, and expensive. <u>See</u> <u>In re GSE Bonds Antitrust Litig.</u>, 414 F. Supp. 3d at 693-94. "In general, securities class actions are recognized by courts as notably difficult and notoriously uncertain to litigate." <u>In re Facebook, Inc., IPO Sec. & Derivative Litig.</u>, 343 F. Supp. 3d 394, 409 (S.D.N.Y. 2018) (internal quotation marks omitted), <u>aff'd sub nom.</u> <u>In re Facebook, Inc.</u>, 822 F. App'x 40 (2d Cir. 2020). Here, the parties remain fiercely divided on fundamental issues of liability and damages.[5] Litigating these claims through summary judgment and trial would be difficult, expensive, and require a battle of experts—a battle which the class may not ultimately win, but which is sure to be costly. <u>Id.</u> at 410 (finding the "involvement of costly experts" in further litigation of the class action militated in favor of settlement approval). Additionally, if litigation resumed, lead plaintiff faces the additional risk of certifying and maintaining the class. <u>See</u> <u>Mikhlin</u>, 2021 WL 1259559, at *5-6.

Further, the "proposed method of distributing relief to the class" is likely fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2)(C)(ii). As a threshold issue, the parties have stipulated that any "order or proceeding relating to the Plan of Allocation shall not operate to terminate or cancel the Stipulation…." Settle. Agee. ¶ 5.11. The proposed plan was "prepared by experienced counsel

---

[5] These issues include: "(i) whether either of the Defendants failed to make required disclosures during the Class Period; (ii) whether or not Defendants' conduct caused any harm to Class Members for which any damages could be recovered if Lead Plaintiff was to have prevailed on each claim alleged; (iii) the amounts by which the price of Vanda common stock was artificially inflated, if at all, during the Class Period; (iv) the extent to which external factors, such as general market, economic and industry conditions, influenced the trading price of Vanda common stock during the Class Period; (v) who, if anyone, can be included in the Class; (vi) the amount, if any, of any alleged damages suffered by purchasers or acquirers of Vanda common stock during the Class Period; and (vii) whether Defendants had other meritorious defenses to the alleged claims." Notice at 3-4.

along with a damages expert–both indicia of reasonableness." <u>In re Facebook, Inc.</u>, 343 F. Supp. 3d at 414. The plan has the "reasonable, rational basis" required for approval. <u>In Re Payment Card</u>, 330 F.R.D. at 40 (internal quotation marks omitted). As currently laid out in the proposed notice, the fundamental structure of the plan—to ascertain each class member's total loss due to defendants' alleged misconduct using dates of purchase and sale of Vanda stock, then distribute a *pro rata* share of the settlement fund to each claimant—appears reasonable and rational.[6] <u>See</u> <u>id.</u> at 40-41; <u>Mikhlin</u>, 2021 WL 1259559, at *6. The settlement fund will be overseen by Epiq Class Action & Claims Solutions, Inc. ("Epiq"), a claims administrator with experience in securities litigation settlements. Schmidt Decl. ¶ 11.

Similarly, the "the terms of any proposed award of attorney's fees, including timing of payment," Fed. R. Civ. P. 23(e)(2)(C)(iii), under the proposed settlement are sufficiently reasonable to warrant preliminary approval. <u>See</u> Settle. Agee. ¶ 6.4; Notice at 4. While it is premature to pass judgment on any anticipated fee application, courts in this Circuit frequently find requests for attorney's fees which are approximately one-third of a class action's total settlement—the maximum amount lead counsel will seek here—to be reasonable. <u>See</u> <u>Rosenfeld</u>, 2021 WL 508339, at *6-7 (collecting cases).  Further, the Court has discretion to determine the ultimate fee award. Turning to the timing of payment, the parties stipulate that the "fees and expenses, as awarded by the Court, shall be paid to Lead Counsel, as ordered, immediately after the Court executes the Judgment and an order awarding such fees and expenses." Settle. Agree. ¶ 6.2. While a settlement provision providing for payment of fees immediately upon entry of the

---

[6] The parties should be prepared to address the need for the $10.00 minimum payment threshold and its potential impact on investors with legitimate claims at the final approval hearing. <u>In re GSE Bonds Antitrust Litig.</u>, 414 F. Supp. 3d at 695 (granting preliminary approval to a method of distribution with a minimum payment threshold after "plaintiffs' counsel … represented that this threshold will be no higher than the bare minimum necessary for the claims administrator to process a simple claim.").

award "does not bolster the case for preliminary approval, it also does not undercut that case where, as here, the majority of other factors weigh significantly in its favor." <u>Mikhlin</u>, 2021 WL 1259559, at *7.

