UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————— x

KENNETH GORDON, Individually and on :   Civil Action No. 1:19-cv-01108-FB-LB
Behalf of All Others Similarly Situated, :

                     :   <u>CLASS ACTION</u>

           Plaintiff, :

                     :   MEMORANDUM OF LAW IN SUPPORT
                     :   OF LEAD PLAINTIFF'S MOTION FOR
   vs.                 :   FINAL APPROVAL OF CLASS ACTION
                     :   SETTLEMENT AND APPROVAL OF PLAN
VANDA PHARMACEUTICALS, INC., and :   OF ALLOCATION
MIHAEL H. POLYMEROPOULOS, :

                     :

        Defendants. :

                     :

———————————————————— x

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND.........................................2

III.  STANDARDS FOR FINAL APPROVAL OF CLASS ACTION
      SETTLEMENTS..................................................................................................3

      A.   The Law Favors and Encourages Settlements ........................................3

      B.   The Settlement Must Be Procedurally and Substantively Fair, Adequate,
           and Reasonable ......................................................................................4

      C.   The Proposed Settlement Is Procedurally and Substantively Fair,
           Adequate, and Reasonable ....................................................................6

           1.   The Settlement Satisfies the Requirements of Rule 23(e)(2)......................6

                a.   Lead Plaintiff and Lead Counsel Have Adequately
                     Represented the Class ...........................................................6

                b.   The Proposed Settlement Was Negotiated at Arm's Length
                     Before an Experienced Mediator .......................................6

                c.   The Proposed Settlement Is Adequate in Light of the
                     Litigation Risks, Costs, and Delays of Trial and Appeal................8

                     (1)   The Risks of Establishing Liability at Trial........................8

                     (2)   The Risks of Establishing Loss Causation and
                           Damages at Trial.................................................................9

                     (3)   The Settlement Eliminates the Additional Costs and
                           Delay of Continued Litigation .........................................10

                d.   The Proposed Method for Distributing Relief Is Effective............11

                e.   Lead Counsel's Request for an Award of Attorneys' Fees Is
                     Reasonable ..........................................................................11

                f.   The Parties Have No Other Agreements Besides Opt-Outs ..........12

                g.   The Settlement Ensures Class Members Are Treated
                     Equitably ..............................................................................13

           2.   The Settlement Satisfies the Remaining *Grinnell* Factors........................13

4895-9441-9005.v1

**Page**

      a.      The Lack of Objections to Date Supports Final Approval ............13

      b.      Lead Plaintiff Had Sufficient Information to Make an Informed Decision Regarding the Settlement................................14

      c.      Maintaining Class-Action Status Through Trial Presents a Substantial Risk ............................................................................15

      d.      Defendants' Ability to Withstand a Greater Judgment.................15

      e.      The Settlement Amount Is Reasonable in View of the Best Possible Recovery and the Risks of Litigation .............................16

IV.     THE PLAN OF ALLOCATION IS FAIR AND ADEQUATE .......................................17

V.      THE COURT SHOULD FINALLY CERTIFY THE CLASS FOR PURPOSES OF EFFECTUATING THE SETTLEMENT ...................................................................18

VI.    NOTICE TO THE CLASS SATISFIES THE REQUIREMENTS OF RULE 23 AND DUE PROCESS ......................................................................................................19

VII.   CONCLUSION..................................................................................................................21

4895-9441-9005.v1

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Castagna v. Madison Square Garden, L.P.*,
   2011 WL 2208614 (S.D.N.Y. June 7, 2011) ........................................................................15

*Charron v. Pinnacle Grp. N.Y. LLC*,
   874 F. Supp. 2d 179 (S.D.N.Y. 2012),
   *aff'd sub nom. Charron v. Wiener*,
   731 F.3d 241 (2d. Cir. 2013)......................................................................................................7

*Christine Asia Co., Ltd. v. Yun Ma*,
   2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019)................................................................. *passim*

*City of Providence v. Aeropostale, Inc.*,
   2014 WL 1883494 (S.D.N.Y. May 9, 2014),
   *aff'd sub nom. Arbuthnot v. Pierson*,
   607 F. App'x 73 (2d Cir. 2015) .........................................................................................13, 15

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*,
   502 F.3d 91 (2d Cir. 2007)........................................................................................................6

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001)....................................................................................................5, 7

*Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974)...................................................................................... *passim*

*Dornberger v. Metro Life Ins. Co.*,
   203 F.R.D. 118 (S.D.N.Y. 2001) ...........................................................................................21

*Hicks v. Morgan Stanley*,
   2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005).......................................................................10

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
   298 F.R.D. 171 (S.D.N.Y. 2014) .........................................................................3, 7, 10, 17

*In re Agent Orange Prod. Liab. Litig.*,
   597 F. Supp. 740 (E.D.N.Y. 1984),
   *aff'd*, 818 F.2d 145 (2d Cir. 1987).......................................................................................16

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
   2006 WL 903236 (S.D.N.Y. Apr. 6, 2006).............................................................................8

4895-9441-9005.v1

**Page**

*In re Bear Stearns Cos., Inc. Sec., Derivative & ERISA Litig.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012)................................................................14, 16

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices & Prods. Liab. Litig.*,
2019 WL 2554232 (N.D. Cal. May 3, 2019) ...........................................................5

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
343 F. Supp. 3d 394 (S.D.N.Y. 2018),
*aff'd*, 822 F. App'x 40 (2d Cir. 2020)............................................................. *passim*

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010).............................................................8

*In re Genworth Fin. Sec. Litig.*,
2016 WL 7187290 (E.D. Va. Sept. 26, 2016)..........................................................12

*In re Glob. Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ...................................................................5, 8, 16

