UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————— x

KENNETH GORDON, Individually and on
Behalf of All Others Similarly Situated,

                        Plaintiff,

    vs.

VANDA PHARMACEUTICALS, INC., and
MIHAEL H. POLYMEROPOULOS,

                      Defendants.

———————————————————— x

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Civil Action No. 1:19-cv-01108-FB-LB

<u>CLASS ACTION</u>

MEMORANDUM OF LAW IN SUPPORT
OF LEAD COUNSEL'S APPLICATION
FOR AN AWARD OF ATTORNEYS' FEES
AND EXPENSES AND AN AWARD TO
LEAD PLAINTIFF PURSUANT TO 15
U.S.C. §78u-4(a)(4)

**TABLE OF CONTENTS**

                                                                                      **Page**

I.     INTRODUCTION .............................................................................................1

II.    HISTORY AND BACKGROUND OF THE LITIGATION...............................3

III.   ARGUMENT ....................................................................................................3

       A.    Lead Counsel Is Entitled to an Award of Attorneys' Fees and Expenses
             from the Common Fund....................................................................................3

       B.    The Court Should Award a Reasonable Percentage of the Common Fund.............4

       C.    The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-
             the-Fund Method...........................................................................................7

       D.    The Fee Request Is Reasonable When a Lodestar Cross-Check Is Applied............8

       E.    The Relevant Factors Confirm that the Requested Fee Is Reasonable ..................11

             1.    The Time and Labor Expended by Lead Counsel ....................................11

             2.    The Risks of the Litigation ........................................................................12

                   a.    The Contingent Nature of Lead Counsel's Representation
                         Supports the Requested Fee............................................................12

                   b.    Risks of Establishing Liability.......................................................15

                   c.    Risk of Establishing Causation and Damages ...............................15

             3.    The Magnitude and Complexity of the Litigation ....................................16

             4.    The Quality of Representation Supports the Requested Fee ....................17

             5.    Public Policy Considerations ...................................................................18

             6.    The Class' Reaction to the Fee Request to Date Supports the
                   Requested Fee ...........................................................................................19

IV.    LEAD COUNSEL'S EXPENSES WERE REASONABLY INCURRED AND
       NECESSARY TO THE PROSECUTION OF THIS LITIGATION.................19

V.     LEAD PLAINTIFF IS ENTITLED TO A REASONABLE AWARD UNDER 15
       U.S.C. §78u-4(a)(4) .........................................................................................20

VI.    CONCLUSION.................................................................................................22

4863-9796-4093.v1

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Anixter v. Home-Stake Prod. Co.*,
77 F.3d 1215 (10th Cir. 1996) ...............................................................................14

*Aponte v. Comprehensive Health Mgmt., Inc.*,
2013 WL 1364147 (S.D.N.Y. Apr. 2, 2013)............................................................12

*Athale v. Sinotech Energy Ltd., et al.*,
2013 WL 11310686 (S.D.N.Y. Sept. 4, 2013)...........................................................9

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299 (1985)..................................................................................................4

*Blum v. Stenson*,
465 U.S. 886 (1984)...............................................................................................5, 7

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)..................................................................................................3

*Brown v. Phillips Petroleum Co.*,
838 F.2d 451 (10th Cir. 1988) .................................................................................6

*Chatelain v. Prudential-Bache Sec. Inc.*,
805 F. Supp. 209 (S.D.N.Y. 1992)..........................................................................16

*Christine Asia Co., Ltd. v. Yun Ma*,
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019).........................................................16

*City of Providence v. Aeropostale, Inc.*,
2014 WL 1883494 (S.D.N.Y. May 9, 2014),
*aff'd sub nom. Arbuthnot v. Pierson*,
607 F. App'x 73 (2d Cir. 2015) .................................................................3, 5, 8, 17

*Cornwell v. Credit Suisse Grp., et al.*,
2011 WL 13263367 (S.D.N.Y. July 20, 2011) .........................................................9

*Davis v. J.P. Morgan Chase & Co.*,
827 F. Supp. 2d 172 (W.D.N.Y. 2011).................................................................5, 10

*Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)....................................................................................13

4863-9796-4093.v1

**Page**

*Faught v. Am. Home Shield Corp.*,
  668 F.3d 1233 (11th Cir. 2011) ...................................................................................6

*Fresno Cnty. Emps' Ret. Ass'n. v. Isaacson/Weaver Family Tr.*,
  925 F.3d 63 (2d Cir. 2019),
  *cert denied*, __U.S.__, 140 S. Ct. 385 (2019)....................................................3, 4, 6

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000)............................................................................. *passim*

*Harman v. Lyphomed, Inc.*,
  945 F.2d 969 (7th Cir. 1991) ...................................................................................5

*Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings, Inc., et al.*,
  2022 WL 4136175 (S.D.N.Y. Feb. 14, 2022)...........................................................7

*Hayes v. Harmony Gold Mining Co.*,
  509 F. App'x 21 (2d Cir. 2013) ...............................................................................4

*Hicks v. Morgan Stanley*,
  2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005).....................................................4, 21

*Hubbard v. BankAtlantic Bancorp, Inc.*,
  688 F.3d 713 (11th Cir. 2012) ...............................................................................14

*In re Am. Bank Note Holographics, Inc.*,
  127 F. Supp. 2d 418 (S.D.N.Y. 2001)..................................................................6, 13

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
  2010 WL 5060697 (S.D.N.Y. Dec. 2, 2010) ...........................................................20

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
  2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)...............................................................16

*In re AremisSoft Corp. Sec. Litig.*,
  210 F.R.D. 109 (D.N.J. 2002).................................................................................10

*In re Bayer AG Sec. Litig.*,
  2008 WL 5336691 (S.D.N.Y. Dec. 15, 2008) .........................................................16

*In re Bisys Sec. Litig.*,
  2007 WL 2049726 (S.D.N.Y. July 16, 2007) ...........................................................17

4863-9796-4093.v1

**Page**

*In re China Sunergy Sec. Litig.*,
   2011 WL 1899715 (S.D.N.Y. May 13, 2011) ..........................................................................19