Finally, the parties have identified a confidential supplemental agreement "made in connection with the proposal." Fed. R. Civ. P. 23(e)(3); <u>see also</u> Fed. R. Civ. P. 23(e)(2)(C)(iv). The supplemental agreement, as discussed in broad strokes in the settlement agreement, provides that defendants "shall have the option to terminate the Settlement" if a certain percentage of class members exclude themselves. Settle. Agee. ¶ 7.3 The existence of such an agreement does not preclude preliminary approval, particularly as effectuating the termination provision simply restores the parties to their pre-settlement position. <u>Id.</u> ¶ 7.5. Moreover, there is sufficient reason to keep the document confidential–for instance, to prevent objectors from attempting to manipulate responses to undermine the settlement. However, the parties shall file a copy of the confidential supplemental agreement to the Court under seal for <u>in camera</u> review at least thirty-five days prior to the final approval hearing.

### iv.    Equitable Treatment of Class Members

The final consideration under Rule 23(e) is whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). In evaluating this factor, the Court may examine "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of the relief." <u>In Re Payment Card</u>, 330 F.R.D. at 47 (quoting Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment).

Here, as previously noted, the proposed calculation of each class member's recognized loss is based on Vanda's stock price at the time of the purchase or acquisition, and sale. The allocation

proposal provides for *pro rata* distribution of their recognized losses, a method that is likely to satisfy the requirements of Rule 23(e)(2)(D). <u>Rosenfeld</u>, 2021 WL 508339, at *7; <u>Mikhlin</u>, 2021 WL 1259559, at *8; <u>In Re Payment Card</u>, 330 F.R.D. at 47 (citing <u>Meredith Corp. v. SESAC, LLC</u>, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015)). Importantly, all class members "will be subject to the same formula for the distribution from the fund." <u>Micholle</u>, 2022 WL 1158684, at *2. The proposed waiver applies equally to all class members. ECF No. 96-3 at 6-8.

The Court therefore finds that the Rule 23(e) factors generally weigh in favor of preliminary approval of the parties' settlement.

## B. Grinnell Factors

As there is considerable overlap between the Rule 23(e) factors and the <u>Grinnell</u> factors, the Court limits its analysis to areas where the <u>Grinnell</u> factors provide additional guidance. One remaining <u>Grinnell</u> factor that does not fall squarely within the Rule 23(e) analysis is whether the defendants are able to withstand a greater judgment. Although defendants here could withstand a greater judgment, this does not, in and of itself, undermine an otherwise reasonable settlement. <u>See</u> <u>In re GSE Bonds Antitrust Litig.</u>, 414 F. Supp. 3d at 696.

Additionally, courts should assess whether the plaintiff and plaintiff's counsel had sufficient knowledge and information to assess the strengths and weaknesses of their claims prior to settlement. Here, lead counsel went "through mediation as well as one round of briefing at the motion to dismiss stage, making it aware of the strengths and weaknesses of plaintiff['s] position and that of defendants." <u>Id</u> at 699. Further, the parties produced 494,000 pages of documents and conducted four depositions, affording counsel the ability to assess the underlying claims. Pl. Mem. at 15.

Finally, under Grinnell factors eight and nine, the Court analyzes the proposed settlement—here $11.5 million—"compared with the best possible recovery, along with the attendant risks of recovery." In re Facebook, Inc., 343 F.Supp.3d at 413. Lead counsel asserts the $11.5 million settlement "represents a very good result of at least approximately 10.2% of reasonably recoverable damages consistent with the proposed Plan of Allocation." Pl. Mem. at 17 (emphasis added). It is unclear what plaintiff estimates to be the best possible recovery, as opposed to merely the "reasonably recoverable damages," or whether these two sums are, in fact, the same.

In any event, the Court is mindful that a neutral mediator proposed the settlement figure, which "was agreed upon only after careful consideration" by lead counsel. In re Facebook, Inc., at 414. Further, as discussed above, the risks attendant to this litigation are significant. "Settlement is favored in cases in which plaintiffs would have faced significant legal and factual obstacles to proving their case." Mikhlin, 2021 WL 1259559, at *5, 9 (E.D.N.Y. Jan. 6, 2021) (internal quotation marks omitted). Relevant to the instant inquiry, the risks attendant to establishing damages are significant. Id. at 5 ("Courts have observed that proof of damages in a securities fraud case is always difficult and invariably requires expert testimony.") (internal quotation marks omitted). While the best possible recovery here may be significantly higher than $11.5 million, the Court cannot say that the settlement figure is unreasonable given the risks of litigation. In re Facebook, Inc., 343 F.Supp.3d at 414 (granting final settlement approval even where parties did not provide "particularized evidence" as to best possible recovery given the "the risk of a zero-or minimal–recovery scenario are real").