*In re GSE Bonds Antitrust Litigation*,
414 F. Supp. 3d 686 (S.D.N.Y. 2019).....................................................................18

*In re Hi-Crush Partners L.P. Sec. Litig.*,
2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) .........................................................14

*In re Merrill Lynch Tyco Rsch. Sec. Litig.*,
249 F.R.D. 124 (S.D.N.Y. 2008) ............................................................................20

*In re Namenda Direct Purchaser Antitrust Litig.*,
2020 WL 2749223 (S.D.N.Y. May 27, 2020) ...........................................................5

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
330 F.R.D. 11 (E.D.N.Y. 2019).................................................................................5

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
2008 WL 1956267 (S.D.N.Y. May 1, 2008) ...........................................................15

*In re Veeco Instruments Inc. Sec. Litig.*,
2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007)......................................................13, 18

*In re WorldCom, Inc. Sec. Litig.*,
388 F. Supp. 2d 319 (S.D.N.Y. 2005).....................................................................17

**Page**

*Kalnit v. Eichler*,
    99 F. Supp. 2d 327 (S.D.N.Y. 2000),
    *aff'd*, 264 F.3d 131 (2d Cir. 2001) ...................................................................................9

*Martignago v. Merrill Lynch & Co., Inc.*,
    2013 WL 12316358 (S.D.N.Y. Oct. 3, 2013) ..................................................................14

*McMahon v. Olivier Cheng Catering & Events, LLC*,
    2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010) ............................................................3, 7, 15

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972) ...........................................................................................16

*Padro v. Astrue*,
    2013 WL 5719076 (E.D.N.Y. Oct. 18, 2013) .................................................................21

*Snyder v. Ocwen Loan Servicing, LLC*,
    2019 WL 2103379 (N.D. Ill. May 14, 2019) .....................................................................5

*Strougo v. Bassini*,
    258 F. Supp. 2d 254 (S.D.N.Y. 2003) .............................................................................10

*Thompson v. Metro Life Ins. Co.*,
    216 F.R.D. 55 (S.D.N.Y. 2003) .........................................................................................5

*Vargas v. Capital One Fin. Advisors*,
    559 F. App'x 22 (2d Cir. 2014). Notice ...........................................................................20

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005) .........................................................................................3, 7, 20

*Yuzary v. HSBC Bank, USA, N.A.*,
    2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013) .................................................................5, 13

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §78u-4(a)(4) .......................................................................................................................1

4895-9441-9005.v1

**Page**

Federal Rules of Civil Procecure
    Rule 23 ...................................................................................................................................19
    Rule 23(a).............................................................................................................................19
    Rules 23(b)(3) ......................................................................................................................19
    Rule 23(c).............................................................................................................................15
    Rule 23(c)(2)(B)..............................................................................................................19, 21
    Rule 23(e).................................................................................................................... *passim*
    Rule 23(e)(1)(B)...................................................................................................................19
    Rule 23(e)(2) ............................................................................................................... *passim*
    Rule 23(e)(2)(A) ....................................................................................................................6
    Rule 23(e)(2)(B)......................................................................................................................6
    Rule 23(e)(2)(C)(i)............................................................................................................8, 10
    Rule 23(e)(2)(C)(ii).............................................................................................................11
    Rule 23(e)(2)(C)(iii)...........................................................................................................11
    Rule 23(e)(2)(C)(iv)............................................................................................................12
    Rule 23(e)(2)(D) .................................................................................................................13
    Rule 23(e)(3)....................................................................................................................4, 12

## SECONDARY AUTHORITIES

Janeen McIntosh and Svetlana Starykh,
    *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review*
    (NERA Jan. 25, 2022)............................................................................................................17

4895-9441-9005.v1

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff Teamsters Local Union No. 727 Pension Fund ("Lead Plaintiff" or "Plaintiff"), on behalf of itself and the Class, respectfully submits this memorandum of law in support of its motion for final approval of the $11,500,000 Settlement (the "Settlement Amount") reached in this action (the "Litigation") and approval of the Plan of Allocation (the "Plan"). The terms of the Settlement are set forth in the Stipulation and Agreement of Settlement dated May 5, 2022 (the "Stipulation"). ECF 96.[1]

## I. INTRODUCTION

Plaintiff's $11.5 million recovery is the result of its rigorous three-year effort to prosecute this highly contested litigation, in addition to extensive arm's-length settlement negotiations by experienced and knowledgeable counsel, overseen by a mediator experienced in resolving securities class actions. The Settlement was approved by Lead Plaintiff[2] and represents a very good result for the Class. It easily satisfies each of the Rule 23(e)(2) factors, as well as the factors set forth in the Second Circuit decision of *Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

The Settlement is especially beneficial to the Class in light of the substantial litigation risks Lead Plaintiff faced. The gravamen of Lead Plaintiff's claims was that, during the Class Period, Defendants misrepresented and/or failed to disclose alleged off-label promotion of Vanda's two commercially available drugs, Fanapt and Hetlioz, and certain information concerning the status of clinical trials of tradipitant, a drug in Vanda's clinical development pipeline. While Plaintiff

---

[1] All capitalized terms not otherwise defined herein shall have the meanings set forth in the Stipulation and the Declaration of Michael G. Capeci in Support of: (1) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation; and (2) Lead Counsel's Application for an Award of Attorneys' Fees and Expenses and an Award to Lead Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4) ("Capeci Decl."), submitted herewith. Citations are omitted and emphasis is added throughout unless otherwise noted.

[2] *See* Declaration of Robert J. Laino in Support of Motion for Final Approval, ¶8.

- 1 -

believes in the merits of its claims, Defendants argued in support of their motion to dismiss that the Amended Complaint did not sufficiently allege: (1) fraud with particularity; (2) actionable false and misleading statements; (3) scienter; or (4) loss causation. Capeci Decl., ¶34. Though the Court had granted in part and denied in part Defendants' motion to dismiss, Defendants no doubt would have renewed these arguments and raised others on summary judgment.