*In re Colgate-Palmolive Co. ERISA Litig.*,
   36 F. Supp. 3d 344 (S.D.N.Y. 2014)................................................................................7, 8

*In re Comverse Tech., Inc. Sec. Litig.*,
   2010 WL 2653354 (E.D.N.Y. June 24, 2010) ...................................................................9, 12

*In re Cont'l Ill. Sec. Litig.*,
   962 F.2d 566 (7th Cir. 1992) ..........................................................................................13

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)................................................................. *passim*

*In re Glob. Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ....................................................................................6, 20

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995)................................................................................................5

*In re Ikon Office Sols., Inc. Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000)...................................................................................10, 16

*In re Indep. Energy Holdings PLC Sec. Litig.*,
   302 F. Supp. 2d 180 (S.D.N.Y. 2003)................................................................................20

*In re Interpublic Sec. Litig.*,
   2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004).......................................................................4

*In re JDS Uniphase Corp. Sec. Litig.*,
   2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) ...................................................................14

*In re Marsh ERISA Litig.*,
   265 F.R.D. 128 (S.D.N.Y. 2010) ...............................................................................15, 18

*In re Oracle Corp. Sec. Litig.*,
   2009 WL 1709050 (N.D. Cal. June 19, 2009),
   *aff'd*, 627 F.3d 376 (9th Cir. 2010)..................................................................................14

*In re PPDAI Grp. Inc. Sec. Litig.*,
   2022 WL 198491 (E.D.N.Y. Jan. 21, 2022) ........................................................................7

4863-9796-4093.v1

**Page**

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  991 F. Supp. 2d 437 (E.D.N.Y. 2014) ...............................................................5

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
  985 F. Supp. 410 (S.D.N.Y. 1997).....................................................................13

*In re Rite Aid Corp. Sec. Litig.*,
  396 F.3d 294 (3d Cir. 2005)................................................................................19

*In re Sadia S.A. Sec. Litig.*,
  2011 WL 6825235 (S.D.N.Y. Dec. 28, 2011) .....................................................13

*In re Telik, Inc. Sec. Litig.*,
  576 F. Supp. 2d 570 (S.D.N.Y. 2008)....................................................3, 9, 10, 12

*In re Thirteen Appeals Arising*,
  56 F.3d 295, 305 (1st Cir. 1995) ..........................................................................5

*In re Veeco Instruments Inc. Sec. Litig.*,
  2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007)...........................................3, 6, 18, 21

*J. I. Case Co. v. Borak*,
  377 U.S. 426 (1964).............................................................................................4

*Johnston v. Comerica Mortg. Corp.*,
  83 F.3d 241 (8th Cir. 1996) .................................................................................5

*Machniewicz v. Uxin Ltd., et al.*,
  2021 WL 9409860 (E.D.N.Y. Sept. 8, 2021) .......................................................8

*Maley v. Del Glob. Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002)........................................................6, 10, 18

*Missouri v. Jenkins*,
  491 U.S. 274 (1989).........................................................................................7, 9

*Powers v. Eichen*,
  229 F.3d 1249 (9th Cir. 2000) .............................................................................5

*Rawlings v. Prudential-Bache Props., Inc.*,
  9 F.3d 513 (6th Cir. 1993) ...................................................................................5

*Robbins v. Koger Props., Inc.*,
  116 F.3d 1441 (11th Cir. 1997) ..........................................................................14

4863-9796-4093.v1

**Page**

*Savoie v. Merchs. Bank*,
166 F.3d 456 (2d Cir. 1999)..................................................................................5

*Spicer v. Pier Sixty LLC*,
2012 WL 4364503 (S.D.N.Y. Sept. 14, 2012)......................................................9

*Swedish Hosp. Corp. v. Shalala*,
1 F.3d 1261 (D.C. Cir. 1993).................................................................................6

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
2004 WL 1087261 (S.D.N.Y. May 14, 2004) ................................................13, 18

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007).............................................................................................4

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
669 F.3d 632 (5th Cir. 2012) ...............................................................................5

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005)................................................................................4, 5

*Woburn Ret. Sys. v. Salix Pharms., Ltd.*,
2017 WL 3579892 (S.D.N.Y. Aug. 18, 2017).....................................................18

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
§78u-4(a)(4) ...................................................................................................1, 20
§78u-4(a)(6) .........................................................................................................6

4863-9796-4093.v1

Lead Counsel, Robbins Geller Rudman & Dowd LLP, respectfully submits this memorandum in support of its application for an award of attorneys' fees and expenses, and for an award to Lead Plaintiff Teamsters Local Union No. 727 Pension Fund ("Lead Plaintiff" or "Plaintiff") in connection with its representation of the Class.

## I.    INTRODUCTION

After three years of hard-fought litigation, Lead Counsel secured an $11,500,000 settlement for the benefit of the Class.  The Settlement is a very good result given the serious obstacles to recovery, the numerous credible defenses to liability and damages that Defendants have articulated, including those in their motion to dismiss and in their opposition to Lead Plaintiff's motion for class certification, which arguments Defendants no doubt would have also raised at summary judgment. The recovery also represents a significant percentage of estimated recoverable damages suffered by the Class.[1]  In recognition of these risks and the result obtained, Lead Counsel now respectfully moves this Court for an award of attorneys' fees of one-third of the Settlement Amount, and $179,885.92 in expenses that were reasonably and necessarily incurred in prosecuting and resolving the Litigation, plus interest on both amounts.  As set forth below, the relevant factors articulated in the Second Circuit's *Goldberger* decision strongly support the requested awards.  *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).  In addition, Lead Plaintiff seeks an award of $10,000 pursuant to 15 U.S.C. §78u-4(a)(4) in connection with its representation of the Class.

---

[1]    Capitalized terms used herein are defined and have the meanings contained in the Stipulation and Agreement of Settlement, dated May 5, 2022 (ECF 96) (the "Stipulation"), the accompanying Declaration of Michael G. Capeci in Support of: (1) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation; and (2) Lead Counsel's Application for an Award of Attorneys' Fees and Expenses and an Award to Lead Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4) (the "Capeci Declaration"), and in the Memorandum of Law in Support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation ("Settlement Memorandum"), submitted concurrently herewith.  Internal citations are omitted and emphasis is added throughout unless otherwise noted.