Thus, after considering the Grinnell and Rule 23(e) factors, the Court grants preliminary approval of the proposed settlement.

## II.        Preliminary Certification of Settlement Class

The Court next considers the plaintiff's request for class certification, which the parties have agreed to for the purposes of settlement only. Pl. Mem. at 20. The proposed class consists of "all persons and entities who purchased or otherwise acquired Vanda common stock between November 4, 2015 and February 11, 2019, inclusive, and who were allegedly damaged thereby." Settle. Agree. ¶ 1.3. At the preliminary approval stage, the Court must determine whether it will "likely be able to … certify the class for purposes of judgment on the proposal."[7] See Fed R. Civ. P. 23(e)(1)(B).

This requires an evaluation of whether the proposed class meets the requirements of Rule 23(a) and (b). Rule 23(a)'s requirements are "(1) numerosity ('the class is so numerous that joinder of all members is impracticable'), (2) commonality ('there are questions of law or fact common to the class'), (3) typicality ('the claims or defenses of the representative parties are typical of the claims or defenses of the class'), and (4) adequacy of representation ('the representative parties will fairly and adequately protect the interests of the class')". In re Literary Works in Elec. Databases Copyright Litig., 654 F.3d 242, 249 (2d Cir. 2011) (quoting Fed. R. Civ. P. 23(a)). In addition, the class must meet the implied requirement of "ascertainability." In Re Payment Card, 330 F.R.D. at 50.

Where, as here, certification is sought pursuant to Rule 23(b)(3), the Court must make the preliminary determination "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is

---

[7] "Excluded from the Class are Defendants, the officers and directors of Vanda at all relevant times, members of their immediate families, any entity in which any Defendant has or had a controlling interest, and the legal representatives, heirs, successors-in-interest or assigns of any such excluded party. Also excluded from the Class are any Persons who timely and validly request exclusion from the Class as ordered by the Court." Settle. Agree. ¶ 1.3.

superior to other available methods for fairly and efficiently adjudicating the controversy."[8] Fed. R. Civ. P. 23(b)(3).

For the reasons discussed below, the Court grants the parties' motion and provisionally certifies the proposed class for settlement purposes.

A. **Rule 23(a) Requirements**

The parties here satisfy the first requirement of Rule 23(a): numerosity. "Sufficient numerosity can be presumed at a level of forty members or more." In re Initial Public Offer Securities Litig., 250 F.R.D. 81, 91 (S.D.N.Y. 2009). Here, there were over 52 million shares of Vanda common stock traded during the class period, resulting in thousands of potential class members. Pl. Mem. at 20. Micholle, 2022 WL 1158684, at *2 (finding numerosity requirement met in securities class action because tens of millions of shares of common stock were "outstanding and traded" during the class period).

Second, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "In securities fraud cases, where putative class members have been injured by similar material misrepresentations and omissions, the commonality requirement is satisfied." In re Pfizer Inc. Sec. Litig., 282 F.R.D. 38, 44 (S.D.N.Y. 2012) (internal quotation marks omitted). As plaintiff argues, the instant case raises common questions of law and fact as to whether: "(1) Defendants violated the Exchange Act; (2) Defendants' statements misrepresented or omitted material facts; (3) Defendants acted knowingly or recklessly; and (4) investors suffered damages as a result of the alleged misconduct." Pl. Mem. at 21. The class members therefore face common questions of

---

[8] There are four factors "pertinent" to this analysis: whether "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties of maintaining a class action." Fed R. Civ. P. 23(b)(3).

law and fact. See In re Signet Jewelers Ltd. Sec. Litig., No. 16 cv 6728 (CM)(RWL), 2019 WL

3001084, at *8 (S.D.N.Y. July 10, 2019); In re Pfizer Inc. Sec. Litig., 272 F.R.D. at 44.

The third requirement, typicality, requires a showing that "the claims or defenses of the

representative parties are typical of the claims or defenses of the class." Fed R Civ. P. 23(a)(3).

This is satisfied, where, as here, the "claims of the representative plaintiffs arise from the same

course of conduct that gives rise to claims of the other class members, where the claims are based

on the same legal theory, and where the class members have allegedly been injured by the same

course of conduct as that which allegedly injured the proposed representatives." In re Glob.