At the time the Settlement was reached, not only had the parties briefed Defendants' motion to dismiss, Lead Plaintiff had conducted substantial discovery, including serving document requests and subpoenas resulting in the production of approximately 500,000 pages of documents by Defendants and several third parties and the completion of four depositions. Also, Lead Plaintiff had filed its motion for class certification and related *Daubert* motion, both of which were fully briefed and pending at the time of settlement. Accordingly, Plaintiff and Lead Counsel had a thorough understanding of the strengths and weaknesses of the case before reaching the Settlement. Moreover, a skilled and highly reputable securities litigation mediator – Jed D. Melnick, Esq. – assisted the parties in reaching a resolution of the case for $11.5 million.

Given the risks to proceeding and the exceptional recovery obtained, Lead Plaintiff respectfully submits that the $11.5 million Settlement and the Plan of Allocation – which was prepared with the assistance of Lead Plaintiff's damages expert, and is substantially similar to numerous other such plans that have been approved in this Circuit – are fair and reasonable in all respects. Lead Plaintiff respectfully requests that the Court grant final approval of the Settlement under Rule 23(e) of the Federal Rules of Civil Procedure.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

The Court's September 15, 2022 Order granting preliminary approval (ECF 100; the "September 15 Order") includes a factual background and procedural history of the Litigation. In

4895-9441-9005.v1

addition, the Capeci Declaration, filed concurrently herewith, includes a detailed discussion of the Litigation's factual background and procedural history, the extensive efforts undertaken by Lead Plaintiff and its counsel during the course of the Litigation, the risks of continued litigation, and the negotiations leading to the Settlement. Accordingly, to avoid repetition, Lead Plaintiff will not repeat those facts here.

## III.   STANDARDS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS

### A.   The Law Favors and Encourages Settlements

"Courts examine procedural and substantive fairness in light of the 'strong judicial policy favoring settlements' of class action suits." *McMahon v. Olivier Cheng Catering & Events, LLC*, 2010 WL 2399328, at *3 (S.D.N.Y. Mar. 3, 2010) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)); *see also In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 174 (S.D.N.Y. 2014) ("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation."). Thus, the Second Circuit has instructed that, while a court should not give "rubber stamp approval" to a proposed settlement, it should "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *Grinnell*, 495 F.2d at 462.

As set forth below, and consistent with the Court's September 15 Order, the $11.5 million Settlement here, particularly in light of the significant litigation risks Lead Plaintiff faced, is manifestly reasonable, fair, and adequate under all of the pertinent factors courts use to evaluate a settlement. Accordingly, the Settlement warrants final approval from this Court.

- 3 -

**B.      The Settlement Must Be Procedurally and Substantively Fair, Adequate, and Reasonable**

Federal Rule of Civil Procedure 23(e) requires judicial approval of a class action settlement. Rule 23(e)(2), as amended in 2018, provides that courts should consider certain factors when determining whether a class action settlement is "fair, reasonable, and adequate" such that final approval is warranted:

(A)      the class representatives and class counsel have adequately represented the class;

(B)      the proposal was negotiated at arm's length;

(C)      the relief provided for the class is adequate, taking into account:

     (i)      the costs, risks, and delay of trial and appeal;

     (ii)      the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

     (iii)      the terms of any proposed award of attorneys' fees, including timing of payment; and

     (iv)      any agreement required to be identified under Rule 23(e)(3); and

(D)      the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

In addition, the Second Circuit considers the following factors (the "*Grinnell* Factors"), which largely overlap with the Rule 23(e)(2) factors, when determining whether to approve a class action settlement: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of

- 4 -

all of the attendant risks of litigation.  *Grinnell*, 495 F.2d at 463; *see also In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019) (explaining that "the new Rule 23(e) factors . . . add to, rather than displace, the *Grinnell* factors," and "there is significant overlap" between the two "as they both guide a court's substantive, as opposed to procedural, analysis").  *See also In re Namenda Direct Purchaser Antitrust Litig.*, 2020 WL 2749223, at *2-*3 (S.D.N.Y. May 27, 2020).

For a settlement to be deemed substantively and procedurally fair, reasonable and adequate, not every factor need be satisfied.  "[R]ather, the court should consider the totality of these factors in light of the particular circumstances."  *Thompson v. Metro Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003) (citing *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001)).  Additionally, "'[a]bsent fraud or collusion, courts should be hesitant to substitute their judgment for that of the parties who negotiated the settlement.'"  *Yuzary v. HSBC Bank, USA, N.A.*, 2013 WL 5492998, at *4 (S.D.N.Y. Oct. 2, 2013); *see also In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 455 (S.D.N.Y. 2004) (courts should not substitute their "'business judgment for that of counsel, absent evidence of fraud or overreaching'").

As set forth in Lead Plaintiff's Memorandum of Law in Support of Unopposed Motion for Preliminary Approval of Settlement (ECF 94), and acknowledged by this Court's September 15 Order, Lead Plaintiff meets all of the requirements imposed by Rule 23(e)(2).  Courts have noted that a plaintiff's satisfaction of these factors is virtually assured where, as here, little has changed between preliminary approval and final approval.  *See In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices & Prods. Liab. Litig.*, 2019 WL 2554232, at *2 (N.D. Cal. May 3, 2019) (finding that the "conclusions [made in granting preliminary approval] stand and counsel equally in favor of final approval now"); *Snyder v. Ocwen Loan Servicing, LLC*, 2019 WL 2103379, at *4 (N.D. Ill.

- 5 -

May 14, 2019) (noting in analyzing Rule 23(e)(2) that "[s]ignificant portions of the Court's analysis remain materially unchanged from the previous order [granting preliminary approval]").