- 1 -

4863-9796-4093.v1

Not only does this fee request have the full support of Lead Plaintiff,[2] following an extensive Court-ordered notice program in which 35,110 Notices have been mailed to potential Class Members, to date not a single Class Member has objected to the requested fees or expenses (not to exceed $250,000, as set forth in the Notice).[3]

As detailed below, in the Capeci Declaration, and in the Settlement Memorandum, the Settlement represents a very good result for Lead Plaintiff and the Class, particularly when judged in the context of the significant litigation risks.  For instance, the *Qui Tam* action, the allegations from which formed the primary basis for the off-label marketing claim, was dismissed.  Capeci Decl., ¶145.  In addition, Lead Counsel faced the risk that it would not be able to secure testimony from certain former Vanda employees who had intimate knowledge of the key events in the Litigation. *Id.*, ¶142.  By contrast, the $11.5 million Settlement that Lead Counsel obtained provides the Class with an immediate and certain recovery.  In achieving this result, Lead Counsel worked more than 4,800 hours over the course of three-plus years on this complex litigation, all on a contingency basis, with no guarantee of ever being paid.

Lead Counsel believes that an attorneys' fee award of one-third, together with payment of its litigation expenses, properly reflects the many significant risks taken by Lead Counsel in prosecuting the Action, as well as the result achieved.  When examined under either of this Circuit's methods of contingency fee determination (*i.e.*, percentage of the fund or lodestar), it is abundantly clear that an award of fees of one-third is reasonable, and well within the range of attorneys' fees recently awarded in similar complex, securities and other class actions.  In addition, the expenses requested

---

[2]  *See* Declaration of Robert J. Laino in Support of Motion for Final Approval ("Laino Decl."), ¶9.

[3]  As of the date of this fee memorandum, which is before the December 15, 2022 deadline for filing objections, Lead Counsel has not received any objections.  If any timely objections are received from Class Members, Lead Counsel will address them in its reply brief, which will be filed with the Court no later than December 29, 2022.

- 2 -

by Lead Counsel are reasonable in amount and were necessarily incurred, and the request for an award by Lead Plaintiff adequately reflects its efforts and contributions to the Litigation.

## II.    HISTORY AND BACKGROUND OF THE LITIGATION

A detailed description of Lead Plaintiff's claims and Lead Counsel's prosecution of this case (including key pleadings, motions, discovery and mediation efforts) is set forth in the accompanying Capeci Declaration.  For the sake of brevity, the Court is respectfully referred to that declaration.

## III.    ARGUMENT

### A.    Lead Counsel Is Entitled to an Award of Attorneys' Fees and Expenses from the Common Fund

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Goldberger*, 209 F.3d at 47; *Fresno Cnty. Emps' Ret. Ass'n. v. Isaacson/Weaver Family Tr.*, 925 F.3d 63, 68 (2d Cir. 2019), *cert denied*, __U.S.__, 140 S. Ct. 385 (2019).  The purpose of the common fund doctrine is to fairly and adequately compensate class counsel for services rendered and to ensure that all class members contribute equally towards the costs associated with litigation pursued on their behalf.  *See Goldberger*, 209 F.3d at 47; *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *2 (S.D.N.Y. Nov. 7, 2007).

Courts have recognized that, in addition to providing just compensation, awards of fair attorneys' fees from a common fund also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future alleged misconduct of a similar nature.  *See City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *10-*11 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 585 (S.D.N.Y. 2008); *Veeco*, 2007 WL

- 3 -

4863-9796-4093.v1

4115808, at *2.  Indeed, the Supreme Court has emphasized that private securities actions, such as this one, provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'"  *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (quoting *J. I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964)); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007).

Courts in this Circuit have consistently adhered to this precedent.  *See In re Interpublic Sec. Litig.*, 2004 WL 2397190, at *10 (S.D.N.Y. Oct. 26, 2004) ("It is well established that where an attorney creates a common fund from which members of a class are compensated for a common injury, the attorneys who created the fund are entitled to 'a reasonable fee – set by the court – to be taken from the fund.'"); *Fresno Cnty.*, 925 F.3d at 68.  Fairly compensating Lead Counsel for the risks it took in bringing this Action is essential because "[s]uch actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class." *Hicks v. Morgan Stanley*, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005).

**B.      The Court Should Award a Reasonable Percentage of the Common Fund**

Lead Counsel respectfully submits that the Court should award a fee based on a percentage of the common fund obtained.  Courts routinely find that the percentage-of-the-fund method, under which counsel is awarded a percentage of the fund that they created, is the preferred means to determine a fee because it "'directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation.'" *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *see also Hayes v. Harmony Gold Mining Co.*, 509 F. App'x 21, 24 (2d Cir. 2013) ("[A]s the district court recognized, the prospect of a percentage fee award from a common settlement fund, as here, aligns the interests of class counsel with those of the class.").  The percentage approach also recognizes that the quality of counsel's

4863-9796-4093.v1

services is measured best by the results achieved and is most consistent with the system typically used in the marketplace to compensate attorneys in non-class contingency cases.[4]

The Supreme Court has indicated that attorneys' fees in common-fund cases generally should be based on a percentage of the fund. *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("[U]nder the 'common fund doctrine,' . . . a reasonable fee is based on a percentage of the fund bestowed on the class."). The Second Circuit has expressly approved the percentage method, recognizing that "the lodestar method proved vexing" and had resulted in "an inevitable waste of judicial resources." *Goldberger*, 209 F.3d at 48-49 (holding that the percentage-of-the-fund method may be used to determine appropriate attorneys' fees, although the lodestar method may also be used); *Savoie v. Merchs. Bank*, 166 F.3d 456, 460 (2d Cir. 1999) (stating that the "percentage-of-the-fund method has been deemed a solution to certain problems that may arise when the lodestar method is used in common fund cases"). Indeed, the Second Circuit has acknowledged that the "trend in this Circuit is toward the percentage method." *Wal-Mart Stores*, 396 F.3d at 121; *see also City of Providence*, 2014 WL 1883494, at *11-*12.[5]

---

[4]    *See, e.g.*, *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 440 (E.D.N.Y. 2014) ("The percentage method better aligns the incentives of plaintiffs' counsel with those of the class members because it bases the attorneys' fees on the results they achieve for their clients, rather than on the number of motions they file, documents they review, or hours they work. . . .  The percentage method also accords with the overwhelming prevalence of contingency fees in the market for plaintiffs' counsel."); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 184 (W.D.N.Y. 2011) (the "advantages of the percentage method . . . are that it provides an incentive to attorneys to resolve the case efficiently and to create the largest common fund out of which payments to the class can be made, and that it is consistent with the system typically used by individual clients to compensate their attorneys").