Crossing Sec. & ERISA Litig., 225 F.R.D. 436, 452 (S.D.N.Y. 2004) (quoting In re Oxford Health

Plans, Inc., 191 F.R.D. 359, 375 (S.D.N.Y. 2000)) Lead plaintiff alleges that defendants' false

statements and omissions inflated the stock price for all class members during the class period.

Lead plaintiff similarly alleges that it purchased Vanda stock at an inflated price and suffered

damages as a result. Pl. Mem. at 21; ECF No 9-3 at 2. "In other words, all [c]lass members' claims

arise from the same course of events and will be resolved based on similar legal arguments." In re

Signet Jewelers Ltd. Sec. Litig., 2019 WL 3001084, at *9. Therefore, the lead plaintiff's claims

are typical of the class members.

Fourth, adequacy requires that "the representative parties will fairly and adequately protect

the interests of the class." Fed. R. Civ. P. 23(a)(4). For the reasons discussed above, plaintiff's

"interests are not antagonistic to those of the Class [and] plaintiff's attorney[ is] qualified,

experienced, and able to conduct the litigation." In re Signet Jewelers Ltd. Sec. Litig., 2019 WL

3001084, at *9. Therefore, the adequacy prong of Rule 23(a) is met.

Lastly, the class is ascertainable because it is "defined using objective criteria that establish

a membership with definite boundaries." Mikhlin, 2021 WL 1259559, *10 (quoting In re Petrobras

14

Sec., 862 F.3d 250, 260 (2d Cir. 2017)). The proposed class is comprised of individuals or entities that acquired Vanda stock within the dates specified.

### B. Rule 23(b)(3) Requirements

Where, as here, the lead plaintiff in a class action seeks certification pursuant to Rule 23(b)(3), the Court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"The predominance requirement is satisfied 'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" In re U.S. Foodservice Inc. Pricing Litig., 729 F.3d 108, 117 (2d Cir. 2013) (quoting UFCW Local 1776 v. Eli Lilly & Co., 620 F.3d 121, 131 (2d Cir. 2010)). The inquiry is qualitative, rather than quantitative, with the central question being whether generalized common issues enabling class-wide aggregation "are more prevalent or important" than individualized issues requiring individualized proof. In re Signet Jewelers Ltd. Sec. Litig., 2019 WL 3001084, at *9 (quoting Tyson Foods, Inc. v. Bouaphakeo, 577 U.S. 442, 623-24 (2016)). Further, "the predominance inquiry will sometimes be easier to satisfy in the settlement context" because a settlement class inherently addresses some of the practical concerns motivating the predominance test, concerns which are primarily relevant when certifying a litigation class. In re Am. Intern. Grp., Inc. Sec. Litig., 689 F.3d 229, 232 (2d Cir. 2012); see also Rosenfeld, 2021 WL 508339, at *10.

"Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 625 (1997). Indeed, this securities fraud case is no different. Resolution of plaintiff's allegations—including questions of liability, causation, and damages— are susceptible to generalized proof and, further, such generalized inquiries predominate over any issues specific to individual class members. See Micholle, 2022 WL 1158684, at *3; Mikhlin, 2021 WL 1259559, at *11 ("The putative class members purchased the same securities, the value of which was allegedly damaged by the same series of fraudulent acts and omissions. Accordingly, the court will likely find that common factual and legal questions predominate over individual issues."); see also In re Signet Jewelers Ltd. Sec. Litig., 2019 WL 3001084, at *20.

Lastly, plaintiff demonstrates superiority. There are likely thousands of class members nationwide, and consolidating their claims is in the interests of efficiency and judicial economy. See Micholle, 2022 WL 1158684 at *4; In re GSE Bonds Antitrust Litig., 414 F.Supp.3d at 702 ("[C]oncentrating the case in one forum will help improve fairness and efficiency in adjudication of the claims of plaintiffs, who are widely dispersed.") Additionally, a class action is superior where, as here, the economic loss incurred by many class members is not of a magnitude that would make individual "litigation economical." In re GSE Bonds Antitrust Litig., 414 F.Supp.3d at 702 (citing Amchem, 521 U.S. at 617).

For the reasons stated above, the Court grants the parties' motion and conditionally certifies the proposed class for settlement purposes pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure.