      C.     **The Proposed Settlement Is Procedurally and Substantively Fair, Adequate, and Reasonable**

          1.     **The Settlement Satisfies the Requirements of Rule 23(e)(2)**

              a.     **Lead Plaintiff and Lead Counsel Have Adequately Represented the Class**

The determination of adequacy "typically 'entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'" *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007). Here, Lead Plaintiff's interests are not antagonistic to, and in fact are directly aligned with, the interests of other Members of the Class. Additionally, Lead Plaintiff and Lead Counsel have adequately represented the Class by zealously prosecuting this action, including by, among other things, conducting an extensive investigation of the relevant factual events, drafting a highly detailed amended complaint, briefing and successfully overcoming Defendants' motion to dismiss, briefing Lead Plaintiff's motion for class certification, conducting substantial discovery, and preparing for and participating in a mediation session before Mr. Melnick. *See generally* Capeci Decl. Through each step of the Litigation, Lead Plaintiff and Lead Counsel have strenuously advocated for the best interests of the Class. Lead Plaintiff and Lead Counsel therefore satisfy Rule 23(e)(2)(A) for purposes of final approval.

              b.     **The Proposed Settlement Was Negotiated at Arm's Length Before an Experienced Mediator**

Plaintiff satisfies Rule 23(e)(2)(B) because the Settlement is the product of arm's-length negotiations between the parties' counsel before a neutral mediator, with no hint of collusion. Capeci Decl., ¶¶168-172. On March 14, 2022, the parties participated in a formal mediation in New

- 6 -

York with Mr. Melnick.  *Id.*, ¶169.  While the parties were unable to reach a settlement at the March 14 mediation, Mr. Melnick issued a "mediator's proposal" shortly thereafter on March 16, to settle the Litigation for $11.5 million, which the parties accepted.  The use of the mediation process provides compelling evidence that the Settlement is not the result of collusion.  *See* September 15 Order at 6; *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 408-09 (S.D.N.Y. 2018) (settlement was procedurally fair where it was "based on the suggestion by a neutral mediator"), *aff'd*, 822 F. App'x 40 (2d Cir. 2020); *McMahon*, 2010 WL 2399328, at \*4 ("Arm's length negotiations involving counsel and a mediator raise a presumption that the settlement they achieved meets the requirements of due process.") (citing *Wal-Mart Stores*, 396 F.3d at 116); *D'Amato*, 236 F.3d at 85 (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure").  Moreover, the Settlement negotiations in this case were "carried out under the direction of Lead Plaintiff[], . . . whose involvement suggests procedural fairness." *Facebook*, 343 F. Supp. 3d at 409.

In addition, "a class action settlement enjoys a strong 'presumption of fairness' where it is the product of arm's-length negotiations concluded by experienced, capable counsel." *Advanced Battery*, 298 F.R.D. at 175 (citing *Wal-Mart Stores*, 396 F.3d at 116); *see also* September 15 Order, at 5 (Lead Counsel "has 'extensive experience in securities class actions and complex litigation . . . .'"); *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 195 (S.D.N.Y. 2012) ("Recommendations of experienced counsel are entitled to great weight in evaluating a proposed settlement in a class action because such counsel are most closely acquainted with the facts of the underlying litigation."), *aff'd sub nom. Charron v. Wiener*, 731 F.3d 241 (2d. Cir. 2013); *McMahon*, 2010 WL 2399328, at \*4 (settlement was "procedurally fair, reasonable, adequate and not a product of collusion" where it was reached after "arm's-length negotiations between the parties").

- 7 -

Accordingly, this factor weighs heavily in favor of the Court granting final approval of the Settlement.

### c. The Proposed Settlement Is Adequate in Light of the Litigation Risks, Costs, and Delays of Trial and Appeal

Rule 23(e)(2)(C)(i) and the first, fourth and fifth *Grinnell* factors overlap, as they address the substantive fairness of the Settlement in light of the costs and delay risk posed by continuing litigation. As set forth below, these factors weigh in favor of final approval.

### (1) The Risks of Establishing Liability at Trial

In considering this factor, "the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *Glob. Crossing*, 225 F.R.D. at 459. As a preliminary matter, the significant unpredictability and complexity posed by securities class actions generally weigh in favor of final approval. Indeed, "'[i]n evaluating the settlement of a securities class action, federal courts, including this Court, have long recognized that such litigation is notably difficult and notoriously uncertain.'" *Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *10 (S.D.N.Y. Oct. 16, 2019); *see also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *15 (S.D.N.Y. Nov. 8, 2010) (same); *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2006 WL 903236, at *11 (S.D.N.Y. Apr. 6, 2006) ("The difficulty of establishing liability is a common risk of securities litigation."). Although Lead Plaintiff and Lead Counsel firmly believe that the claims asserted in the Litigation are meritorious, and that they would prevail at trial, further litigation against Defendants posed risks that made any recovery uncertain.