[5]    All federal Courts of Appeal to consider the matter have approved the percentage method, with two circuits requiring its use in common-fund cases. *See In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 (1st Cir. 1995); *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821-22 (3d Cir. 1995); *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 644 (5th Cir. 2012); *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 515-16 (6th Cir. 1993); *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975 (7th Cir. 1991); *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996); *Powers v. Eichen*, 229

- 5 -

The Second Circuit reaffirmed these principles in rejecting an objection to the percentage approach for awarding attorneys' fees in PSLRA cases. *See Fresno Cnty.*, 925 F.3d at 63.  In *Fresno*, the Second Circuit confirmed the propriety of the percentage approach for awarding attorneys' fees in PSLRA cases (*id.* at 72).

The determination of attorneys' fees using the percentage-of-the-fund method is also supported by the PSLRA, which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a ***reasonable percentage*** of the amount" recovered for the class.  15 U.S.C. §78u-4(a)(6).  Courts have concluded that, by drafting the PSLRA in such a manner, Congress expressed a preference for the percentage, as opposed to the lodestar, method of determining attorneys' fees in securities class actions.  *See Veeco*, 2007 WL 4115808, at *3; *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 465-66 (S.D.N.Y. 2004); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002); *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 430 (S.D.N.Y. 2001).

Given the Supreme Court's indication that the percentage method is proper in this type of case, the Second Circuit's explicit approval of the percentage method in *Goldberger* and *Fresno*, as well as the trend among the district courts in this Circuit and the language of the PSLRA, the Court should award Lead Counsel attorneys' fees based on a percentage of the fund.

---

F.3d 1249, 1256 (9th Cir. 2000); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454-56 (10th Cir. 1988); *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1242 (11th Cir. 2011); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269-71 (D.C. Cir. 1993).  The Eleventh and District of Columbia Circuits require the use of the percentage method in common-fund cases. *See Faught*, 668 F.3d at 1242; *Swedish Hosp.*, 1 F.3d at 1271.

- 6 -

4863-9796-4093.v1

C.    The Requested Attorneys' Fees Are Reasonable Under the
Percentage-of-the-Fund Method

The Supreme Court has recognized that an appropriate court-awarded fee is intended to approximate what counsel would receive if they were bargaining for their services in the marketplace. *See Missouri v. Jenkins*, 491 U.S. 274, 285-86 (1989). An "'ideal proxy' for the award should reflect the fees upon which common fund plaintiffs negotiating in an efficient market for legal services would agree." *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 352 (S.D.N.Y. 2014). If this were a non-class action, the customary fee arrangement would be contingent and in the range of one-third of the recovery. *See Blum*, 465 U.S. at 903 ("'In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery.'") (Brennan, J., concurring).

Here, the Court does not need an "ideal proxy" for what counsel would receive if they were bargaining for their services in the marketplace, because Lead Plaintiff supports the requested fee percentage. Laino Decl., ¶9. Moreover, the requested one-third fee is well within the range of percentage fees awarded by courts within the Second Circuit. *See* September 15, 2022 Order, at 8 ("[C]ourts in this Circuit frequently find requests for attorney's fees which are approximately one-third of a class action's total settlement – the maximum amount lead counsel will seek here – to be reasonable."). This is also true of recent comparable securities cases. *Erlandson v. Triterras, Inc., et al.*, No. 7:20-cv-10795-CS, ECF 82 at 1 (¶4) (S.D.N.Y. Sept. 8, 2022) (awarding one-third of $9 million settlement); *Panther Partners Inc. v. Jianpu Tech. Inc., et al.*, No. 1:18-cv-09848-PGG, ECF 130 at 1 (¶4) (S.D.N.Y. May 12, 2022) (awarding one-third of $7.5 million settlement); *Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings, Inc., et al.*, 2022 WL 4136175, at *1 (S.D.N.Y. Feb. 14, 2022) (awarding one-third of $18 million settlement); *In re PPDAI Grp. Inc. Sec. Litig.*, 2022 WL 198491, at *16-*17 (E.D.N.Y. Jan. 21, 2022) (noting a one-third fee

- 7 -

"constitutes a proportion routinely approved as reasonable"); *Machniewicz v. Uxin Ltd., et al.*, 2021 WL 9409860, at \*4 (E.D.N.Y. Sept. 8, 2021) (awarding 33.33% of $9.5 million settlement).

> ### D.     The Fee Request Is Reasonable When a Lodestar Cross-Check Is Applied

When using the percentage-of-the-fund method, courts can also look to "hours as a 'cross check' on the reasonableness of the requested percentage," *Goldberger*, 209 F.3d at 50, "to ensure that an otherwise reasonable percentage fee would not lead to a windfall." *Colgate-Palmolive*, 36 F. Supp. 3d at 353.  When used as a "mere cross-check, the hours documented need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50.

The lodestar method requires a two-part analysis:  "first, to determine the lodestar, the court multiplies the number of hours each attorney spent on the case by each attorney's reasonable hourly rate; and second, the court adjusts that lodestar figure (by applying a multiplier) to reflect such factors as the risk and contingent nature of the litigation, the result obtained, and the quality of the attorney's work."  *City of Providence*, 2014 WL 1883494, at \*13.  Performing the lodestar calculation here confirms that the fee requested by Lead Counsel is reasonable and should be approved.