### III.    Notice

As the Court finds that the settlement proposal and class certification should be preliminarily approved, "the [C]ourt must direct notice in a reasonable manner to all class members who would be bound by the proposal…." Fed. R. Civ. P. 23(e)(1)(B). As this putative class will be certified under Rule 23(b)(3), "the [C]ourt must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."[9] Fed. R. Civ. P. 23(c)(2)(B). "The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." In re GSE Bonds Antitrust Litig., 414 F.Supp. at 702 (internal quotation marks omitted). Notice is adequate if it "apprises prospective class members of the terms of the settlement and the options that are available to them…." Rosenfeld, 2021 WL 508339 at *12.

The Court finds the proposed notice plan satisfies the procedural and substantive requirements of Rule 23, in addition to the requirements of the Private Securities Litigation Reform Act ("PSLRA").[10] The proposed notice clearly states, in plain language, the nature of the instant litigation and the definition of the class. Notice at 2. In addition to cover pages with the necessary PSLRA statements, the proposed notice includes a straightforward, easy-to-understand table summarizing and explaining potential class member's options and rights in response to the

---

[9] The notice must: "clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B).

[10] The PSLRA requires any proposed settlement include a statement of plaintiffs' recovery (on both the aggregate and average per share basis), a statement about the potential outcome of the case (including any agreement or disagreement between the parties on the amount of damages), a statement on attorney's fees or costs, identification of the lawyers' representative, reasons for settlement, and any other information required by the Court. The notice must also include a cover page summarizing this information. See 15 U.S.C. § 78u-4(a)(7)(A)-(F).

settlement, the deadline to exercise those rights, and the consequences of doing so (or failing to do so). Notice at 6. These options include submitting a proof of claim, opting-out, objecting to the settlement or request for attorney's fees, doing nothing, and/or attending the fairness hearing.[11] Id. The proposed notice also includes a list of common questions—which encompass the substantive requirements of Rule 23(c)(2)(B)—and provides corresponding detailed answers. Id. at 6-7.

The proposed method of distributing the notice is also reasonable. Given the nature of securities trading, "a large majority of potential Class Members are beneficial purchasers whose securities are held in 'street name,' i.e., the securities are purchased by banks, brokers, and other nominees ('Nominees') in the name of the Nominee, on behalf of the beneficial purchasers." Schmidt Decl. ¶ 3. Epiq, the proposed claims administrator, "will mail the Notice Pack to potential Class Members identified through Defendants' records, as well to Nominees in Eqip's database."[12] Id. ¶ 7. Epiq estimates it "will mail approximately 50,000 Notice Packets and receive approximately 10,000 claims." Id. ¶ 3. "In addition, the Summary Notice will be published in *The Wall Street Journal* and transmitted over the *PR Newswire* on a schedule to be approved by the Court." Id. ¶ 4. Epiq will establish a website and potential class members will be given a telephone number they can call for additional information. A proof of claim form will be included with the notice and be made available online. Id. "This multi-faceted plan involving individual mail notice

---

[11] The parties shall revise the proposed notice, ECF No. 96-2, page six (left column second row under "Legal Rights and Options"), to state that a class member may electronically file a proof of claim form.

[12] "The Notice Packet will direct those Nominees who purchased or otherwise acquired common stock of Vanda Pharmaceuticals, Inc. for the beneficial interest of a person or organization other than themselves, within ten (10) business days of receipt, to either (i) request from the Claims Administrator sufficient copies of the Notice Packet to forward to all such beneficial owners and within ten (10) business days of receipt of those Notice Packets forward them to all such beneficial owners; or (ii) provide a list of names and addresses (and e-mail addresses, if available) of all such beneficial owners to Vanda Securities Litigation, Claims Administrator, c/o Epiq, P.O. Box 4199, Portland, OR 97208-4199 and the Claims Administrator will send a copy of the Notice Packets to the beneficial owners." Schmidt Decl. ¶ 8.

and publication satisfies the requirements of Rules 23(e)(1)(B) and 23(c)(2)(B)." <u>In re GSE Bonds</u>
<u>Antitrust Litig.</u>, 414 F. Supp. 3d at 703.

      Therefore, the Court approves the proposed notices, ECF Nos. 96-2, 96-3, 96-4, and directs
the parties to revise the notices to reflect the appropriate dates as set forth and approved by this
Order.

<u>**CONCLUSION**</u>

      For the reasons stated above, the Court grants lead plaintiff's motion for preliminary
approval of the proposed settlement and grants preliminary certification of the proposed class for
the purposes of settlement.

SO ORDERED.

                              _____/S/_____
                              LOIS BLOOM
                              United States Magistrate Judge

Dated: September 15, 2022
       Brooklyn, New York