As set forth above and in the Capeci Declaration, at the time of the Settlement, Lead Plaintiff's fully-briefed motion for class certification was pending. If that motion had been denied, the scope of the action would have been far narrower. Defendants have vigorously contested both class certification and liability and have denied and continue to deny each and every claim and

- 8 -

allegation of wrongdoing.  Specifically, in Defendants' motion to dismiss, they argued that Plaintiff had not alleged any actionable misstatements or omissions, nor had Plaintiff sufficiently alleged Defendants' scienter.  Capeci Decl., ¶34.  *See, e.g.*, *Kalnit v. Eichler*, 99 F. Supp. 2d 327, 345 (S.D.N.Y. 2000) ("The element of scienter is often the most difficult and controversial aspect of a securities fraud claim."), *aff'd*, 264 F.3d 131 (2d Cir. 2001).  With respect to Lead Plaintiff's off-label claim, Defendants argued that no off-label marketing occurred, and that the news associated with the off-label claim had no impact on Vanda's stock price.  *See* Capeci Decl., ¶9.  In addition, Defendants argued that the alleged statements about the tradipitant clinical trials were not false.  *Id.*

### (2) The Risks of Establishing Loss Causation and Damages at Trial

The risks of establishing liability apply with equal force to establishing damages.  Here, Defendants argued that Lead Plaintiff had not adequately alleged (and could not prove) loss causation with respect to the alleged misrepresentations.  Capeci Decl., ¶34.  Had litigation continued, Defendants no doubt would have raised this argument at summary judgment and trial. Lead Plaintiff would have relied heavily on expert testimony to establish loss causation and damages, likely leading to a battle of the experts at trial and a *Daubert* challenge.  Indeed, in briefing class certification, the parties submitted expert declarations regarding a number of issues, including the price impact of the alleged off-label marketing disclosures.  *See* Capeci Decl., ¶132.  Lead Plaintiff's *Daubert* motion was also fully briefed at the time of settlement.  If the Court were to determine that Defendants' expert should not be excluded from testifying at trial, Lead Plaintiff's case would become much more difficult to prove.

Thus, in light of the very significant risks Lead Plaintiff faced at the time of the Settlement with regard to establishing liability and damages, this factor weighs heavily in favor of final

approval. *See* September 15 Order at 7 ("Here, the parties remain fiercely divided on fundamental issues of liability and damages.").

### (3)    The Settlement Eliminates the Additional Costs and Delay of Continued Litigation

The anticipated complexity, cost, and duration of the Litigation would be considerable. *See Advanced Battery*, 298 F.R.D. at 175 ("the complexity, expense, and likely duration of litigation are critical factors in evaluating the reasonableness of a settlement"). Indeed, if not for the Settlement, the Litigation, which has already been pending for three years, would have continued through class certification, the completion of fact and expert discovery, and summary judgment. The subsequent preparation for what would likely be a multi-week trial, would have caused the action to persist for several more years before the Class could possibly receive any recovery. Such a lengthy and highly uncertain process would not serve the best interests of the Class compared to the immediate, certain monetary benefits of the Settlement. *See Strougo v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("even if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery"); *Hicks v. Morgan Stanley*, 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs [and] justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action.").

Accordingly, the Rule 23(e)(2)(C)(i) factor, as well as the first, fourth and fifth *Grinnell* factors, all weigh in favor of final approval.

4895-9441-9005.v1

**d.     The Proposed Method for Distributing Relief Is Effective**

With respect to Rule 23(e)(2)(C)(ii), Lead Plaintiff and Lead Counsel have taken appropriate steps to ensure that the Class is notified about the Settlement. Pursuant to the Preliminary Approval Order (ECF 100-1), more than 35,100 copies of the Notice and Proof of Claim were mailed to potential Class Members and nominees, and the Summary Notice was published in *The Wall Street Journal* and transmitted over *PR Newswire*. *See* Declaration of Eric Blow Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date ("Blow Decl."), ¶¶12-13, submitted herewith.[3] Additionally, a settlement-specific website (www.VandaSecuritiesLitigation.com) was created where key Settlement documents were and remain posted, including the Stipulation, Notice, Proof of Claim, and Preliminary Approval Order. *Id.*, ¶16. Class Members have until December 15, 2022 to object to the Settlement or request exclusion from the Class. While that date has not yet passed, to date there have been no objections to the Settlement, and no requests for exclusion. *Id.*, ¶17. Class Members have until December 28, 2022 to submit claim forms. The claims process is similar to that typically used in securities class action settlements. *See Christine Asia*, 2019 WL 5257534, at *14 ("[t]his type of claims processing and method for distributing settlement proceeds is standard in securities and other class actions and is effective"). This factor therefore supports final approval.

**e.     Lead Counsel's Request for an Award of Attorneys' Fees Is Reasonable**

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). Consistent with the Notice, and as

---

[3]    As requested by the Court (September 15 Order at 18 n.11), before mailing the Notice, it was revised on page six to state that a Class Member may electronically file a Proof of Claim form. *See* Blow Decl., ¶4.

discussed in Lead Counsel's fee memorandum, Lead Counsel seeks an award of attorneys' fees in the amount of one-third of the Settlement Amount, and expenses in the amount of $179,885.92, in addition to interest on both amounts, to be paid at the time of award.[4]

As set forth in Lead Counsel's fee memorandum, this request is in line with recent fee awards in this District in similar common-fund cases. *See* September 15 Order at 8 ("[C]ourts in this Circuit frequently find requests for attorney's fees which are approximately one-third of a class action's total settlement . . . to be reasonable."). In addition, the Notice ensures that the Class is fully apprised of the amount of Lead Counsel's request for an award of attorneys' fees. Accordingly, this factor supports final approval of the Settlement.

### f.   The Parties Have No Other Agreements Besides Opt-Outs

Rule 23(e)(2)(C)(iv) requires the consideration of any agreement required to be disclosed under Rule 23(e)(3). As previously disclosed in connection with Lead Plaintiff's motion for preliminary approval of the Settlement, ECF 94 at 6, the parties have entered into a standard supplemental agreement providing that, in the event Class Members with a certain aggregate amount of valid claims opt out of the Settlement, Defendants shall have the option to terminate the Settlement. This agreement has no bearing on the fairness of the Settlement, and as such, this factor weighs in favor of final approval. *See Christine Asia*, 2019 WL 5257534, at *15 (stating that opt-out agreements are "standard in securities class action settlements and ha[ve] no negative impact on the fairness of the Settlement").