Lead Counsel and its paraprofessionals have spent, in the aggregate, 4,844 hours in the prosecution of this case, producing a total lodestar amount of $3,023,451.00 when multiplied by counsel's billing rates.  *See* accompanying Declaration of Michael G. Capeci Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses, ¶4 ("Robbins Geller Decl.").[6]  The amount of attorneys' fees requested by Lead Counsel herein, $3,833,333.33, represents a multiplier of 1.27 to Lead Counsel's lodestar.[7]

---

[6]    In determining whether the rates are reasonable, the Court should take into account the attorneys' professional reputation, experience, and status.  Here, the lawyers and paraprofessionals at Lead

- 8 -

In cases of this nature, fees representing multiples above lodestar are regularly awarded to reflect the contingency-fee risk and other relevant factors. *See, e.g.*, *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at \*26 (S.D.N.Y. Nov. 8, 2010) ("'a positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors'"); *In re Comverse Tech., Inc. Sec. Litig.*, 2010 WL 2653354, at \*5 (E.D.N.Y. June 24, 2010) ("Where, as here, counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar.").

The 1.27 multiplier reflected here falls within the range of multipliers found reasonable for cross-check purposes by courts in this Circuit and elsewhere and is fully justified here given the effort required, the risks faced and overcome, and the result achieved. Indeed, "'[i]n contingent litigation, lodestar multipliers of over 4 are routinely awarded by courts[.]'" *Spicer v. Pier Sixty LLC*, 2012 WL 4364503, at \*4 (S.D.N.Y. Sept. 14, 2012) (quoting *Telik*, 576 F. Supp. 2d at 590); *see also Athale v. Sinotech Energy Ltd., et al.*, 2013 WL 11310686, at \*9 (S.D.N.Y. Sept. 4, 2013) (awarding multiplier of 5.65, finding it "not unreasonable under the particular facts of this case" and "sufficient to compensate counsel for the work they have put in and the risks they took, as well as to reward them for zealously litigating the dispute and timely resolving the action'"); *Cornwell v. Credit Suisse Grp., et al.*, 2011 WL 13263367, at \*2 (S.D.N.Y. July 20, 2011) (awarding fee

Counsel's firm are experienced securities practitioners (*see* September 15 Order, at 5) with track records of success, and they are among the most prominent and well-regarded securities practitioners in the nation. Robbins Geller Decl., Ex. F (firm resume). Lead Counsel's hourly rates are reasonable and have recently been judicially approved. *See* Hr'g Tr. at 160:22-24, *In re Am. Realty Cap. Props., Inc. Litig.*, No. 15-MC-40(AKH) (S.D.N.Y. Jan. 23, 2019) ("I find your lodestar reasonable, the rates appropriate and, in relationship to the work that you did, reasonable.").

[7]    The Supreme Court and other courts have held that the use of current rates is proper since such rates compensate for inflation and the loss of use of funds. *See Jenkins*, 491 U.S. at 283-84.

- 9 -

4863-9796-4093.v1

representing a multiplier of 4.7); *Davis*, 827 F. Supp. 2d at 185 (awarding fee representing multiplier of 5.3, which was "not atypical" in similar cases); *Telik*, 576 F. Supp. 2d at 590 ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts, including this Court."); *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 135 (D.N.J. 2002) (4.3 multiplier was appropriate in light of the contingency risk and the quality of the result achieved).

In *Maley*, after almost one year of litigation, the parties reached a "relatively quick settlement" prior to the commencement of extensive discovery. *See Maley*, 186 F. Supp. 2d at 363-64. In awarding a fee of one-third that resulted in a lodestar cross-check multiplier of 4.65, the court held that "[i]n the context of a complex class action, early settlement has far reaching benefits in the judicial system." *Id.* at 373. The court held that the multiplier of 4.65 was "well within the range awarded by courts in this Circuit and courts throughout the country." *Id.* at 369. Here, while shouldering the risk of non-recovery, Lead Counsel litigated this case on a contingency basis for over three years. Accordingly, the relatively modest lodestar multiplier here is well within the range awarded by courts in this Circuit, and thus Lead Counsel's fee is reasonable when the cross-check is performed.

The lodestar/multiplier is to be used merely as a cross-check on reasonableness. To find otherwise undermines the principles supporting the percentage approach and encourages needless lodestar building litigation. *See also In re Ikon Office Sols., Inc. Sec. Litig.*, 194 F.R.D. 166, 196 (E.D. Pa. 2000) ("The court will not reduce the requested award simply for the sake of doing so when every other factor ordinarily considered weighs in favor of approving class counsel's request of thirty percent."). Lead Counsel invested substantial time and effort prosecuting this Action against Defendants to a successful completion. The requested fee, therefore, is manifestly reasonable, whether calculated as a percentage of the fund or in relation to Lead Counsel's lodestar.

- 10 -

As detailed in the Capeci Declaration, based on its efforts in litigating this case and producing an exceptional result, Lead Counsel believes the requested fee, whether calculated as a percentage of the fund or in relation to counsel's lodestar, is manifestly reasonable.  Moreover, as discussed below, each of the factors cited by the Second Circuit in *Goldberger* also strongly supports a finding that the requested fee is reasonable.

**E.    The Relevant Factors Confirm that the Requested Fee Is Reasonable**

In *Goldberger*, the Second Circuit explained that whether the court uses the percentage-of-the-fund method or the lodestar approach, it should continue to consider the traditional criteria that reflect a reasonable fee in common fund cases, including:

- the time and labor expended by counsel;

- the risks of the litigation;

- the magnitude and complexity of the litigation;

- the requested fee in relation to the settlement;

- the quality of representation; and

- public policy considerations.

*Goldberger*, 209 F.3d at 50.  Consideration of these factors demonstrates that the requested fee is fair and reasonable.