---

[4]  The Stipulation provides that any attorneys' fees and expenses awarded by the Court shall be paid to Lead Counsel when the Court executes the Judgment and an Order awarding such fees and expenses. *See* Stipulation, ¶6.2; *see also In re Genworth Fin. Sec. Litig.*, 2016 WL 7187290, at *2 (E.D. Va. Sept. 26, 2016) (ordering that "attorneys' fees and Litigation Expenses awarded above may be paid to Lead Counsel immediately upon entry of this Order").

- 12 -

### g. The Settlement Ensures Class Members Are Treated Equitably

Rule 23(e)(2)(D), the final factor, considers whether class members are treated equitably. As discussed further below in §IV, Lead Counsel developed the Plan of Allocation in consultation with their damages expert to treat Class Members equitably relative to each other by: (i) taking into account the timing of their Vanda common stock purchases, acquisitions, and sales; and (ii) providing that each Authorized Claimant shall receive his, her, or its *pro rata* share of the Net Settlement Fund based on their recognized losses. Lead Plaintiff will be subject to the same formula for distribution of the Net Settlement Fund as every other Class Member. This factor therefore merits granting final approval of the Settlement.

Based on the foregoing, Lead Plaintiff and Lead Counsel respectfully submit that each of the Rule 23(e)(2) factors support granting final approval of the Settlement.

### 2. The Settlement Satisfies the Remaining *Grinnell* Factors

### a. The Lack of Objections to Date Supports Final Approval

The reaction of the class to the settlement "is considered perhaps 'the most significant factor to be weighed in considering its adequacy,'" *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115809, at *7 (S.D.N.Y. Nov. 7, 2007), such that the "'absence of objections may itself be taken as evidencing the fairness of a settlement.'" *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *5 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015).

While the deadline to submit objections and exclusions has not yet passed, no objections have been received to date. Nor have any requests for exclusion been received. Blow Decl., ¶17. This positive reaction of the Class supports approval of the Settlement. *See Yuzary*, 2013 WL

- 13 -

4895-9441-9005.v1

5492998, at *6 (the "favorable response" from the class "demonstrates that the class approves of the settlement and supports final approval"); *Facebook*, 343 F. Supp. 3d at 410 ("[t]he overwhelming positive reaction – or absence of a negative reaction – weighs strongly in favor" of final approval).

### b. Lead Plaintiff Had Sufficient Information to Make an Informed Decision Regarding the Settlement

Under the third *Grinnell* factor, "'the question is whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement.'" *In re Bear Stearns Cos., Inc. Sec., Derivative & ERISA Litig.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012); *Martignago v. Merrill Lynch & Co., Inc.*, 2013 WL 12316358, at *6 (S.D.N.Y. Oct. 3, 2013) ("The pertinent question is 'whether counsel had an adequate appreciation of the merits of the case before negotiating.'"). "To satisfy this factor, parties need not have even engaged in formal or extensive discovery." *In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *7 (S.D.N.Y. Dec. 19, 2014) (noting that in cases brought under the PSLRA, discovery cannot commence until the motion to dismiss is denied).

Lead Plaintiff and Lead Counsel had more than sufficient information to assess the adequacy of the Settlement. As detailed in the Capeci Declaration and as stated above (§III) and as discussed in the September 15 Order (at 10), Lead Plaintiff and Lead Counsel vigorously litigated this action for over three years, including fully briefing both Defendants' motions to dismiss and Lead Plaintiff's motion for class certification and conducting meaningful discovery. With this legal and factual foundation, Lead Plaintiff and Lead Counsel were able to negotiate a substantial settlement after participating in a hard-fought mediation session with Defendants, overseen by an experienced mediator. *Id.* During the mediation, Defendants' Counsel pressed the arguments they had raised in

- 14 -

their motions to dismiss, and in opposition to Lead Plaintiff's motion for class certification, in addition to further arguments they intended to make if the case were to progress. *Id.*

Thus, by the time of the Settlement, Lead Plaintiff was well-versed in the strengths and weaknesses of the case. This factor weighs in favor of final approval.

### c.    Maintaining Class-Action Status Through Trial Presents a Substantial Risk

Lead Plaintiff's ability to maintain class-action status through trial presented a substantial risk in this Litigation. Although Lead Plaintiff believes it would have prevailed on its fully-briefed motion to certify the class, Defendants vigorously opposed the motion. Moreover, even if the motion had been granted, Defendants could still have moved to decertify the class or trim the class period before trial or on appeal, as class certification may be reviewed at any stage of the litigation. *See Christine Asia*, 2019 WL 5257534, at *13 (stating that this risk weighed in favor of final approval because "a class certification order may be altered or amended any time before a decision on the merits"); Fed. R. Civ. P. 23(c) (authorizing a court to decertify a class at any time). "The risk of maintaining class status throughout trial . . . weighs in favor of final approval." *McMahon*, 2010 WL 2399328, at *5.

### d.    Defendants' Ability to Withstand a Greater Judgment

This factor is not dispositive when all other factors favor approval. Even if Defendants could have withstood a greater judgment, however, a "'defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair.'" *Castagna v. Madison Square Garden, L.P.*, 2011 WL 2208614, at *7 (S.D.N.Y. June 7, 2011); *see also Aeropostale*, 2014 WL 1883494, at *9 (courts "generally do not find the ability of a defendant to withstand a greater judgment to be an impediment to settlement when the other factors favor the settlement"). A "defendant is not required to 'empty its coffers' before a settlement can be found adequate." *In re*

- 15 -

*Sony SXRD Rear Projection Television Class Action Litig.*, 2008 WL 1956267, at *8 (S.D.N.Y. May 1, 2008). Here, though Vanda might be able to endure a larger judgment, all other factors favor final approval.