**1.    The Time and Labor Expended by Lead Counsel**

Lead Counsel has expended substantial time and effort pursuing the Litigation on behalf of the Class.  Since the Litigation commenced over three years ago, Lead Counsel and its paraprofessionals devoted in excess of 4,800 hours to prosecuting the Class' claims.  As detailed in the Capeci Declaration, submitted herewith, Lead Counsel, among other things:

- conducted an extensive factual investigation into the underlying facts;

- 11 -

- researched the law relevant to the claims asserted and Defendants' potential defenses thereto, and drafted a detailed amended complaint;

- successfully briefed Defendants' motion to dismiss, which the Court largely denied;

- conducted substantial fact discovery, including reviewing and analyzing approximately 500,000 pages of documents produced by Defendants and several third parties and taking or defending four depositions;

- participated in lengthy arm's-length settlement negotiations, including a mediation with Jed D. Melnick and follow-up negotiations with the assistance of Mr. Melnick; and

- negotiated and drafted the Stipulation and exhibits thereto, as well as the motion for preliminary approval of the Settlement.

*See generally* Capeci Decl.

Throughout the Litigation, Lead Counsel staffed the matter efficiently and avoided any unnecessary duplication of effort. Additional hours and resources will necessarily be expended assisting Members of the Class with the completion and submission of their Proof of Claim and Release forms, shepherding the claims process, and responding to Class Member inquiries. *See Aponte v. Comprehensive Health Mgmt., Inc.*, 2013 WL 1364147, at \*6 (S.D.N.Y. Apr. 2, 2013). The significant amount of time and effort devoted to this case by Lead Counsel to obtain an $11.5 million recovery, work that will not end with the Court's approval of the Settlement, confirms that the one-third fee request is reasonable.

### 2. The Risks of the Litigation

#### a. The Contingent Nature of Lead Counsel's Representation Supports the Requested Fee

The risk undertaken in the litigation is often considered the most important *Goldberger* factor. *Goldberger*, 209 F.3d at 54; *Comverse*, 2010 WL 2653354, at \*5; *Telik*, 576 F. Supp. 2d at 592. The Second Circuit has recognized that the risk associated with a case undertaken on a contingent-fee basis is an important factor in determining an appropriate fee award:

4863-9796-4093.v1

> No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.

*Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974). "Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation." *Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004); *Am. Bank Note*, 127 F. Supp. 2d at 433 (concluding it is "appropriate to take this [contingent fee] risk into account in determining the appropriate fee to award"); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 985 F. Supp. 410, 417 (S.D.N.Y. 1997) ("Numerous courts have recognized that the attorney's contingent fee risk is an important factor in determining the fee award."). This risk encompasses not just the risk of no payment, but also the risk of underpayment. *See In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 569-70 (7th Cir. 1992) (reversing district court's fee award where court failed to account for, among other things, risk of underpayment to counsel). Further, when considering the reasonableness of attorneys' fees in a contingency action, the court should consider the risks of the litigation at the time the suit was brought. *See Goldberger*, 209 F.3d at 55; *In re Sadia S.A. Sec. Litig.*, 2011 WL 6825235, at *3 (S.D.N.Y. Dec. 28, 2011).

Lead Counsel undertook this Litigation on a wholly contingent-fee basis, investing a substantial amount of time and money to prosecute a risky complex action with no guarantee of compensation or even the recovery of expenses. Unlike Defendants' counsel, who are paid substantial hourly rates and reimbursed for their expenses on a regular basis, Lead Counsel has not been compensated for any time or expenses since this case began in February 2019, and would have received no compensation or payment of its expenses had this case not been resolved successfully.

- 13 -

From the outset, Lead Counsel understood that it was embarking on a complex, expensive, and lengthy litigation with no guarantee of ever being compensated for investing the time and money the case would require. In undertaking that responsibility, Lead Counsel was obligated to assure that sufficient attorney and paraprofessional resources were dedicated to prosecuting the Litigation and that funds were available to compensate staff and to pay for the considerable costs that a case such as this entails. Under these circumstances, the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis.

In addition to advancing litigation expenses, Lead Counsel faced the possibility that it would receive no attorneys' fees at all. Indeed, it is possible that, if not for this Settlement, the entire case would have been dismissed in response to Defendants' anticipated motion for summary judgment or if a jury had found for Defendants at trial.[8]

Losses in contingent-fee litigations, especially those brought under the PSLRA, are exceedingly expensive. Lead Counsel's assumption of the contingency fee risk here strongly supports the reasonableness of the requested fee. *See Flag Telecom*, 2010 WL 4537550, at *27 ("Courts in the Second Circuit have recognized that the risk associated with a case undertaken on a

---

[8]   Moreover, it is wrong to presume that a law firm handling complex contingent litigation always wins. There are numerous class actions in which lead counsel expended thousands of hours and yet received no remuneration, despite their diligence and expertise. *See, e.g.*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713, 725 (11th Cir. 2012) (affirming judgment as a matter of law following jury verdict partially in plaintiff's favor); *In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010) (court granted summary judgment for defendants after eight years of litigation, after plaintiff's counsel (Robbins Geller) incurred over $7 million in expenses, and worked over 100,000 hours, representing a lodestar of approximately $40 million); *In re JDS Uniphase Corp. Sec. Litig.*, 2007 WL 4788556, at *1 (N.D. Cal. Nov. 27, 2007) (jury verdict for defendants); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1449 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss-causation grounds and judgment entered for defendant); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1233 (10th Cir. 1996) (Tenth Circuit overturned securities-fraud class-action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on basis of 1994 Supreme Court opinion).

- 14 -

contingent fee basis is an important factor in determining an appropriate fee award."); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk.").