### e.  The Settlement Amount Is Reasonable in View of the Best Possible Recovery and the Risks of Litigation

The adequacy of the amount offered in a settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of strengths and weaknesses of plaintiffs' case." *In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). A court need only determine whether the settlement falls within a "range of reasonableness" that "recognizes the uncertainties of law and fact" in the case and "the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see also Glob. Crossing*, 225 F.R.D. at 461 ("the certainty of [a] settlement amount has to be judged in [the] context of the legal and practical obstacles to obtaining a large recovery").

Here, "[b]ecause Plaintiff[] face[s] serious challenges to establishing liability, consideration of Plaintiff['s] best possible recovery must be accompanied by the risk of non-recovery." *Facebook*, 343 F. Supp. 3d at 414; *see also Bear Stearns*, 909 F. Supp. 2d at 270 (stating this *Grinnell* factor is "a function of both (1) the size of the amount relative to the best possible recovery; and (2) the likelihood of non-recovery"). Indeed, at the time of the parties' Settlement negotiations, Lead Plaintiff's motion to certify the Class was fully briefed and pending, and the outcome of the motion was uncertain. Likewise, the Settlement represents a recovery of approximately 10.2% of reasonably recoverable damages of $112.3 million. Capeci Decl., ¶175.[5] This percentage far

---

[5]  The $112.3 million reasonably recoverable damages was calculated by Plaintiff's damages expert and is consistent with the Plan of Allocation. While maximum damages, accepting all

- 16 -

exceeds the median ratio of settlement amount to NERA-defined Investor Losses in securities class actions of this size over the last ten years of 2.8%. *See* Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review*, at 23, Fig. 21 (NERA Jan. 25, 2022).

Moreover, the $11.5 million Settlement Amount "was agreed upon only after careful consideration, both by competent Lead Counsel and by [a neutral mediator]" – all of whom concluded the Settlement represented a very good recovery for the Class in light of the substantial litigation risks Lead Plaintiff faced. *See Facebook*, 343 F. Supp. 3d at 414; *see also id.* (finding that even if the settlement "amounts to one-tenth – or less – of Plaintiff['s ] potential recovery," such a recovery is within "the range of reasonableness" where "the risks of a zero – or minimal – recovery scenario are real"). This factor weighs in favor of final approval.

## IV. THE PLAN OF ALLOCATION IS FAIR AND ADEQUATE

The standard for approval of the Plan is the same as the standard for approving the Settlement as a whole: namely, "'it must be fair and adequate.'" *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005). "'When formulated by competent and experienced class counsel,' a plan for allocation of net settlement proceeds 'need have only a reasonable, rational basis.'" *Advanced Battery*, 298 F.R.D. at 180; *see also Christine Asia*, 2019 WL 5257534, at *15-*16.

Here, the Plan was prepared with the assistance of Lead Plaintiff's damages expert and has a rational basis, as it is based on the same methodology underlying Lead Plaintiff's measure of damages: the amount of alleged artificial inflation in the price of Vanda common stock during the

---

allegations in Lead Plaintiff's Amended Complaint, is slightly higher at approximately $123.9 million, Defendants estimated damages at zero and/or a significantly lower amount. Capeci Decl., ¶¶158-167.

- 17 -

Class Period.  *See Facebook*, 343 F. Supp. 3d at 414 (plan of allocation was fair where it was "prepared by experienced counsel along with a damages expert – both indicia of reasonableness"). This is a fair method to apportion the Net Settlement Fund among Authorized Claimants, as it is based on, and consistent with, the claims alleged.

The Net Settlement Fund will be distributed to Authorized Claimants who timely submit valid Proofs of Claim that are approved for payment from the Net Settlement Fund under the Plan. Capeci Decl., ¶¶176-177.  The Plan treats all Class Members equitably, as everyone who submits a valid and timely Proof of Claim, and does not otherwise exclude himself, herself, or itself from the Class, will receive a *pro rata* share of the Net Settlement Fund in the proportion that the Authorized Claimant's claim bears to the total of the claims of all Authorized Claimants, so long as such Authorized Claimant's payment amount is $10.00 or more.[6]  *See id.*; *see also* Blow Decl., Ex. A (Notice) at 14.

Lead Plaintiff and Lead Counsel believe that the Plan is fair and reasonable, and respectfully submit that it should be approved by the Court.  Indeed, notably, there have been no objections to the Plan to date, which supports the Court's approval.  *See Veeco*, 2007 WL 4115809, at *7.

## V.    THE COURT SHOULD FINALLY CERTIFY THE CLASS FOR PURPOSES OF EFFECTUATING THE SETTLEMENT

In its motion for preliminary approval of the Settlement, Lead Plaintiff requested that the Court certify the Class for settlement purposes only so that notice of the Settlement, the Settlement Hearing, and the rights of Class Members to object to the Settlement, request exclusion from the

---

[6]    As in *In re GSE Bonds Antitrust Litigation*, 414 F. Supp. 3d 686, 695 (S.D.N.Y. 2019), the $10.00 minimum payment threshold represents "the bare minimum necessary for the claims administrator to process a simple claim." *Id.*  According to Epiq (defined herein), it would not be economical for claims to be paid below this amount, and this is the threshold that Epiq typically uses in administrating securities class action settlements. *See* Blow Decl., ¶18.

- 18 -

4895-9441-9005.v1

Class, or submit Proofs of Claim, could be issued. *See* ECF 94 at 20-22. In the Preliminary Approval Order, the Court addressed the requirements for class certification as set forth in Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure. The Court found that Lead Plaintiff had met the requirements for certification of the Class for purposes of settlement. ECF 100-1, ¶2. Specifically, in the Preliminary Approval Order, the Court preliminarily certified the following class:

> [A]ll persons and entities who purchased or otherwise acquired Vanda common stock between November 4, 2015 and February 11, 2019, inclusive, and who were allegedly damaged thereby. Excluded from the Class are: Defendants, the officers and directors of Vanda at all relevant times, members of their immediate families, any entity in which any Defendant has or had a controlling interest, and the legal representatives, heirs, successors-in-interest or assigns of any such excluded party.