### b.    Risks of Establishing Liability

While Lead Plaintiff remains confident in its claims, its ability to prove liability arising out of Defendants' alleged off-label promotion of Fanapt and Helioz, and statements regarding the status of clinical trials of Tradipitant, was far from certain. As detailed in the Capeci Declaration (¶34) and in the Settlement Memorandum (§III.C.1), Defendants raised numerous challenges in their motion to dismiss Lead Plaintiff's amended complaint, including challenges to the falsity of the misstatements and omissions alleged, whether they were made with scienter, and loss causation. Capeci Decl., ¶¶34-37. Indeed, Defendants' motion to dismiss challenged virtually every aspect of Lead Plaintiff's case. *Id.*, ¶34. While Lead Plaintiff was able to overcome this motion, these and other arguments would no doubt be raised again on summary judgment. In addition, the dismissal of the *Qui Tam* action, the allegations for which formed the primary basis for Lead Plaintiff's claims regarding the off-label claim, posed a risk to maintaining that claim. *See* Capeci Decl., ¶145. Lead Plaintiff also faced the risk that it would not be able to secure testimony from certain former Vanda employees who were participants in key events pertinent to the Litigation. *Id.*, ¶142. Therefore, whether Lead Plaintiff ultimately would prove liability under the Securities Exchange Act was far from assured.

### c.    Risk of Establishing Causation and Damages

With respect to proving causation, Defendants would continue to attack the causal link between Defendants' alleged misstatements and the alleged disclosures. For instance, Defendants' opposition to Lead Plaintiff's motion for class certification challenged the price impact of certain

- 15 -

4863-9796-4093.v1

disclosures, among other arguments. *See* Capeci Decl., ¶132; Settlement Memorandum, §III.C.1. Likewise, Defendants would continue to challenge Plaintiff's losses as well as the damages calculations of Lead Counsel's expert which, if accepted, would severely limit, or entirely eliminate, the amount of damages that could be recovered. Defendants would never concede these points and would continue to press this defense at summary judgment and trial.

There is no way to know how a jury would decide these issues. The damage assessments of the parties' respective trial experts would become a "battle of experts." The outcome of such battles is never predictable, and there existed the very real possibility that a jury could be swayed by experts for Defendants to minimize the Class' losses or to show that the losses were attributable to factors other than the alleged misstatements and omissions. Thus, even if Lead Plaintiff prevailed as to liability at trial, the judgment obtained might well be only a fraction of the damages claimed.

### 3. The Magnitude and Complexity of the Litigation

The complexity of the litigation is another factor examined by courts evaluating the reasonableness of attorneys' fees requested by class counsel. *See Chatelain v. Prudential-Bache Sec. Inc.*, 805 F. Supp. 209, 216 (S.D.N.Y. 1992). It is widely recognized that "shareholder actions are notoriously complex and difficult to prove." *In re Bayer AG Sec. Litig.*, 2008 WL 5336691, at *5 (S.D.N.Y. Dec. 15, 2008); *see also Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *18 (S.D.N.Y. Oct. 16, 2019) ("Securities class actions in particular are 'notably difficult and notoriously uncertain.'"). "[S]ecurities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA." *Ikon*, 194 F.R.D. at 194; *see also In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2006 WL 903236, at *9 (S.D.N.Y. Apr. 6, 2006) ("[T]he legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages. These challenges are exacerbated . . . where a number of controlling

4863-9796-4093.v1

decisions have recently shed new light on the standard for loss causation."). This case was no exception. As described herein, this Litigation involved a number of difficult and complex questions concerning liability and damages that would have required extensive additional efforts by Lead Counsel and consultation with experts, including the issue of price impact and other loss causation issues Defendants raised in their motions to dismiss and in opposition to class certification.

The trial of liability issues alone would have involved substantial attorney and expert time, the introduction of voluminous documentary and deposition evidence, vigorously contested motions, and the considerable expenditures of judicial resources. Because this case revolved around "difficult, complex, hotly disputed, and expert-intensive issues," this factor favors awarding a one-third fee. *City of Providence*, 2014 WL 1883494, at *16.

### 4.    The Quality of Representation Supports the Requested Fee

The quality of the representation by Lead Counsel is another important factor that supports the reasonableness of the requested fee. Lead Counsel submits that the quality of the representation here is best evidenced by the quality of the result achieved. *See, e.g.*, *Flag Telecom*, 2010 WL 4537550, at *28; *In re Bisys Sec. Litig.*, 2007 WL 2049726, at *3 (S.D.N.Y. July 16, 2007). Lead Counsel demonstrated a great deal of skill to achieve a settlement at this level in this particular case. The Settlement represents approximately 10.2% of reasonably recoverable damages[9] which is multiples of the median percentage recovery in securities class actions over the last ten years of 2.8%. This stellar result reflects Lead Counsel's experience in securities class actions and complex litigation. *See* Robbins Geller Decl., Ex. F (firm resume); September 15 Order, at 5 (". . . Robbins Geller Rudman & Dowd has 'extensive experience in securities class actions and complex litigation . . . .'"). This Settlement is also attributable to the diligence, determination, hard work, and

---

[9]    *See* Settlement Memorandum at 16-17 and n.5; Capeci Decl., ¶175.

4863-9796-4093.v1

reputation of counsel, who developed, litigated, and successfully negotiated the Settlement of this Litigation and a substantial immediate cash recovery in a very difficult case, without the risk of further litigation. *See Teachers' Ret. Sys.*, 2004 WL 1087261, at *6.

Finally, courts repeatedly recognize that the quality of the opposition faced by plaintiff's counsel should also be taken into consideration in assessing the quality of counsel's performance. *See, e.g.*, *Marsh ERISA*, 265 F.R.D. at 148 ("The high quality of defense counsel opposing Plaintiffs' efforts further proves the caliber of representation that was necessary to achieve the Settlement."); *Veeco*, 2007 WL 4115808, at *7 (among the factors supporting a 30% award of attorneys' fees was that defendants were represented by "one of the country's largest law firms"). Here, Defendants are represented by lawyers from Paul, Weiss, Rifkind, Wharton & Garrison LLP, which presented very skilled defenses and spared no effort in representing its clients. Notwithstanding this formidable opposition, Lead Counsel's ability to present a strong case and to demonstrate its willingness to continue to vigorously prosecute the Litigation through trial and the inevitable appeals enabled Lead Counsel to achieve a very favorable Settlement for the benefit of the Class.