*Id.* In addition, the Court preliminarily certified Lead Plaintiff as class representative and Lead Counsel as class counsel. *Id.*, ¶5.

Since the Court's entry of the Preliminary Approval Order, nothing has changed to alter the propriety of the Court's preliminary certification of the Class for settlement purposes. Thus, for all of the reasons stated in Lead Plaintiff's motion for preliminary approval (incorporated herein by reference), Lead Plaintiff respectfully requests that the Court affirm its preliminary certification and finally certify the Class for purposes of carrying out the Settlement pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3), and appoint Lead Plaintiff as class representative and Lead Counsel as class counsel.

## VI.    NOTICE TO THE CLASS SATISFIES THE REQUIREMENTS OF RULE 23 AND DUE PROCESS

Rule 23 requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort," Fed. R. Civ. P. 23(c)(2)(B), and that it be directed to class members in a "reasonable manner." Fed. R. Civ. P. 23(e)(1)(B). Notice of a settlement satisfies Rule 23(e) and due process where it fairly apprises "'members of the class of the terms of the proposed settlement and of the

4895-9441-9005.v1

options that are open to them in connection with the proceedings.'" *Wal-Mart Stores*, 396 F.3d at 114; *Vargas v. Capital One Fin. Advisors*, 559 F. App'x 22, 26-27 (2d Cir. 2014). Notice is adequate "if the average person understands the terms of the proposed settlement and the options provided to class members thereunder." *In re Merrill Lynch Tyco Rsch. Sec. Litig.*, 249 F.R.D. 124, 133 (S.D.N.Y. 2008) (citing *Wal-Mart Stores*, 396 F.3d at 114).

The Notice and the method used to disseminate the Notice to potential Class Members satisfy these standards. The Court-approved Notice and Proof of Claim (the "Notice Packet") amply inform Class Members of, among other things: (i) the pendency of the Litigation; (ii) the nature of the Litigation and the Class' claims; (iii) the essential terms of the Settlement; (iv) the proposed Plan; (v) Class Members' rights to request exclusion from the Class or object to the Settlement, the Plan, or the requested attorneys' fees or expenses; (vi) the binding effect of a judgment on Class Members; and (vii) information regarding Lead Counsel's application for an award of attorneys' fees and expenses. The Notice also provides specific information regarding the date, time, and place of the Settlement Hearing, and sets forth the procedures and deadlines for: (i) submitting a Proof of Claim; (ii) requesting exclusion from the Class; and (iii) objecting to any aspect of the Settlement, including the proposed Plan and the request for attorneys' fees and expenses.

The Notice also contains all the information required by the PSLRA, including: (i) a statement of the amount to be distributed, determined in the aggregate and on an average per share basis; (ii) a statement of the potential outcome of the case; (iii) a statement indicating the attorneys' fees and expenses sought; (iv) identification and contact information of counsel; and (v) a brief statement explaining the reasons why the parties are proposing the Settlement.

In accordance with the Preliminary Approval Order, Epiq Class Action & Claims Solutions, Inc. ("Epiq"), the Court-approved Claims Administrator, commenced the mailing of the Notice

- 20 -

4895-9441-9005.v1

Packet by First-Class Mail to potential Class Members, brokers, and nominees on September 29, 2022. As of November 29, 2022, more than 35,100 copies of the Notice Packet have been mailed. Blow Decl., ¶12. Epiq also published the Summary Notice in *The Wall Street Journal* and transmitted it over *PR Newswire*. *Id.*, ¶13, Ex. B. Additionally, Epiq posted the Notice Packet, as well as other important documents, on the website maintained for the Settlement. *Id.*, ¶16.

The combination of individual First-Class Mail to all potential Class Members who could be identified with reasonable effort, supplemented by mailed notice to brokers and nominees and publication of the Summary Notice in a relevant, widely-circulated publication and internet newswire, was "the best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see also Padro v. Astrue*, 2013 WL 5719076, at *3 (E.D.N.Y. Oct. 18, 2013) ("'Notice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members.'"). Indeed, this method of providing notice has been routinely approved for use in securities class actions and other similar class actions. *E.g.*, *Christine Asia*, 2019 WL 5257534, at *16 (finding that direct First-Class Mail combined with print and Internet-based publication of settlement documents was "the best notice practicable under the circumstances"); *Dornberger v. Metro Life Ins. Co.*, 203 F.R.D. 118, 123-24 (S.D.N.Y. 2001) (same).

## VII.    CONCLUSION

The $11.5 million Settlement obtained by Lead Plaintiff and Lead Counsel represents a substantial recovery for the Class, particularly in light of the significant litigation risks Lead Plaintiff faced, including the very real risk of the Class receiving no recovery at all. For the foregoing

- 21 -

reasons, Lead Plaintiff respectfully requests that the Court approve the proposed Settlement and Plan as fair, reasonable, and adequate.

DATED:  December 1, 2022

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
MICHAEL G. CAPECI


                    s/ Michael G. Capeci
                  MICHAEL G. CAPECI

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com
mcapeci@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
THEODORE J. PINTAR
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
tedp@rgrdlaw.com

Lead Counsel for Lead Plaintiff

4895-9441-9005.v1

CERTIFICATE OF SERVICE

I, Michael G. Capeci, hereby certify that on December 1, 2022, I authorized a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel registered to receive such notice.

_s/ Michael G. Capeci_
MICHAEL G. CAPECI