### 5.    Public Policy Considerations

A strong public policy concern exists for rewarding firms for bringing successful securities litigation. *See Woburn Ret. Sys. v. Salix Pharms., Ltd.*, 2017 WL 3579892, at *7 (S.D.N.Y. Aug. 18, 2017) (fee award was "appropriate, and not excessive, to encourage further securities class actions"); *Flag Telecom*, 2010 WL 4537550, at *29 (if the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook"); *Maley*, 186 F. Supp. 2d at 373 ("In considering an award of attorney's fees, the public policy of

vigorously enforcing the federal securities laws must be considered."). Accordingly, public policy favors granting Lead Counsel's fee and expense application here.

### 6. The Class' Reaction to the Fee Request to Date Supports the Requested Fee

To date, the Claims Administrator has sent more than 35,100 copies of the Notice to potential Class Members and nominees informing them, *inter alia*, that Lead Counsel intended to apply to the Court for an award of attorneys' fees in an amount not to exceed one-third of the Settlement Amount, plus expenses not to exceed $250,000, plus interest on both amounts.[10] The time to object to the fee request expires on December 15, 2022. To date, not a single objection to the fee and expense amounts set forth in the Notice has been received. Such a "low level of objection is a 'rare phenomenon.'" *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005). The fact that no objections have been received to date supports the fairness of the fee request.

Additionally, Lead Plaintiff supports the fee request. Laino Decl., ¶9. Lead Plaintiff played an active role in the Litigation and closely supervised the work of Lead Counsel.

## IV. LEAD COUNSEL'S EXPENSES WERE REASONABLY INCURRED AND NECESSARY TO THE PROSECUTION OF THIS LITIGATION

Lead Counsel also respectfully requests an award of $179,885.92 in expenses and charges incurred while prosecuting the Litigation. Lead Counsel has submitted a declaration regarding these expenses and charges, which are properly recovered by counsel. *See* Robbins Geller Decl., ¶¶5-6. *See, e.g.*, *In re China Sunergy Sec. Litig.*, 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) (in a class action, attorneys should be compensated "'for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were "incidental and necessary to the

---

[10]    *See* accompanying Declaration of Eric Blow Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date ("Blow Decl."), Ex. A (Notice).

- 19 -

representation"'"'"); *Flag Telecom*, 2010 WL 4537550, at \*30 ("It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class."); *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (court may compensate class counsel for reasonable expenses necessary to the representation of the class).

Lead Counsel's expenses and charges include, for example, the costs of consultants and experts, travel, mediating the Class' claims, hosting the documents produced by Defendants and third parties, and computerized research, among other items. A complete breakdown by category of the expenses incurred is set forth in the accompanying Robbins Geller Declaration (¶5 and Ex. B). These expenses were critical to Lead Counsel's success in achieving the Settlement. *See Glob. Crossing*, 225 F.R.D. at 468 ("The expenses incurred – which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review – are the type for which 'the paying, arms' length market' reimburses attorneys. For this reason, they are properly chargeable to the Settlement fund."). So far, not a single objection to the expense amount set forth in the Notice has been received. Accordingly, Lead Counsel respectfully requests payment for these expenses and charges, plus interest earned on such amount at the same rate as that earned by the Settlement Fund.

## V.   LEAD PLAINTIFF IS ENTITLED TO A REASONABLE AWARD UNDER 15 U.S.C. §78u-4(a)(4)

Lead Plaintiff Teamsters Local Union No. 727 Pension Fund seeks approval of an award of $10,000 in recognition of the time and resources it spent representing the Class. Laino Decl., ¶10. The PSLRA allows an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." 15 U.S.C. §78u-4(a)(4). Many courts have approved such awards under the PSLRA to compensate class representatives for the time and effort they spent on behalf of the class. *See, e.g.*, *In re Am.*

- 20 -

*Int'l Grp., Inc. Sec. Litig.*, 2010 WL 5060697, at *3 (S.D.N.Y. Dec. 2, 2010) (granting PSLRA award of $30,000 to institutional lead plaintiffs "to compensate them for the time and effort they devoted on behalf of a class"); *Flag Telecom*, 2010 WL 4537550, at *31 (approving award of $100,000 to lead plaintiff for time spent on the litigation); *Veeco*, 2007 WL 4115808, at *12 (awarding approximately $15,900 for time spent supervising litigation).

As set forth in the Laino Declaration, Lead Plaintiff took an active role in prosecuting the Litigation, including: (1) communicating with Lead Counsel on issues and developments in the Litigation to keep fully informed; (2) reviewing pleadings and briefs; (3) identifying and providing relevant documents during discovery; (4) preparing for and providing deposition testimony; and (5) participating in and keeping informed about the mediation and settlement negotiations.  Laino Decl., ¶4.

These are precisely the types of activities courts have found support PSLRA awards to class representatives.  *See, e.g.*, *Veeco*, 2007 WL 4115808, at *12 (characterizing such awards as "'routine[]'" in this Circuit); *Hicks*, 2005 WL 2757792, at *10 ("Courts in this Circuit routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place.").

The Notice informed potential Class Members that Lead Plaintiff may seek approval for up to $10,000 in connection with its representation of the Class.  Blow Decl., Ex. A (Notice) at 2.  To date, no Class Member has objected to such award.  Accordingly, Lead Plaintiff's request is reasonable and fully justified under the PSLRA and should be granted.

- 21 -

4863-9796-4093.v1

## VI.    CONCLUSION

Based on the foregoing, and the entire record herein, Lead Counsel respectfully requests that the Court award attorneys' fees of one-third of the Settlement Amount, plus expenses in the amount of $179,885.92, plus interest on both amounts, and $10,000 to Lead Plaintiff, as permitted by the PSLRA.

DATED:  December 1, 2022                    Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
MICHAEL G. CAPECI


                                                             s/ Michael G. Capeci
                                                          MICHAEL G. CAPECI

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com
mcapeci@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
THEODORE J. PINTAR
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
tedp@rgrdlaw.com

Lead Counsel for Lead Plaintiff

- 22 -

CERTIFICATE OF SERVICE

I, Michael G. Capeci, hereby certify that on December 1, 2022, I authorized a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel registered to receive such notice.

*s/ Michael G. Capeci*

MICHAEL G. CAPECI